BERVAR & JONES
Attorneys at Law
A Law Partnership

WARD D. JONES            2958-0
1400 Pauahi Tower
1001 Bishop Street
Honolulu, Hawaii 96813
Telephone:  (808) 550-4990
Facsimile:   (808) 550-4991
E-mail:       wdj@bervar-jones.com

MICHAEL J. GREEN     4451-0
GLENN H. UESUGI       4865-0
345 Queen Street, 2nd Floor
Honolulu, Hawaii 96813
Telephone: (808) 521-3336
Facsimile: (808) 566-0347
E-mail:  michaeljgreen@hawaii.rr.com
E-mail:  puunui@aloha.net

Attorneys for Plaintiff
Dae Sung Lee

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 04 2006

at 4 o'clock and 03 min. PM
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DAE SUNG LEE, | ) | Civil No. 04-00461 SOM LEK |
| | ) | |
| Plaintiff, | ) | PLAINTIFF DAE SUNG LEE'S |
| | ) | MEMORANDUM IN |
| | ) | OPPOSITION TO DEFENDANTS |
| UNITED STATES TAEKWONDO | ) | UNITED STATES |
| UNION, a Colorado nonprofit | ) | TAEKWONDO UNION'S AND |
| Corporation, UNITED STATES | ) | UNITED STATES OLYMPIC |
| OLYMPIC COMMITTEE, a federally | ) | COMMITTEE'S MOTION TO |
| charged nonprofit corporation, JOHN | ) | STRIKE PLAINTIFF'S CLAIM |



| | |
|---|---|
| DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10,<br><br>                Defendants. | ) FOR DAMAGES TO THE<br>) TAEKWONDO CENTER, INC.<br>) AND TO STRIKE ALL<br>) EVIDENCE RELATED TO<br>) ALLEGED LOST PROFITS OR<br>) OTHER DAMAGES SUFFERED<br>) BY NON-PLAINTIFF UNITED<br>) STATES TAEKWONDO<br>) CENTER, INC.; DECLARATION<br>) OF WARD D. JONES; EXHIBITS<br>) "1-3"; CERTIFICATE OF<br>) SERVICE<br>)<br>) Date:  January 23, 2006<br>) Time:  9:00 a.m.<br>) Honorable Susan Oki Mollway<br>)<br>) New Trial Date:  April 4, 2006 |

MEMORANDUM IN OPPOSITION TO DEFENDANTS UNITED STATES TAEKWONDO UNION'S AND UNITED STATES OLYMPIC COMMITTEE'S MOTION TO STRIKE PLAINTIFF'S CLAIM FOR DAMAGES TO THE TAEKWONDO CENTER, INC. AND TO STRIKE ALL EVIDENCE RELATED TO ALLEGED LOST PROFITS OR OTHER DAMAGES SUFFERED BY NON-PLAINTIFF UNITED STATES TAEKWONDO CENTER, INC

I.    STATEMENT OF FACTS

This action concerns the wrongfully terminated coach of the 2004 United States Olympic Taekwondo Team, Plaintiff Dae Sung Lee (hereinafter "Lee"). Plaintiff Lee alleges that he was removed as coach of the 2004 United States Olympic Taekwondo Team for racist reasons just prior to the 2004 Olympics.

Plaintiff asserts that he suffered future economic losses based on lower W-2 and Sub-Chapter S corporation income from his employer United States Taekwondo Center ('USTC'), a Hawaii corporation, arising out of lower student membership than would have been enjoyed had Defendants not wrongfully withdrawn his Olympic coaching appointment in 2004. To support this claim, foundationally, Han Won Lee[1], another U.S. Olympic Taekwondo coach who coached at the 2000 Olympic Games in Sydney testified and produced income tax returns and other financial records showing that his taekwondo school experienced phenomenal economic growth following the 2000 Olympic Games as prospective students in his geographical area became aware of his Olympic credentials which growth Han Won Lee attributes to his Olympic experience and which consequently resulted in personal salary and Sub-Chapter S income increases to Han Won Lee. Dr. Thomas Loudat, a Hawaii economist who has been qualified as an expert witness on economic damages in Hawaii courts on numerous occasions did an economic analysis of Plaintiff and his school before and after the Defendants' withdrawal of his Olympic coaching credential in 2004, studied Han Wan Lee's economic track record and reviewed Honolulu wage data applicable to

---

[1] Han Won Lee testified as an expert on Olympic TaeKwonDo coaching qualifications at the Preliminary Injunction Hearing in the case herein in July 2004.

coaches and scouts and concluded that the Olympic coaching credential did enhance Han Won Lee's finances and also concluded that Plaintiff Dae Sung Lee has suffered past and future economic damages in the form of loss of W-2 and Sub-Chapter S personal income as a result of having his Olympic Coaching appointment withdrawn in early 2004 and attempted to quantify that amount. See Exhibit 1 Loudat Economic Report. Contrary to Defendants' motion herein, Plaintiff's claim is a proper one.

