# TABLE OF CONTENTS

I. FACTUAL AND PROCEDURAL CONTEXT.................................. 5

II. ARGUMENT........................................................................... 10

    A. The Proffered Testimony of Dr. Loudat is Relevant to this Case................................................................................. 12

    B. The Proffered Testimony of Dr. Loudat is Reliable................. 13

        1. The Proffered Testimony of Dr. Loudat is based on Sufficient Facts............................................................ 13

        2. The Proffered Testimony of Dr. Loudat is the Product of Reliable Principles and Methods.................. 15

        3. Dr. Loudat has Applied the Principles and Methods Reliably to the Facts of This Case...................................... 16

    C. Dr. Loudat is Not Testifying as a Taekwondo Expert.............. 17

    D. Differences between Real World and Litigation...................... 18

    E. Defendants' Arguments Lack Support from an Expert............. 20

    F. Defendants Failed to Produce a Table of Authorities and Violated the Page Limitations............................................. 21

III. CONCLUSION....................................................................... 21

## I. **FACTUAL AND PROCEDURAL CONTEXT**

This action concerns the wrongfully terminated coach of the 2004 United States Olympic Taekwondo Team, Plaintiff LEE. Plaintiff LEE alleges that he was removed as coach of the 2004 United States Olympic Taekwondo Team for racist reasons.

In the Order Denying Defendants' Three Motions for Summary Judgment filed on August 17, 2005, this Honorable Court held that there was direct evidence of pretext since the USOC's Robert Gambardella allegedly characterized all people of Korean ancestry and/or ethnicity as "crooks", and that he did not want Koreans, including Korean Americans, involved in the USTU.

In this Honorable Court's Order, it was noted that there were also specific and substantial indirect evidence of pretext, in that the new coaching criteria was developed such that there was no way to tell who the Olympic Coach would be until June 2004, and yet there was evidence that the USTU'S Governance and Management Committee (whose members were all selected by the USOC) "ratified" the appointment of Jean Lopez as coach in March 2004.

In order to assist the jury in determining Plaintiff LEE's loss of personal income as a result of the discriminatory behavior of Defendants, Economist Thomas A. Loudat, Ph.D. was retained as an expert witness. Dr. Loudat according

to his Curriculum Vitae, received two Master's Degrees and a Doctor of Philosophy degree in Economics. He has also performed over 700 projects from July 1983 to the present related to the estimation of economic damages in wrongful death, personal injury, wrongful termination, divorce and business litigation case. Dr. Loudat has been qualified as an expert in the field of economics in the U.S. District Court for the District of Hawaii, each of the Circuit Courts of the State of Hawaii, in Family Court for the State of Hawaii, and also in arbitration hearings and various public and/or legislative hearings. See Exhibit "A".

In addition, Dr. Loudat has only been challenged once before as an economic expert through a Daubert motion and said motion failed. See Exhibit "D" at page 150.

As a result of his analysis, Dr. Loudat generated a report on March 14, 2005. See Exhibit "B". A copy of said report was given to Defendants in a timely fashion and Defendants were able to orally depose Dr. Loudat with respect to his analysis and report.

Dr. Loudat was asked to estimate Plaintiff LEE'S personal (not corporate) financial losses as a result of his unwarranted withdrawal as the US Olympic Taekwondo Coach for the 2004 Olympic Games by Defendants. In his analysis,

Dr. Loudat relied upon the declarations of the two US Olympic Taekwondo Coaches for the 2000 Olympic Games, Mr. Young In Cheon and Mr. Han Won Lee. Both Mr. Young In Cheon and Mr. Han Won Lee indicated that they both received financial benefits as a result of their Olympic Coach status, which included more students at their respective Taekwondo schools, and thus more income. See Defendant's Exhibits "C" (Declaration of Han Won Lee) and "D" (Declaration of Young In Cheon).

