BERVAR & JONES
Attorneys at Law
A Law Partnership

WARD D. JONES    2958-0
1400 Pauahi Tower
1001 Bishop Street
Honolulu, Hawaii 96813
Telephone:    (808) 550-4990
Facsimile:    (808) 550-4991
E-mail:    wdj@bervar-jones.com

Attorney for Plaintiff
Dae Sung Lee

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DAE SUNG LEE,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>UNITED STATES TAEKWONDO UNION, a Colorado nonprofit Corporation, UNITED STATES OLYMPIC COMMITTEE, a Federally chartered nonprofit Corporation, JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10;<br><br>　　　　　Defendants. | CIVIL NO. 04-00461-SOM-LEK<br><br>PLAINTIFF DAE SUNG LEE'S RESPONSE TO DEFENDANT UNITED STATES OLYMPIC COMMITTEE'S FIRST SET OF INTERROGATORIES TO PLAINTIFF; ATTACHMENT<br><br><br><br>No Trial Date |

**PLAINTIFF DAE SUNG LEE'S RESPONSE
TO DEFENDANT UNITED STATES OLYMPIC COMMITTEE'S
FIRST SET OF INTERROGATORIES TO PLAINTIFF**

EXHIBIT 2

Dae Sung Lee, Plaintiff responds to Defendant United States Olympic

Committee's First Set of Interrogatories to Plaintiff as follows.

DATED:Honolulu, Hawaii, March 28, 2005.

_____
WARD D. JONES
Attorney for Plaintiff
DAE SUNG LEE

## INTERROGATORIES

### INTERROGATORY NO. 1:

Please describe in detail the complete factual basis for the Plaintiff's claim that Steven Lopez was selected to be the United States Olympic Coach for taekwondo instead of Plaintiff Dae Sung Lee because of discrimination against Dae Sung Lee and/or other Korean-Americans based on national origin.

### RESPONSE:

Not applicable, Stephen Lopez was not a coach.

### INTERROGATORY NO. 2:

Please identify all documents that support the Plaintiff's claim that Steven Lopez was selected to be the United States Olympic Coach for taekwondo instead of Plaintiff Dae Sung Lee because of discrimination against Dae Sung Lee and/or other Korean-Americans based on national origin.

### RESPONSE:

Not applicable, Stephen Lopez was not a coach.

### INTERROGATORY NO. 3:

Please identify all individuals associated with the USTU and USOC who Plaintiff claims discriminated against him or other Korean-Americans based on

national origin as a Korean-American and for each such individual please identify

all facts that support Plaintiff's claim that the identified individual was biased

against Korean-Americans or discriminated against Plaintiff or other Korean-

Americans on the basis of national origin.

**RESPONSE:**    Objection:  Vague and ambiguous.
See Declaration of Dae Sung Lee.  Discovery is continuing.

_Ward D. Jones_
WARD D. JONES

## INTERROGATORY NO. 4:

Please describe in detail all facts that support Plaintiff's claim that the

adoption of new coach selection procedures by the USTU in 2004 was a pretext for

discrimination against Korean-Americans or against any other group based on race

or national origin.

## RESPONSE:

See Declaration of Dae Sung Lee.  Discovery is continuing.


## INTERROGATORY NO. 5:

Please describe in detail all facts that support Plaintiff's claim that the

application of the new coach selection procedures issued by the USTU in 2004 was

a pretext for discrimination against Korean-Americans or against any other group

based on race or national origin.

8

**RESPONSE:**

•See Declaration of Dae Sung Lee.  Discovery is continuing.

## INTERROGATORY NO. 6:

Please identify all members of the USOC Board of Directors, the USOC

Executive Committee, and the USTU Governance and Management Committee

who Plaintiff claims are biased against or discriminate against Korean-Americans

and for each individual so identified, please identify all facts that support

Plaintiff's claim that the identified individual was biased against Korean-

Americans or discriminates against Korean-Americans.

**RESPONSE:**

•See Declaration of Dae Sung Lee.  Discovery is continuing.

## INTERROGATORY NO. 7:

Please describe in detail all benefits or compensation that Plaintiff was

promised relating to his selection as a United States Olympic Coach, including but

not limited to an identification of whether the promise(s) was oral or in writing and

when and by whom each promise was made.

