IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DAE SUNG LEE, | ) | CIVIL NO. 04-00461 SOM-LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING DEFENDANTS' |
| vs. | ) | MOTIONS FOR RECONSIDERATION |
| | ) | |
| UNITED STATES TAEKWONDO | ) | |
| UNION, a Colorado nonprofit | ) | |
| Corporation; UNITED STATES | ) | |
| OLYMPIC COMMITTEE, a | ) | |
| federally chartered nonprofit | ) | |
| corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANTS' MOTIONS FOR RECONSIDERATION

I.     INTRODUCTION.

On January 26, 2006, this court denied Defendants' motion to preclude the testimony of Thomas Loudat, an economist designated by Lee as his expert on damages ("Loudat Order"). That same day, the court also denied Defendants' motion to preclude the claim for damages belonging to the United States Taekwondo Center, Inc. ("USTC"), Lee's Taekwondo school, and to strike evidence related to the school's lost profits ("USTC Order"). Defendants United States Olympic Committee and United States Taekwondo Union now move for reconsideration of those orders. Defendants' motions merely disagree with this court's orders and raise no persuasive arguments. The motions are both therefore denied.

II.        RECONSIDERATION STANDARD.

In the Ninth Circuit, a successful motion for reconsideration must accomplish two goals.  First it must demonstrate some reason why the court should reconsider its prior decision.  Second, a motion for reconsideration must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.  See Na Mamo O `Aha `Ino v. Galiher, 60 F. Supp. 2d 1058, 1059 (D. Haw. 1999); Donaldson v. Liberty Mut. Ins. Co., 947 F. Supp. 429, 430 (D. Haw. 1996). Courts have established three grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice.  See Mustafa v. Clark County Sch. Dist., 157 F.3d 1169, 1178-79 (9th Cir. 1998).  The District of Hawaii has implemented these standards in Local Rule 60.1, which states:

> Motions for reconsideration of interlocutory orders may be brought only upon the following grounds;
>
> (a) Discovery of new material facts not previously available;
>
> (b) Intervening change in law;
>
> (c) Manifest error of law or fact.
>
> Motions asserted under Subsection (c) of this rule must be filed not more than ten (10) business days after the court's written order is filed.

Disagreement with a previous order is an insufficient basis for reconsideration, and reconsideration may not be based on evidence and legal arguments that could have been presented at the time of the challenged decision. <u>Hawaii Stevedores, Inc. v. HT & T Co.</u>, 363 F. Supp. 2d 1253, 1269 (D. Haw. 2005). "Whether or not to grant reconsideration is committed to the sound discretion of the court." <u>Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation</u>, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing <u>Kona Enter., Inc. v. Estate of Bishop</u>, 229 F.3d 877, 883 (9th Cir. 2000)).[1]

---

[1] Defendants also bring this motion under Rule 60(b) of the Federal Rules of Civil Procedure, which states that

> the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b). This rule concerns <u>final</u> rulings, which are not in issue here. In any event, "[m]otions for relief under Fed. R. Civ. P. 60(b) are addressed to the sound discretion of the trial court." <u>Thompson v. Housing Auth. of Los Angeles</u>, 782

III.    ANALYSIS.

    A.  The Motion to Reconsider the Loudat Order is Denied.

        1.  Loudat Will Not Be Allowed to Opine About Causation.

In the Loudat Order, this court noted that, "[a]t the hearing, Lee represented that Loudat is being offered as an expert on the amount of damages Lee personally suffered, not on the causation of those damages. In other words, Loudat will be assuming that Lee was damaged by Defendants' alleged violation of § 1981 and will merely be asked to opine on the amount of damages suffered by Lee." See Order at 2. This statement was based on a representation by Lee's attorney, Glenn Uesugi, that Loudat, an economist designated by Lee as his expert, will assume that Lee's income would have increased had he been the United States Taekwondo Olympic team coach and will testify only about the amount of the increase. Uesugi unambiguously represented that Loudat will not opine that being an Olympic coach would have raised Lee's earnings, stating instead that Han Won Lee will testify about causation by talking about how his personal experience as an Olympic coach affected his income.[2]

---

F.2d 829, 832 (9th Cir. 1986).

[2]Defendants state that Lee has not identified any expert who will testify as to causation. Defendants do not explain why an expert is required. Han Won Lee may testify about his personal experience, which may or may not establish causation.