II. ARGUMENT

    A. THE MOTION SHOULD BE DENIED SINCE PLAINTIFF HAS STANDING TO ASSERT HIS INDIVIDUAL ECONOMIC DAMAGES.

Preliminarily, arguably this motion is untimely. The court established a November 2, 2005 deadline for disposition motions to be filed. See Amended Rule 16 Scheduling Order filed on June 30, 2005 p. 2 #7. This motion was filed on November 15, 2005. Although it is entitled a 'Motion to Strike Claim' its effect is the same as a motion to dismiss or a motion for summary judgment claim under F.R.C.P. Rule 56.

        1. EVIDENCE OF LOSS OF PROFITS AT USTC IS ADMISSIBLE TO SHOW DECREASED EARNING CAPACITY BY PLAINTIFF.

Plaintiff organized his taekwondo school as a corporation, is the sole

shareholder and employee and draws a W-2 salary and Sub-Chapter S from that corporation as his sole form of compensation. In the case of a person engaged in business, from the very nature of the situation, the amount of loss cannot be proved with exactitude, and all that can be required is that the evidence, with such certainty as the nature of the particular case may permit, lay a foundation which will enable the trier of facts to make a fair and reasonable estimate. Davis v. P. Gambardella & Son Cheese Corp., 147 Conn 365, 161 A2d 583(1960). The self-employed person may have the value of his earning capacity measured by the value of the services he contributed to his business. Kennard v. Kaelin, 58 Wash2d 254, 364 P.2d 446 (1961).

Where the injured person is the sole operator or partner of the business and his services are the predominate factor in producing the profits, Davis supra, Holland v. Ratliff, 238 Ark 819, 384 SW2d 950(1964); the decline in profits following plaintiff's injury is a measure of the earning ability of the plaintiff, and courts will generally admit evidence of the loss of such income if the evidence conforms to the requirement of proximate cause and if these lost profits meet the test of reasonable certainty. Clapper v. Original Tractor Cab Co., 270 F.2d 616, cert den. 361 U.S. 967 (Ind.)(7th Cir. 1959); Bissonette v. National Biscuit Co., 100 F.2d 1003 (Vt.) (2d Cir. 1939); Ewing v. Esterholt, 684 P.2d 1053(Mont.)

5

(1984). Profits from a business are a measure of lost earning power only where they are almost entirely the direct result of the personal management and endeavor of the injured person. Bell v.Yellow Cab Co., 399 Pa 332,160 A.2d 437(1960). Thus in order to prove a loss of earning capacity, admissible earnings may be in the form of wages or salary, commissions, or profits, that is, income less expenses from the operation of a business or for rendering services where such profits are primarily the result of personal labor or attention as where plaintiff is sole owner of and laborer in a business, Holland, supra.; or where profits are so allied to the plaintiff's personal efforts in the business that they are a reflection of plaintiff's earning capacity. Rollette v. Myers, 13 Ariz App 72, 474 P.2d 196( 1970). As a 42 USCA 1981 action is in essence a personal injury claim, the above cases should apply. Smith v. Firestone Tire and Rubber Co., 875 F. 2d 1325 (7th Cir. 1989). Plaintiff is the sole owner, sole source of business, sole employee, and master/head instructor at USTC. Exhibit 3- Affidavit of Dae Sung Lee filed on August 2, 2004, page 1. Without a doubt then, his W-2 income and Sub-Chapter S net income remaining after expenses at USTC were solely a reflection of the personal efforts and talents of plaintiff and are admissible into evidence to show his loss of earnings.

2.  BECAUSE PLAINTIFF'S ECONOMIC DAMAGES ARE THE ADJUSTED FUTURE LOSS OF HIS W-2 SALARY AND SUBCHAPTER S INCOME, IT IS AN INDIVIDUAL CLAIM

Preliminarily, Defendants mis-characterize Plaintiff's claim for economic damages as derived from his status as a 'shareholder.' This is simply incorrect. Shareholders more typically suffer economic damages when their stock is devalued. Instead, the Plaintiff's economic damages in this case were and continue to be suffered in part in his capacity as a salaried employee of his taekwondo school from which he draws a lower salary along with lower Sub-Chapter S income due to Defendants' misconduct. See Exhibit 1. Scrutiny of Dr. Loudat's Report reveals that his analysis was of economic damages to Plaintiff's individual W-2 salary and Sub-Chapter S income. Dr. Loudat testified as follows:

> Q. All right. And the primary focus of the high-loss case, or the only focus of the high-loss case, is on lost profits from the business?
>
> A. Well, it's the, the total loss net to Dae Sung Lee, which would include business profits and whatever he was paying himself as a wage or officer's compensation from the corporation.
>
> Q. Well, didn't you assume that his wage was going to stay the same?
>
> A. You know, I didn't make any such assumption. I just looked at the total net in the analysis that I did from the corporation to him. Loudat p. 29/16-25, 30/1.