Of the two, Dr. Loudat focused his analysis on Mr. Han Won Lee since his personal situation, school management style and overall operation closely mirrored Plaintiff LEE'S. According Mr. Han Won Lee, the curriculums of he and Plaintiff LEE are very similar. Mr. Han Won Lee stated that he got a lot of ideas from Plaintiff LEE, which he incorporated into his Taekwondo school curriculum. See Exhibit "C" at page 94 and 143. Both were also present at the 1988 and 1992 Olympic Games when Taekwondo was a non-official demonstration sport (there was no Taekwondo competition at the 1996 Atlanta Olympic Games), Mr. Han Won Lee as an athlete, and Plaintiff LEE as a trainer. (See Exhibit "C" at page 166-17). Mr. Han Won Lee states that a demonstration sport and a full medal official sport is not the same thing. (Exhibit "C" at page 13-14).

Similar to Plaintiff LEE, Mr. Han Won Lee also operated a Taekwondo

after the 1988 and/or 1992 Olympic Games. However, in spite of his status as a member of the 1988 and 1992 Olympic Teams for Taekwondo, Mr. Han Won Lee's school did not do as well as he had hoped.(See Exhibit "C" at page 16-19). It seems that the public knows the difference between a demonstration sport and a full medal official sport.

At his oral deposition, Mr. Han Won Lee testified as to other substantial similarities between himself and Plaintiff LEE. Both are from South Korea, both grew up in the United States, both graduated from high school in the United States, both attended college in the United States, both were multi-time Taekwondo National Team members (often times on the same team in different weight divisions), both served as the National Coach of Taekwondo at the US Olympic Training Center in Colorado Springs, Colorado, both named their school US Taekwondo Center, and both use the same curriculum in their Taekwondo school. (See Exhibit "C" at page 143).

Mr. Han Won Lee did testify at his oral deposition that he felt he and Mr. Young In Cheon (the other 2000 Olympic Games Coach for Taekwondo) are different, that there is no similarity between the two. (See Exhibit "C" at page 150-151). By extension, Mr. Han Won Lee was also saying that Plaintiff LEE and Mr. Young In Cheon are also dissimilar, such that using him as a comparable for

purposes of Dr. Loudat's analysis would be inappropriate. In spite of these differences, both Mr. Young In Cheon and Mr. Han Won Lee stated that their financial situation went up as a direct result of their Olympic official medal sport coaching experience. See also Exhibit "D" at 129.

Mr. Han Won Lee stated: "I mean, you've seen my numbers, right, and my income tax returns? People are not dumb. They understand from demonstration sport to official sport. In my town, people know me as an Olympic coach. So that made a huge boost on my business revenue, obviously. And you saw that on my tax return." Exhibit "C" at 146.

Relying upon the actual experience of the only two Olympic coaches from the United States, Dr. Loudat correctly assessed that Plaintiff LEE was financially damaged and suffered future wage loss as a result of the unlawful actions of Defendants. Dr. Loudat did NOT to a business valuation on the U.S. Taekwondo Center, Hawaii.

In calculating the amount of future wage loss for Plaintiff, Dr. Loudat employed the use of generally accepted economic principles and methodologies in his analysis. Dr. Loudat's report includes opinions on Plaintiff LEE'S work life expectancy, future damages and methods for discounting the same to present value. See Exhibit "B".



## II.    ARGUMENT

Rule 702 of the Federal Rules of Evidence states in relevant part:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 was amended in response to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). In Daubert, the United States Supreme Court changed trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony. The Supreme Court further clarified in Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999) that this gatekeeper function applies to all expert testimony, not just testimony based on science.

Faced with a proffer of expert testimony, the trial judge must determine at the outset whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. Daubert, 509 U.S. at 592.

Daubert set forth a non-exclusive checklist for trial courts to use in assessing the reliability of scientific expert testimony. The specific factors listed by the Daubert court include:

1) Whether a theory or technique can be and has been tested;

2) Whether it has been subjected to peer review and publication;

3) Whether in respect to a particular technique, there is a high "known or potential rate of error" and whether there are standards controlling the technique's operation; and

4) Whether the theory or technique enjoys general acceptance within a relevant scientific community.

Kumho Tire, 526 U.S. at 149-150, citing Daubert, 509 U.S. 592-594.

The Supreme Court made clear the its list of factors was meant to be helpful, not definitive. Indeed, those factors do not all necessarily apply even in every instance in which the reliability of scientific testimony is challenged. Kumho Tire, 526 U.S. at 151.