**RESPONSE:**

See attached Page 9a.

## INTERROGATORY RESPONSE NO. 7

During 2003-04 my full coach airfare, room & board, and per/diem was paid by USTU/USOC for the following trips: Greece site visit (1 week); World Championship (4 weeks); Pan American Games Dominican Republic (6 weeks); Regional Olympic Pan American Qualifications Mexico (5 days); World Qualifications in France (10 days); Asia Qualifications in Thailand (7 days); 1st U.S. Olympic Trials Colorado(4 days); 2d U.S. Olympic Trial Colorado (4days); 2d Greece site visit cancelled half way through trip at Chicago( 3days); U.S. Pan American games team trial Colorado (4 days). Letter and faxes used from USOC advising of my position and advising of itinerary, some telephone calls.

In addition, at the Olympics, it was expected that my airfare would be paid to and from, my free room and board covered at the Olympic Village, ground transportation, warm-ups, shoes, opening ceremony apparel, luggage, pins, shirts, jackets, shorts, socks, hats, sunglasses, per diem. Some of this information can be found in the 2004 Athens Summer Games U.S. Team Information Handbook prepared by the USOC.

**INTERROGATORY NO. 8:**

Please describe in detail the complete factual basis for the Plaintiff's claim that he was not selected to be a United States Olympic coach because of discrimination against him or other Korean-Americans on the basis of their national origin.

**RESPONSE:**

·See Declaration of Dae Sung Lee.  Discovery is continuing.

**INTERROGATORY NO. 9:**

Please describe in detail all requests by Olympic-caliber United States taekwondo competitors who asked Plaintiff Dae Sung Lee in 2003 or 2004 to serve as their personal taekwondo coach, trainer, teacher, or advisor of any kind, a detailed description of how the request was made (written, oral, in person or on phone), when the request was made, by whom the request was made, what competitor Dae Sung Lee was asked to coach, and contact information for each competitor identified.

**RESPONSE:**

See attached Page 10a.

10

**INTERROGATORY RESPONSE NO. 9**

Objection:  Overly broad, vague and ambiguous.  As a duly appointed Olympic Coach for the U.S. Team as of May 2003, I generally coached the entire U.S. team at any given competition.  Athletes have asked me to coach and/or advise them, e.g. Simona Hradil, Jason Han, Stewart Gill, Heidi Gilbert, Sanaz Shahbazi; however, as it is a conflict of interest to act as personal coach for any particular athletes until the U.S. Olympic team has been determined, I had to limit my personal coaching unless it was an international competition.


_Ward D. Jones_
WARD D. JONES

**INTERROGATORY NO. 10:**

Please describe in detail all decisions made by the USTU and/or the USOC

that Plaintiff contends discriminated against Korean-Americans, including but not

limited to a description of the decision, when it occurred, what individual or

individuals were responsible for the decision, and all facts that support Plaintiff's

claim that the decision was improperly or unlawfully discriminatory

**RESPONSE:**

See Declaration of Dae Sung Lee.  Discovery is continuing.

**INTERROGATORY NO. 11:**

Please identify all witnesses whom Plaintiff contends have knowledge

relevant to his claim of improper discrimination by the USTU and/or the USOC.

**RESPONSE:**

See witness list attached. Discovery is continuing.  Plaintiff reserves the right to amend his
witness list.

**INTERROGATORY NO. 12:**

For each and every witness identified by Plaintiff in his response to

Interrogatory No. 12, please describe in detail, witness by witness, all facts

relevant to Plaintiff's claim about which such witnesses have personal knowledge.

11

**RESPONSE:**

Objection: Overly broad, burdensome. Discovery is continuing. See Declaration of Dae Sung Lee.

*Ward D. Jones* (signature)
WARD D. JONES

Please describe in detail Plaintiff's involvement in and knowledge about the negotiation and execution of the Remediation Plan entered into by the USTU and the USOC in January 2004, and all prior proposed settlement agreements, including Plaintiff's role in the final approval of that agreement.