4

Given these statements, which were made in front of Defendants' attorneys and this court, Defendants' statement that "Dr. Loudat is the only witness who will testify as to causation" borders on being frivolous. Defendants present no manifest error of fact that would justify reconsideration of the Loudat Order. The court, of course, will hold Lee to his representation that Loudat will not testify as to causation and will allow Defendants to vigorously cross-examine Loudat about his <u>assumption</u> that Lee was damaged by being removed as the coach of the Olympic team.

        2.    <u>Mere Disagreement With This Court's Rule 702 Analysis Does Not Justify Reconsideration.</u>

Defendants next ask for reconsideration of this court's Rule 702 determination that Loudat may testify as an expert, rehashing the arguments they raised in their underlying motions. Those arguments are no more persuasive now than they were then.

For example, Defendants contend that Loudat's opinions are not reliable because they are not based on proper methodology. They reassert the argument from a footnote in their motion, stating that the "best-case" scenario was not reliable because "Loudat conceded that an economist properly attempting to assess damages would use regression analysis." Motion at 19-20 n.6; Motion for Reconsideration at 5. That argument, however, suffers from the same problem plaguing many of Defendants' assertions, as it is only partially supported by the record. Defendants say that Loudat made the regression analysis

concession on page 84 of his videotaped deposition.  Loudat did testify that a regression analysis based on "proper data points" would be "much more appropriate," but Defendants' representation of his statement overreaches by failing to add Loudat's qualification that such data points were unavailable.  See Loudat Videotaped Deposition at 84.  Nothing in the record before the court directly supports Defendants' contention that "Dr. Loudat did not follow this proper procedure [conducting a regression analysis] . . . solely because of monetary limitations placed upon him by Plaintiff's counsel."  See Motion for Reconsideration at 5.[3]  At best, Loudat later testified that an analysis is

---

[3] Defendants also overstate their case by saying that a 20% discount rate is typically used in evaluating the lost profits of small businesses.  See Motion to Preclude Testimony (Nov. 15, 2005) at 12.  In support of that representation, Defendants cite page 148 of Loudat's videotaped deposition and his expert report, neither of which supports the representation.  See id.  Nor does Defendants' citation of Chung v. Kaonohi Center Company, 62 Haw. 594, 618 P.2d 283 (1980), abrogated on other grounds by Francis v. Lee Enterprises, Inc., 89 Haw. 234, 971 P.2d 707 (1999), support the representation.  On page 34 of Defendants' motion to preclude testimony, Defendants state that the Chung court, in footnote 13 of that opinion, applied a 20% discount rate for a similarly situated small business.  However, Chung did not actually state that it was applying a 20% discount rate or that the 20% discount rate is typically applied.  Instead, Chung examined whether a jury had sufficient data from which to make a rational judgment as to the loss of future profits.  The 20% discount rate had only been proposed by the defendant's expert in that case.  Chung did not adopt that discount rate as the proper rate to be applied in evaluating future profits of small businesses.  Nor is it clear that the jury believed the defendant's expert and applied the 20% discount rate in that case.

Defendants similarly provide an inadequate basis for their statement that the USTC was formed in 1993 as a subchapter

typically better when it is based on more information, noting that more information may be available when there are no resource constraints. Loudat Depo. at 88. Loudat conceded that, if he were asked to examine many factors, and if there were no limitation on time or money, he would examine those factors in doing his analysis. Id. at 89-90. But the record before the court does not establish that Loudat failed to do a regression analysis in the present case simply because of monetary constraints.[4]

Defendants next repeat their earlier attack on Loudat's "low-loss" scenario, rearguing that Loudat is unreliable. In the original motion, it was unclear how Loudat determined the low-case amount.[5] At the hearing, the parties appeared to have

---

S corporation. See Motion to Preclude Loudat Testimony at 1-2 (citing Dae Sung Lee Videotaped Deposition (June 23, 2005) at 79, 83-84). The pages of Lee's deposition transcript cited by Defendants establish that USTC was opened in 1993, but do not show that the USTC was a subchapter S corporation. It may well be that the USTC is a subchapter S corporation, but that is not supported by the evidence submitted for that proposition.

[4]Loudat testified that he did not "believe to a reasonable degree of economic probability [that] Dae Sung Lee would have achieved the best-case scenario." Loudat Depo. at 43-44. Loudat also testified that, in the more-likely-than-not scenario, the base-case amount would be the amount of Lee's economic loss. Loudat Depo. at 43-44.