7

Dr. Loudat also used earnings profiles for Honolulu coaches and scouts as a worst-case scenario and then averaged the best-case with the worst-case analysis to come up with an opinion that he could testify to with reasonable economic probability which he at times referred to as his 'base-case scenario.' Implicitly then, his final opinion took into consideration USTC's loss of net profits *as a factor* but not the sole factor and actually drastically reduced by approximately half the projected net profits to USTC and reduced by half the possible maximum loss of individual income to Plaintiff by using Honolulu occupational wage data applicable to Coaches and Scouts. Exhibit 1 page 5. Dr. Loudat said:

> A.  . . .I estimated a best-case scenario wherein I'm using Han Won Lee's business experience subsequent to the Olympics as a measure of what could occurred, best-case outcome, had Dae Sung Lee had the Olympic coaching experience. As a worst-case scenario I am using earnings profiles for coaches and making a change from a mean earnings profile to a higher earnings profile to say that, at a minimum, that's would have occurred by virtue of this significant event. That's what I did. Loudat at 43/9-19.
>
> Q.  You state in your opinion that the opinions expressed herein are held to a reasonable degree of economic probability. Do you believe to a reasonable degree of economic probability Dae Sung Lee would have achieved the best-case scenario?
>
> A.  No. In a more-likely-than-not scenario, what I'm testifying to is the best, is the base-case scenario. Loudat 43/20-25;44/1-3
>
> 'The base case loss scenario is the median of the high and low

8

loss scenario amounts.' Exhibit 1-Loudat Report at p.1, last paragraph.

Proceeding on from their false premise, and relying on the general rule that a shareholder cannot maintain an action for injury suffered only by the corporation, See Erlich v. Glasner, 418 F.2d 226, 228 (9th Cir.1969), defendants contend the economic injury arising out of their misconduct was USTC's only, not plaintiff's. Plaintiff disagrees on this point as well. The Ninth Circuit Court of Appeals has held that the same discriminatory conduct can result in both corporate and individual injuries. Marshall v. Kleppe, 637 F.2d 1217, 1219-21, 1222 (9th Cir.1980). Mere presence of an injury to a corporation does not necessarily negate the simultaneous presence of an individual injury. Pareto v. F.D.I.C., 139 F.3d 696 (Cal.)(9th Cir. 1998).

For example in Gomez v. Alexian Bros. Hosp. of San Jose, 698 F.2d 1019 (9th Cir. 1983) plaintiff alleged defendants' failure to award the emergency room contract to his company AES because of his national origin had deprived him of employment as director of defendants' emergency room and caused him "humiliation and embarrassment." There, the Ninth Circuit Court of Appeals, in reversing the Order dismissing the case and ordering that all of his claims proceed to trial found that the pleaded injuries were personal to plaintiff and distinct from

any injuries suffered by AES as a result of defendants' conduct. The court said that the same is true of plaintiff's claim under both title VII and §§ 1981 and 1985(3). It said,"The guarantees of § 1981 and Title VII against racial discrimination are coextensive ...." (citing) London v. Coopers & Lybrand, 644 F.2d 811, 818 (9th Cir.1981).

Though Defendants' misconduct certainly harmed USTC' prospective gross income, like Dr. Gomez in the case above, it also simultaneously harmed Plaintiff by causing him great mental distress, pain, and embarassment and caused him to have a lower prospective W-2 salary and Sub-Chapter S income which are separate and distinct claims of Plaintiff individually. Therefore, Plaintiff is not seeking damages on behalf of USTC and Dr. Loudat's report makes that clear. Id. Also, no analysis has been done asserting diminution in value of the USTC stock owned by Plaintiff which could be properly categorized as a shareholder claim.