The Supreme Court noted that the inquiry is a flexible one, and that trial judges, when assessing a proffer of expert testimony under Rule 702, should also be mindful of other applicable Rules. Rule 703 provides that expert opinions based on otherwise inadmissible hearsay are to be admitted only if the facts or data

are of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject. Daubert, 509 U.S. at 595.

### A.    The Proffered Testimony of Dr. Loudat is Relevant to this Case.

If a case involves an issue of future lost wages, generally an expert witness is employed who opines on various issues including work life expectancy, future damages, and methods for discounting the same to present value. Crane v. Crest Tankers, Inc., 47 F.3d 292 (8th Cir. 1995).

This is exactly the type of expert analysis that Dr. Loudat performed as an expert in this case. Dr. Loudat's report includes analysis on Plaintiff LEE'S work life expectancy, future damages, and included his generally accepted methodology for discounting those future damages to present value. Dr. Loudat has done substantially similar work in cases involving the U.S. District Court for the District of Hawaii, the Circuit Courts of the State of Hawaii and other tribunals. Economic expert testimony is routinely and consistently admitted to assist the trier of fact in determining the amount of Plaintiff's economic and/or lost wages damages in cases such as these. Calculations of these types of damages, especially when faced with the prospect of discounting said damages to present value, is beyond the scope, ability and common knowledge of the average layman. Mukhtar v. Cal. State University, Hayward, 299 F.2d 1053, 1065 (9th Cir. 2002); United

States v. Vallejo, 237 F.3d 1008, 1019 (9th Cir. 2000) *amended by* 246 F.3d 1150 (9th Cir. 2001). See also United States v. Hanna, 293 F.3d 1080, 1086 (9th Cir. 2002). Accordingly, it is clear that the proffered testimony of Dr. Loudat is relevant to the issue of Plaintiff LEE'S future wage loss.

**B.   The Proffered Testimony of Dr. Loudat is Reliable.**

**1.   The Proffered Testimony of Dr. Loudat is based on Sufficient Facts.**

In formulating his opinions, Dr. Loudat relied upon the following sources of information:

a)   2001-203 Federal Income Tax Returns for US Taekwondo Center - Hawaii.

b)   2004 USTC gross income tally.

c)   2001-2003 Federal Income Tax Return for Plaintiff LEE and wife.

d)   2001-2004 records of new students at USTC.

e)   Declaration of Plaintiff LEE

f)   Declaration of Han Won Lee (2000 Olympic Coach)

g)   Declaration of Young In Cheon (2000 Olympic Coach)

h)   1999, 2000, 2002, 2003 Federal Income Tax Return for Han Won Lee.

      i)    2001-2003 S Corporation Federal Income Tax Return for US Taekwondo Center - Castle Rock (Han Won Lee).

See Exhibit "B".

Rule 703 of the <u>Federal Rules of Evidence</u>, provides that expert opinions based on otherwise inadmissible hearsay are to be admitted only if the facts or data are of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject. <u>Daubert</u>, 509 U.S. at 595. As such, Dr. Loudat was clearly entitled to rely on the above sources of information in performing his analysis.

Dr. Loudat also utilized other reliable sources of information is performing his analysis. These include the Federal Marginal Tax Rates for Joint Filers, the Hawaii State Marginal Tax Rates of Joint Filers, Journal of Legal Economics Vol. 11. No. 1 (life expectancy calculation), Statistics from the CDC (life expectancy rate at Date of Loss), Department of Labor statistics (2002 Metropolitan Area Occupational Employment and Wages Estimates - Honolulu, Hawaii), Economic Research Institute data (Salary Assessor), Consumer Price Index (Estimated Inflation Rates), and Treasury Note historical rates (calculation of discount rate for present value purposes).

These addition sources of information do satisfy the <u>Daubert</u> factors in

that they can and have been tested, have been subject to peer review and publication, and are enjoying a general acceptance within the relevant economic community. See Kumho Tire, 526 U.S. at 149-150, citing Daubert, 509 U.S. 592-594.