**RESPONSE:** I attended only one meeting on September 24, 2003 with counsel for USTU and heard about the USOC referring to USTU as the Korean Mafia. I had telephone conversations with Sang Lee and executive board about the pending remediation plan. I know there was a less drastic plan that was voted down by the USOC. The executive board of USTU voted down the final remediation plan. But when Sang Lee signed the delegation of his power, the executive board changed its vote and approved the final remediation plan.

**INTERROGATORY NO. 14:**

Please describe in detail all positions of any kind Plaintiff has held with the USTU, including the date selected, the date the position started, and the date the position ended.

**RESPONSE:**
1984-96•AAC Member
1992-96•Tournament Committee Member
1996-97•Vice Chair Tournament Committee
1997-00•Tournament Committee Chair
2001-present•Junior Olympics Committee Chair
1988-96•Executive Board Member
1997-present•Executive Board Member
1996-99•Coaching Science Committee Member
1989-03•Coach of International Championships or Manager
1988-93•Olympic Training Center Coach
1987-88•OTC Resident Athlete
1989, 1997•First Taekwondo coach sent to China by USTU and WTF

12

**INTERROGATORY NO. 15:**

Please describe in detail all "incidents of racism" or acts of discrimination based on national origin by the USOC or any of its members against Korean-Americans of which Plaintiff is aware, including but not limited to, for each "incident of racism" or act of discrimination please identify when it occurred, what individual or individuals associated with the USOC were responsible for the incident or act and all witnesses with personal knowledge about each such incident or act.

**RESPONSE:**

See Declaration of Dae Sung Lee.  Discovery is continuing.


**INTERROGATORY NO. 16:**

Please describe in detail all "incidents of racism" or acts of discrimination based on national origin by the USTU or any of its members against Korean-Americans of which Plaintiff is aware, including but not limited to for each "incident of racism" or act of discrimination, please identify when it occurred, what individual or individuals associated with the USTU were responsible for the incident or act, and identify all witnesses with personal knowledge about each such incident or act.

**RESPONSE:**

See Declaration of Dae Sung Lee.  Discovery is continuing.


## INTERROGATORY NO. 17:

Please describe in detail, including an item-by-item quantification, of all damages Plaintiff claims to have suffered as a result of the alleged discrimination by the USTU and/or USOC.

**RESPONSE:**

See attached Page 14a.


## INTERROGATORY NO. 18:

Please provide, on a month-by-month basis from January 1, 1997 to the present, the revenues of, expenses of (including salary payments to Plaintiff), profits of (including distributions to Plaintiff), Plaintiff's taekwondo school, as well as the median number of students enrolled at the school during each month

**RESPONSE:**

This will be furnished when I obtain it.

## INTERROGATORY RESPONSE NO. 17

1.    SPECIAL DAMAGES

LEE has retained the services of economist Tom Loudat.  Dr. Loudat has opined that LEE has suffered gross future economic loss of $1.9 Million in pretax dollars.  Dr. Loudat uses as his foundation actual economic increases enjoyed by Master Han Wan Lee, the taekwondo coach who was selected to be the 2000 U.S. Olympic Taekwondo coach for the Olympic Games held in Sydney, Australia.

2.    GENERAL DAMAGES

LEE has suffered tremendous embarrassment, mental distress and loss of face as a result of the Defendants' unjustified actions.  His appointment was highly publicized in the local media in mid 2003 and quickly known by his 300 plus students, their families, and his hundreds of former students and his many colleagues nationally and internationally.  He will forever live with a stigma that he was not good enough or that something derogatory was discovered which prompted the USTU or USOC to change their minds about his qualifications even though he was more qualified and experienced than Jean Lopez, the person who replaced him.

3.    PUNITIVE DAMAGES

The removal was done in a malicious, secretive and intentional manner. It was motivated by racial considerations and a desire to remove all Koreans from the organization. It was done on the eve of the Olympic Games after having selected LEE a year before, congratulating him and encouraging him to travel and prepare which he did do over approximately three months during 2003 and 2004.  The defendants therefore face exposure for punitive damages.  LEE will ask for a $1 million in punitive damages.

**INTERROGATORY NO. 19:**

Please identify, including by providing all the contact information required by the instructions, all taekwondo schools and taekwondo instructors that compete with Plaintiff and/or his taekwondo school for students.