[5]In the Motion for Reconsideration, Defendants state that "the Court even acknowledged its inability to clearly understand how the low loss scenario was calculated." See Motion for Reconsideration at 7. Any inability to clearly understand the low-loss scenario arose because the papers and portion of the deposition transcript submitted to the court did not clearly explain how Loudat reached the low-loss amount.

agreed that Loudat's low-loss amount was based on his reading of a labor statistics report and on <u>his assumption</u> that, had Lee been the Olympic coach, his income would have increased to the 90th percentile of coaches in Honolulu.  <u>See</u> <u>also</u> Summary of Earning Losses to Dae Sung Lee (March 14, 2005) at 6 ("This scenario posits that[,] due to Olympic coaching experience[,] Master Lee['s] total net from USTC would have increased from the mean earnings profile for an [sic] 'coach athletic' to the 90th percentile earnings profile.").  Defendants again attempt to recast Loudat's assumption as "speculation," saying that it was based on a statistics report that Loudat did not fully understand and on Loudat's guess that Lee's income would have increased to the 90th percentile.  These arguments provide the court with no reason to reconsider its earlier ruling that Defendants' claims of unreliability generally attack "the underlying assumptions made by Loudat, rather than his methodology.  Defendants' arguments therefore go to the weight that should be accorded Loudat's testimony, rather than its admissibility."  <u>See</u> Order at 8.  At best, Defendants "respectfully disagree" with the Loudat order.  As noted above, however, mere "disagreement" does not justify reconsideration.  <u>See</u> <u>Hawaii Stevedores</u>, 363 F. Supp. 2d at 1269.

      B.    The Motion for Reconsideration of the USTC Order is Denied.

Defendants' motion for reconsideration of the USTC Order misreads that order. This court did not, as Defendants contend, rule that Lee may recover damages suffered by the USTC. The court ruled that evidence regarding Lee's compensation from that school "is relevant to the damages Lee personally suffered because of the alleged § 1981 violation. Lee appears prepared to present evidence that his personal earnings were tied to the school's revenue. Under those circumstances, it makes no sense to preclude evidence of the school's revenue. This is not the typical case in which an employee's salary or wages do not vary if the employer has a good or a bad year." USTC Order at 6. The USTC Order therefore allows the introduction of evidence regarding USTC's revenue and allows Lee to argue to the jury that his salary or wages would have increased because of an increase in USTC's revenue.

The USTC Order did not state that Lee, as a shareholder of USTC, could recover the damages suffered by USTC.[6] Nor did

---

[6] The cases cited by Defendants for the proposition that Lee, as the alleged sole-shareholder of USTC, cannot recover damages suffered by that corporation do not preclude Lee's recovery of his own lost wages or salary. See, e.g., Sherman v. British Leyland Motors, Ltd., 601 F.2d 429, 439-40 (9th Cir. 1979) (an action for an injury to the corporation must be brought by the corporation); Von Brimer v. Whirlpool Corp., 536 F.2d 838, 846 (9th Cir. 1976) (noting that, under California law, a shareholder may not maintain an action for wrongs suffered by a corporation on the theory that such wrong devalued his stock and

the order state that Lee could recover USTC's lost profits.  The order merely held that "Lee can recover damages he personally suffered as a result of Defendants' alleged violation of § 1981" and that "[e]vidence regarding Lee's compensation from his Taekwondo school is relevant to those damages."  Accordingly, even though Lee may not recover the lost profits of USTC, he may introduce evidence of those lost profits, including the expert testimony of Loudat on that subject, to establish his own personal damages.

Because Defendants fail to establish manifest error, Defendants' motion for reconsideration of the USTC Order is denied.

---

the stock of other shareholders); Erlich v. Glasner, 418 F.2d 226, 228 (9th Cir. 1969) (same).  Because Lee is not seeking to personally recover damages for any injury suffered by the USTC, these cases are distinguishable.

V.  CONCLUSION.

The motions for reconsideration of the Loudat Order and the USTC Order are denied.  The court urges Defendants to consider carefully whether they satisfy reconsideration requirements, so as to avoid the possible imposition of sanctions for baseless reconsideration motions.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 10, 2006.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Lee v. United States Taekwondo Union, et al., Civil No. 04-00461 SOM/LEK; ORDER DENYING DEFENDANTS' MOTIONS FOR RECONSIDERATION.