The Ninth Circuit in Gomez also found under its Title VII analysis that plaintiff's were claims actionable even if there was no employer-employee relationship between plaintiff and defendant on the grounds that the defendant's discriminatory actions interfered with the plaintiff's relationship with his direct employer. The court said Title VII language has been interpreted to encompass situations in which "a defendant subject to Title VII interferes with an individual's

employment opportunities with another employer." Lutcher v. Musicians Union Local 47, 633 F.2d at 883 n. 3; Sibley Memorial Hospital v. Wilson, 488 F.2d 1338, 1340-41 (D.C.Cir.1973). The court said that 'We agree with the District of Columbia Circuit that it would contravene Congress's intent in Title VII "[t]o permit a covered employer to exploit circumstances peculiarly affording it the capability of discriminatorily interfering with an individual's employment opportunities with another employer, while it could not do so with respect to employment in its own service ...."  Defendants' actions here have likewise discriminatorily interfered with Plaintiff's employment opportunities with USTC and individually as well and they should not be allowed to avoid liability for their wrongful actions by either hiding behind the facade of lack of standing or the fact that Plaintiff organized his taekwondo school as a corporation and had an employment relationship with USTC. Without a doubt, whether Plaintiff taught taekwondo as a sole proprietorship, partnership, or as a salaried employee of a corporation, the Defendants impaired his right to generate as much personal income by wrongfully denying his Olympic coaching credential. There is also case authority from certain situations in which the courts have waived the standing requirement because it appeared that the plaintiff was the only effective adversary. Estate of Amos ex rel. Amos v. City of Page, Arizona, 257 F.3d 1086 (2001).

Sullivan v. Little Hunting Park, 396 U.S. 229, 237, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969); Maynard v. City of San Jose, 37 F.3d 1396, 1402 (9th Cir.1994). Arguably, Plaintiff is the only effective adversary to assert the 42 USCA 1981rights of USTC.[2]   Finally, only two (2) of the authorities cited by Defendants in their motion concern civil rights claims. Several come from entirely different areas of the law with different policy considerations and questionable applicability to 1981 cases. U.S. v. Biltrakis, 108 f.3d 1159 (9th Cir. 1997) is a criminal case. Sherman v. British Leyland Motor Company, 601 f. 2d 429(9th Cir. 1979) is an antitrust and breach of franchise agreement case. Von Brimer v. Whirlpool, 536 F.2d 838 (9th Cir. 1976) is a fraudulent appropriation of patent, malicious prosecution and interference with contract case in which the inventor assigned away the rights to his patent.

Defendants cite to Erlich supra, which is a 42 USCA 1983 case which followed the general shareholder standing rule as a basis for dismissing Plaintiff's civil rights claim is distinguishable on its facts. There the plaintiff's family kosher

---

[2]Even though USTC did not have a direct contact with defendants and did not have an Olympic credential which was wrongfully taken away by defendants, it may arguably have a separate 1981 claim of its own for loss of profits. As the Ninth Circuit said in Gomez, 'we do not mean to imply AES would not have standing to claim damages for its own injuries which might include lost profits.' "A corporation may suffer injury ... from unlawful discrimination against its officers and directors ..." Marshall v. Kleppe, 637 F.2d at 1220. A corporation has standing to bring § 1981 claim against a defendant that employs the corporation's employees. 42 U.S.C.A. § 1981; Bains LLC v. Arco Products Co., Div. of Atlantic Richfield Co. 405 F.3d 754.

meat business was shut down for alleged health code violations by the State of California. Plaintiff averred that he sustained 'is a direct interference with plaintiff's right to operate his business and earn a livelihood for himself and family '; was interference 'with the business of West Coast Poultry Company and is a direct interference with the right of the plaintiff to peacefully operate his business and earn a livelihood for himself and family' in the 'amount of $250,000.00' and the court noted that there was nothing in the plaintiff's opposing affidavits that changed the nature of the stated claim. That case is therefore different because the defendant directly acted against the corporation by shutting it down and plaintiff himself repeatedly said his claim was for damage to his business due to the shutdown which he termed interference. Notably, Erlich recognizes but factually distinguishes the exception set forth in Sutter v. General Petroleum, 28 Cal 2d 525, 170 P. 2d 898 (1946) that the same discriminatory conduct can result in both corporate and individual injuries. Smith v. Martin, 542 F. 2d 688 (6th Cir. 1976) is factually similar to Erlich in that a clothing business was ordered shut down by the defendant circuit court judge as part of the liquidation of a national franchise which Plaintiff claimed violated multiple civil rights. It is also factually distinguishable on the same grounds as Erlich in that it was a direct action by the defendant against a corporation whereas in the case before the court, defendants took no direct action

against USTC.

III.  CONCLUSION

In conclusion, based upon the above-cited authorities, Plaintiff asks that the motion be denied. In the alternative, in the event that the court disagrees and concludes that USTC is a necessary party for standing purposes, Plaintiff respectfully asks leave of court to amend its complaint to join USTC as a co-plaintiff inasmuch as discovery has been substantially completed as to the economic damages claim which is the subject of our accompanying motion.

DATED: Honolulu, Hawaii, January 4, 2006.

                                                 _____
                                                 WARD D. JONES
                                                 MICHAEL J. GREEN
                                                 GLENN H. UESUGI
                                                 Attorneys for Plaintiff Dae Sung Lee