### 2.　The Proffered Testimony of Dr. Loudat is the Product of Reliable Principles and Methods.

In conducting his analysis and drawing his conclusions, Dr. Loudat utilizes time honored economic principles. If a case involves an issue of future lost wages, generally an expert witness is employed who opines on various issues including work life expectancy, future damages, and methods for discounting the same to present value. Crane v. Crest Tankers, Inc., 47 F.3d 292 (8th Cir. 1995).

This is exactly the type of expert analysis that Dr. Loudat performed as an expert in this case. Dr. Loudat's report includes analysis on Plaintiff LEE'S work life expectancy, future damages, and included his generally accepted methodology for discounting those future damages to present value. Dr. Loudat has done substantially similar work in cases involving the U.S. District Court for the District of Hawaii, the Circuit Courts of the State of Hawaii and other tribunals. Economic expert testimony is routinely and consistently admitted to assist the trier of fact in determining the amount of Plaintiff's economic and/or lost wages

damages in cases such as these.

The methodologies used by Dr. Loudat do satisfy the Daubert factors in that they can and have been tested, have been subject to peer review and publication, and are enjoying a general acceptance within the relevant economic community. See Kumho Tire, 526 U.S. at 149-150, citing Daubert, 509 U.S. 592-594.

### 3. Dr. Loudat has Applied the Principles and Methods Reliably to the Facts of This Case.

Similar to factors one and two, Dr. Loudat did apply the generally accepted principles and methods reliably to the facts of this case. The facts show that but for his termination as the 2004 Olympic Coach for Taekwondo, Plaintiff LEE would have enjoyed increased earnings, similar to Mr. Young In Cheon and Mr. Han Won Lee did after their Olympic Coach experience in 2000. Using the discounted cash flow methodology, Dr. Loudat determined that Plaintiff LEE'S estimated wage loss was approximately $1.1 million, after taxes and adjusting for inflation. The methodology used by Dr. Loudat, the discounted cash flow method, has been in use for decades and enjoys a general acceptance in the economic and/or financial communities.

Defendants do argue that the weighting of the low loss and high loss

scenarios is unsupported. However, Dr. Loudat at his oral deposition stated that taking the mid point of the two scenarios is a rule of thumb benchmark in operations research, and comes straight from a textbook that he used to teach from. See Exhibit "D" at page 85. This satisfies Daubert in that the theory or technique has been tested, been subject to peer review (Dr. Loudat being one of the peers) and publication, with standards controlling the technique's operation and enjoying an acceptance within the relevant economic community.

### C.     Dr. Loudat is Not Testifying as a Taekwondo Expert.

Defendants argue extensively that Dr. Loudat is not a Taekwondo expert. Plaintiff LEE agrees, and submits that Dr. Loudat was not retained to be an Taekwondo expert witness. What Dr. Loudat was retained as an economic expert who could calculate Plaintiff LEE'S lost wages due to the actions of Defendant. Dr. Loudat does rely upon the Declarations of Plaintiff LEE, Young In Cheon and Han Won Lee (all of whom are Taekwondo experts) in analyzing Plaintiff LEE'S wage loss claim. However, this is allowable pursuant to Rule 703 of the Federal Rules of Evidence. Specifically Dr. Loudat relies on the declarations for the proposition that becoming the US Olympic Team Coach during an Olympic Games when Taekwondo is a full medal (not demonstration) sport results in enhanced financial opportunities, income and wages. This is particular relevant,

given the fact that prior to 2004, there were only two people who served as Coaches for the US Olympic Taekwondo Team during the period when Taekwondo was a full medal (not demonstration) sport at the Olympics.

Dr. Loudat does opine that this proposition (being the Taekwondo Olympic Coach when Taekwondo is a full medal sport results in increased financial opportunities, wages and income) is consistent with generally accepted economic theory. See Exhibit "D" at page 143-144. However, this a far cry from stating that Dr. Loudat is testifying as a Taekwondo expert witness.