**RESPONSE:**

Hee Il Cho dba Cho's Taekwondo at Koko Marina Shopping Center
7192 Kalanianaole Highway, Suite C 200, Honolulu, HI 96825 (808) 396-8900

**INTERROGATORY NO. 20:**

Please identify, including by providing all contact information as required by the instructions, all individuals employed by or who have worked at Plaintiff's taekwondo school at any time from January 1, 1997 to the present, whether as employees or independent contractors, including all tax preparers, accountants, and bookkeepers, identifying each person's position or work performed for the school.

**RESPONSE:**

Dae Sung Lee is the only employee from 1997 to now.

## VERIFICATION

STATE OF HAWAII     )
           )  SS.
CITY AND COUNTY OF HONOLULU )

    Dae Sung Lee, being first duly sworn on oath, deposes and says that the foregoing answers to interrogatories are true and correct to the best of his knowledge and belief.

                 DAE SUNG LEE

Subscribed and sworn to before me
this ___ day of _____ 2005

                
Notary Public, State of Hawaii

Gina Kaiu  Commission
     exp. 2/20/09
Name, Typed or Printed

16

BERVAR & JONES
Attorneys at Law
A Law Partnership

WARD D. JONES   2958-0
1400 Pauahi Tower
1001 Bishop Street
Honolulu, Hawaii 96813
Telephone:  (808) 550-4990
Facsimile:  (808) 550-4991

Attorney for Plaintiff
Dae Sung Lee

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 1 1 2004

at ____ o'clock and ____ min. ____ M.
WALTER A.Y.H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DAE SUNG LEE, | ) | Civil No. 04-00461 SOM LEK |
| | ) | |
| Plaintiff, | ) | DECLARATION OF DAE SUNG LEE; |
| | ) | CERTIFICATE OF SERVICE |
| vs. | ) | |
| | ) | |
| UNITED STATES TAEKWONDO | ) | |
| UNION, a Colorado nonprofit Corporation, | ) | |
| UNITED STATES OLYMPIC | ) | |
| COMMITTEE, a federally chartered | ) | |
| nonprofit corporation,  JOHN DOES 1-10; | ) | |
| JANE DOES 1-10; DOE PARTNERSHIPS | ) | |
| 1-10; DOE CORPORATIONS 1-10; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF DAE SUNG LEE

Declarant DAE SUNG LEE swears and affirms as follows:

1.     He is a U.S. citizen, residing in the State of Hawaii, whose address is 2333 Kapiolani Boulevard, #1111, Honolulu, Hawaii, 96826.  He is of Korean descent.

2.     Declarant makes this Declaration from personal knowledge.

3.     Declarant owns and operates United States Taekwondo Center, a Taekwondo school, located at 820 Hind Drive, Honolulu, Hawaii and has operated the school since 1993.  Declarant is the head instructor of the school. Declarant was born in Korea and moved to Hawaii at age twelve.  Declarant has been a United States citizen since 1977.

4.     Declarant's career has been in the field of Taekwondo since the time he was a child.  Declarant competed in Taekwondo nationally and internationally for many years with many successes.  In addition, after retiring from competition, Declarant remained involved as a coach to competitors both nationally and internationally.  Plaintiff Exhibit "1" is a true and correct resume containing Declarant's accomplishments in the Taekwondo field as a competitor and then as a coach.

5.    Based upon his experience, Declarant believes himself to be well qualified to serve as a coach of the United States Olympic Taekwondo team.

6.    Taekwondo is a martial art which is said to be 2,000 years old. It originated in Korea. As of 1971 it is considered the national sport of Korea. It is taught to Korean children at a very young age. Korea takes pride in the sport and has historically had strong taekwondo teams competing in international competitions including the Olympic Games.

7.    With this head start in the sport it is therefore not unusual that a high percentage of the most experienced taekwondo teachers, sometimes referred to as "masters", taekwondo school owners/operators, competitors and coaches in the United States are of Korean extraction who happened to immigrate to the United States for a better life or are second generation United States citizens.