D. **Differences between Real World and Litigation.**

Defendants also argue that because Dr. Loudat used a different approach in litigation as opposed to academic economics should somehow render Dr. Loudat's testimony as inadmissible. Such a position fails to take into account the US Supreme Court's own comments with respect to this matter:

> It is true that open debate is an essential part of both legal and scientific analyses. Yet there are important differences between the quest for truth in the courtroom and the quest for truth in the laboratory. Scientific conclusions are subject to perpetual revision. Law, on the other hand, must resolve disputes finally and quickly. The scientific project is advanced by broad and wide-ranging consideration of a multitude of hypotheses, for those that are incorrect will eventually be shown to be so, and that in itself is an advance. Conjectures that are probably wrong are of little use, however, in the project of reaching

> a quick, final, and binding legal judgment – often of great consequence – about a particular set of events in the past. We recognize that, in practice, a gatekeeping role for the judge, no matter how flexible, inevitably on occasion will prevent the jury from learning of authentic insights and innovations. That, nevertheless, is the balance that is struck by Rules of Evidence designed not for the exhaustive search for cosmic understanding but for the particularized resolution of legal disputes.

Daubert, 509 U.S. at 596-597.

The above quote also goes towards Defendants' complaints about the length and scope of Dr. Loudat's analysis and report. If Defendants had their way, then Dr. Loudat would be required to undertake an extensive study calling upon all sorts of disciplines, from Taekwondo expertise, to marketing demographics and whatever else Defendants can think of to extend the analysis towards the quest for truth in a laboratory. And Defendants are (or were) free to take that approach with their own expert, if they so choose. However, given Dr. Loudat's extensive experience in testifying as an expert in this jurisdiction, he knows full well the scope of his assignment in a litigation assignment. And according to the United States Supreme Court in Daubert, Dr. Loudat does understand the difference between a cosmic search for understanding, and one that involves the quick, final and binding legal judgment of great consequence.

### E.   Defendants' Arguments Lack Support from an Expert.

It is interesting to note that while Defendants make a lot of assertions and arguments, they do not support any of those assertions or arguments with the opinions of their expert, John Candon. Mr. Candon, a forensic accountant, did write a report (See Exhibit "E") and the parties are presently attempting to schedule Mr. Candon's oral deposition. However, because Mr. Candon's background is in forensic accounting, he is unqualified to make any sort of opinions on Dr. Loudat's area of expertise, which is economics. However, that did not stop Mr. Candon from opining on all sorts of areas well outside the scope of his abilities as an expert. In fact, Mr. Candon, in his cosmic search for understanding, took it upon himself to provide the type of overextended, far reaching, globally academic overview which Defendants urged Dr. Loudat to make. It is unfortunate that Defendants chose Mr. Candon as their expert, since they really have no avenue in which to rebut Dr. Loudat's testimony, at least through another expert. Perhaps this is the reason why Defendants are attempting so hard to exclude Dr. Candon's testimony.

Even if this Honorable Court allow Dr. Loudat to testify at trial, Defendants would still be able to confront Dr. Loudat vigorous cross examination, the presentation of contrary evidence, and careful instruction on the burden of proof. This, the Supreme Court has said, are the more traditional and appropriate

means for attacking admissible evidence that Defendants feel is questionable. Daubert, 509 U.S. at 596.

### F. Defendants Failed to Produce a Table of Authorities and Violated the Page Limitations.

Plaintiff LEE would not have mentioned these things if this were the first time this has happened. Unfortunately, it is not the first time. Perhaps Pro Hac Vice counsel is unaware of the local rules which govern this matter. Or perhaps Pro Hac Vice counsel for Defendants do not feel they are required to follow the local rules. By that as it may, Plaintiff LEE would simply like to point out that once again Defendants have failed to follow the local rules in this matter and that perhaps an explanation as to why at the hearing would be in order.

## III. CONCLUSION

For the foregoing reasons, Plaintiff LEE respectfully requests this Honorable Court deny Defendants UNITED STATES TAEKWONDO UNION'S and UNITED STATES OLYMPIC COMMITTEE'S Motion to Preclude the Testimony of Thomas Loudat Pursuant Daubert and Federal Rules of Evidence 702 and 403 filed on November 15, 2005 and hold as a matter of law, that the

proffered testimony of Dr. Thomas Loudat is admissible at trial.

DATED: Honolulu, Hawaii, JAN 0 5 2006

_____
MICHAEL JAY GREEN
WARD D. JONES
GLENN H. UESUGI
Attorneys for Plaintiff
DAE SUNG LEE

- 22 -