8.    In Olympic competition each sport must have one National Governing Body recognized by the United States Olympic Committee, which oversees, selects, and governs the United States Olympic Team. Each National Governing Body is typically a widely recognized association within the individual sport and usually organizes and oversees competitions at local, state, regional and national level. Each recognized National Governing Body will be key in helping to selecting through competition Olympic athletes for consideration by the United

States Olympic Committee. Typically the Olympic Committee defers heavily to the recommendations of the National Governing Body or NGB as it is sometimes referred to with respect to athlete and coach candidates for the Olympics.

9.    In the case of taekwondo, the NGB has been United States Taekwondo Union, a Colorado Non-profit Corporation (USTU) since 1984. USTU since that time has attracted all of the best taekwondo teachers, taekwondo school operators, competitors and coaches. USTU therefore attracted a high percentage of Korean Americans to the organization at all levels, including management. Declarant has tried to remain involved in some capacity with USTU and was well acquainted with its key officers and directors since the beginning because as the Taekwondo NGB it was natural for Declarant as a competitor and then a coach at the national and international level to have to work side by side with the NGB.

10.    NGB's typically depend heavily on the USOC for funding for their athletic programs. USOC receives strong financial backing from private corporate sponsors nationally. The USOC provides offices and facilities at the USOC training facility in Colorado Springs for individual NGB's whom it recognizes. USTU is no exception, it too relies heavily on USOC funding for its activities and uses the USOC facility in Colorado Springs as well.

-4-

11.    Because of both the legal and financial power that the USOC has over individual NGBs, NGBs have little power in disputes with the USOC and NGBs tend to have to defer to the USOC.  USTU was no exception and it had little power against the USOC in all aspects.

12.    As of early 2003, Declarant's positions with United States Taekwondo Union were:  Coaching Sciences Committee Member,  Junior Olympics Committee Chair, an individually registered member, Declarant's taekwondo school has been a registered member.

13.    Marked as Plaintiff Exhibit "2" is a true and correct copy of the Bylaws of the United States Taekwondo Union, Inc. (revised as of April 2003).

14.    Marked as Plaintiff Exhibit "3" is a true and correct copy of the Articles of Incorporation of the United States Taekwondo Union, Inc.

15.    To be nominated as an Olympic Games or Pan Am Games coach in 2003, the process is as follows:

(1)    persons must be nominated by USTU Coaching Science Committee (18 members – previous coaches and retired competitors).

(2)    Nominees must be reviewed and voted on and one nominee approved by a majority vote of the executive board (20 members – combination of nominated and elected members all from the Taekwondo community nationally).

(3)    One name is then submitted to USOC for approval.

16.    Declarant's first nomination to head coach for the Olympic team was before April 2003 which he learned from Samuel Pejo, the AAC chairperson.

17.    In April 2003, USTU sent Declarant as Olympic coach for a site inspection at Athens, Greece.

18.    A letter dated August 4, 2003 from USOC Membership and Credentials Committee to USTU was received and circulated which said that various articles were being violated by USTU. The thrust of the complaint was that it accused USTU's president of mismanaging USTU funds, criticized the financial record keeping by USTU, alleged that there was favoritism within some of the USTU competitors; that USTU had "allegiance to Korea", that "USTU followed the Kukkiwon (Korean) system" of certification of athletes. The USOC threatened to take action to decertify USTU as the NGB for taekwondo; to discontinue all funding by USOC to USTU for its programs, and to disallow further use by USTU of the offices and facilities provided by USOC in Colorado Springs, which is the USOC headquarters. A true and correct copy of the letter dated August 4, 2003, by the USOC to USTU is marked as Plaintiff Exhibit "4". Declarant found the statements to be racially offensive.

-6-

19.    A letter dated September 5, 2003, was next received by USTU from the USOC Membership and Credentialing Committee and circulated which contained numerous questions.  One question asked for a response to the perception that Korean-Americans were loyal only to their own, dishonest, and that dishonesty carried over to judging competitions.  A true and correct copy of the letter dated September 5, 2003, is marked as Plaintiff Exhibit "5".  Declarant found those questions to be racially offensive because they demanded answers.

20.    The hearing on decertification by the USOC Credential Committee was set for September 26, 2003.

21.    At one of the settlement negotiation meetings several USOC committee members characterized leadership at the USTU as the "Korean Mafia" in the presence of USTU's attorneys.  One of the USTU lawyers advised Declarant and some other USTU representatives of this fact directly.  This is verified in a memorandum by Bruce Harris, a USTU officer, to Sang Lee, the USTU President. A true and correct copy of the memorandum dated October 9, 2003, is marked as Exhibit "6".  Exhibit "6" was generated and kept in the ordinary course of USTU business.

22.    In January 26 through 31, 2004, Declarant went to Pan Am regional qualification in Mexico as coach and was sent by USTU, but funded by

USOC.

23.    In February 2004, Declarant went at his own expense to the Asian qualification in Bangkok, Thailand, to videotape the foreign teams with Mark Williams.

24.    In October 2003 Declarant had a telephone conversation with Bruce Harris, past executive director of USTU, who confirmed that he had a letter from the USOC which approved Declarant as the U.S. Olympic Taekwondo Team Head Coach.  He congratulated me on my nomination.

25.    On October 8, 2003, Bruce Harris received an email from USOC confirming my nomination as coach of the 2004 U.S. Olympic Team.  A true and correct copy of the email dated October 8, 2003 which Declarant later received from Mr. Harris is marked as Plaintiff Exhibit "7".

26.    In the end of November 2003 Declarant was the coach at the first world qualification for Olympic teams in Paris, France and was assisted by Mark Williams in order to video tape the foreign competition.

27.    In November 26, 2003, Declarant, as a USTU member received a cover letter containing a notice and ballot to vote on a proposed United States Olympic Committee remediation plan.  Among other things the remediation plan required resignations by: the USTU president and executive committee.  A true

-8-

and correct copy of the letter and ballot are marked as Plaintiff Exhibit "8".

28.    Tim Connelly became interim executive director of USTU from November 2003 to January 2004.

29.    On January 26, 2004, Mr. Sang Lee, the president of USTU resigned his position as part of the settlement with USOC, referred to as the remediation plan.

30.    As a result of the remediation plan, there was a large impact on Korean-American members at all levels of USTU soon after January 26th, as follows:

- All six of the USTU officers were forced to resign; four of six, or 66%, were Korean-American.

- All nine of the appointed executive committee members were eliminated as positions; six of nine, or 66%, were Korean-American.

- All 50 elected and appointed state presidents were removed, board members appointed, state presidents removed; twenty-three, or 45%, were Korean-Americans.

31.    On February 7, 2004, pursuant to the remediation plan, the new governance committee of USTU was installed with only one of the five having a taekwondo background – Juan Moreno. The other four were Steve Locke, Rich Bender, Tom Baggiano and Virginia Witte. The USOC appointed an executive

-9-

director and CEO named Bob Gambardella who took over the day to day management.

32. On March 18, 2004, Declarant sent a letter to Mr. Gambardella as CEO of USTU requesting an update of Declarant's status as coach and summarizing his professional accomplishments qualifying him for the position. A true and correct copy of the letter dated March 18, 2004, is marked as Plaintiff Exhibit "9".

33. Declarant attended the first Olympic trial in Colorado Springs around March 26, 2004. Declarant visited Mr. Gambardella at his office and talked to him. Declarant asked if he received my letter. Secretary brought it in. Mr. Gambardella said it was a good letter. He said there are going to be some changes and more study regarding this position. He said he will discuss with Declarant further and let Declarant know what is going on. He said "I'm new to this sport." He said because of the remediation plan, he has to look into it further. He said Declarant's name is still on the list of olympic coach candidates.

34. That weekend, March 27, 2004, Declarant met Bruce Harris, former USTU executive director who served until October 31, 2003, and asked for the letter from USOC approving him. Mr. Harris said he has the email in his computer and will research, retrieve and send to Declarant.

-10-

35.    The October 8, 2003, email to Mr. Harris from USOC was copied to Declarant in April 2004.

36.    At no time was Declarant's conduct in Hawaii or positions in USTU criticized by USOC and he was not asked to resign any positions.  As in every controversy there are two sides to every dispute and USTU and Declarant believed that USTU had valid defenses and explanations for the bulk of the claims by USOC.  However, USTU had neither the economic resources or influence to fight USOC and ended up agreeing to all of USOC's demands in order to keep its certification and funding.

37.    On April 14, 2004, Declarant was faxed a letter from Mr. Gambardella saying that they were reevaluating the coach selection criteria and reduced the number of credentials to one because of the size of the team.  He advised that based upon the recommendations of the new governing committee of USTU, the USOC executive committee vacated its prior approval of the head coach position, thus Declarant's position was vacated.  It attached new coach selection criteria.  A true and correct copy of the letter dated April 8, 2004, is marked as Exhibit "10".

38.    Declarant attended the Second Olympic trials on April 18, 2004 in Colorado Springs.  Declarant bumped into Mr Gambardella at a townhouse

-11-

meeting for USTU. We said "hi" and Mr. Gambardella asked Declarant if he got his April 14th letter, and Declarant said "yes."

39.    Declarant received no further contact from USTU. Declarant wanted to know his coaching status and therefore sent a new letter to Mr. Gambardella on June 2, 2004 via email, and courtesy copied Mr. Scherr, the USOC executive CEO and sports director. It asked for status and listed Declarant's coaching accomplishments qualifying him for the position including those successes as U.S. Mens team Coach at the 2003 Pan American Games, an important regional competition. It also listed the work he was doing in the event he was renominated as coach. A true and correct copy of the email dated June 2, 2004, is marked as Plaintiff Exhibit "11".

40.    On June 2, 2004, Declarant received an email from Mr. Gambardella, stating "Thank you, I received letter, I will talk to you soon."

41.    Around June 18, 2004, Declarant called Samuel Pejo, the AAC (athlete adviser counsel for USTU) chair who advised that he believes USTU governance committee (5 members) had a vote to nominate Jean Lopez for coach.

42.    In Atlanta, Georgia, the Junior Olympic Taekwondo Championship was held from June 30, 2004, to July 5, 2004, which Declarant attended as a master. Declarant went down to say hello to Mr. Camparella, and he

-12-

said hello.  He said "How do you like tournament" and that was all.

43.    The tournament-announcer did not announce anyone as Olympic coach for the 2004 U.S. Taekwondo team.  Usually this position is announced at that event in the opening ceremony.  Therefore, the position appeared to be still vacant.

44.    USTU sent nothing further to Declarant.  Around July 15, 2004, Declarant consulted with legal counsel to help him determine his status.  Counsel sent a letter to USTU on July 19, 2004, via fax on Declarant's behalf inquiring as to his status and reasons.  The letter also included the email previously received from Bruce Harris verifying approval by the USOC of Declarant as head coach.  A true and correct copy of the letter dated July 19, 2004, is marked as Plaintiff Exhibit "12".

45.    Declarant's counsel received a letter on July 21, 2004, from USTU via fax which was the first written notice that the position of head coach had been filled by Jean Lopez on July 19, 2004.  It also did not give any reasons as to why Declarant was removed in the first place and not reappointed after the new criteria were put into force.  A true and correct copy of the letter dated July 21, 2004, is marked as Plaintiff Exhibit "13".  The decision on the U.S. Olympic Head Coach was apparently made by only five or six people (the new governance), only

one being from taekwondo background instead of the 20 members who considered and voted on the position before the remediation plan.

46.    Declarant believes, based upon the above chronology, that the decision to remove him had nothing to do with relevant qualifications for the coaching position. Instead, he believes that his Korean extraction was the primary reason and second to a more limited extent his past good relations with prior governance who also happened to be in large part Korean-Americans.

47.    Last year, Declarant coached Steven Lopez at the Pan American Games held in August 2003. Steven Lopez is now on the U.S. Olympic Team. Though Lopez is not Declarant's student, he won a gold medal. At the same event Tim Thackrey, who is also not Declarant's student, won a gold medal. Thackrey was not expected to win a gold medal yet prevailed. In addition, at the World Championships in Germany in August, 2003, I was head coach when Steven Lopez received a gold medal. Though, Jean Lopez was the men's assistant coach and sat with Steven ringside, I made that assignment and in my view I share credit with Jean for the award received by Steven Lopez. This is offered as recent proof that pairing an athlete to his home coach is not necessary to great success in competition.

48.    In the 2000 Olympic Games in Sydney, Australia, Declarant

-14-