ORIGINAL

BERVAR & JONES
Attorneys at Law
A Law Partnership

WARD D. JONES          2958-0
1400 Pauahi Tower
1001 Bishop Street
Honolulu, Hawaii 96813
Telephone: (808) 550-4990
Facsimile: (808) 550-4991
E-mail:  wdj@bervar-jones.com

MICHAEL J. GREEN       4451-0
GLENN H. UESUGI        4865-0
345 Queen Street, 2nd Floor
Honolulu, Hawaii 96813
Telephone: (808) 521-3336
Facsimile: (808) 566-0347
E-mail:  michaeljgreen@hawaii.rr.com
E-mail:  puunui@aloha.net

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 1 4 2006

at ____ o'clock and ____ min. ___ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

STATE OF HAWAII

| | | |
|---|---|---|
| DAE SUNG LEE, | ) | Civil No. 04-00461 SOM LEK |
| | ) | |
| Plaintiff, | ) | PLAINTIFF'S PRETRIAL |
| | ) | STATEMENT; EXHIBITS "A & |
| | ) | B"; CERTIFICATE OF SERVICE; |
| UNITED STATES TAEKWONDO | ) | |
| UNION, a Colorado nonprofit | ) | |
| Corporation, UNITED STATES | ) | New Trial Date:   April 4, 2006 |
| OLYMPIC COMMITTEE, a federally | ) | |
| charged nonprofit corporation, JOHN | ) | |
| DOES 1-10; JANE DOES 1-10; | ) | |

-1-

DOE PARTNERSHIPS 1-10; DOE )
CORPORATIONS 1-10, )
                             )
              Defendants. )
                             )
_____ )

## PLAINTIFF'S PRETRIAL STATEMENT

COMES NOW, Plaintiff DAE SUNG LEE, by and through his undersigned

attorneys WARD D. JONES, MICHAEL J. GREEN and GLENN H. UESUGI,

hereby respectfully submits his Pretrial Statement in accordance with Local Rule

16.6 of the Rules of the United States District Court, District of Hawaii and states

as follows:

      a.     Parties.

          This Statement is filed on behalf of Plaintiff Dae Sung Lee.

      b.     Jurisdiction of Venue.

          The action arises under 42 USCA 1981 and 28 USCA 1343.

Defendants USTU and USOC dispute subject matter jurisdiction on the basis of

the Sports Act which the court has already heard and ruled upon.  36 U.S.C.

Section 220503(3)(a) (2001).

c.    Substance of Action.

This action concerns the wrongfully terminated coach of the 2004 United States Olympic Taekwondo Team, Plaintiff Dae Sung Lee (hereinafter "Lee"). Plaintiff Lee alleges that he was removed as coach of the 2004 United States Olympic Taekwondo Team for racist reasons. Plaintiff Lee was originally selected as the 2004 Olympic Taekwondo Coach in 2003 by Defendant United States Taekwondo Union (hereinafter "USTU"), said selection being approved and ratified by Defendant United States Olympic Committee (hereinafter "USOC") in that same year. In the fall of 2003, Defendant USOC's Board of Directors adopted a resolution to revoke Defendant USTU's USOC membership for alleged financial and other reasons. An agreement was reached between Defendants USOC and USTU on or about January 27, 2004, in which the USOC agreed to remediate the USTU into compliance. In April 2004, Defendant USTU notified Plaintiff Lee that his appointment as the 2004 United States Olympic Taekwondo Coach had been revoked.

d.    Undisputed Facts.

Except for the residence of the parties, all other facts appear to be in dispute at present.

-3-

e.    <u>Disputed Factual Issues</u>.

(1)    Whether racial consideration was a reason for (1) enactment of new coach selection criteria by USTU and USOC and/or (2) the replacement of plaintiff as Olympic Coach.

(2)    Whether Robert Gambardella made racist comments to various persons during the period that plaintiff was removed and after.

(3)    Whether Ms. Jeannie Picariello, a member of the USOC Membership and Credentials Committee, during a meeting in October 2003, referred to the USTU as a 'Korea Mafia-run organization.'

(4)    Whether the new USTU governing body ratified Jean Lopez as the new Olympic Coach on March 25, 2004 and before the Olympic Trials.  Whether the March 25, 2004 USTU minutes are accurate as to the substance of matters discussed.

(5)    Whether USTU and USOC followed its own procedures and bylaws in enacting new coach selection procedures in 2004.

(6)    Whether USTU and USOC followed its own procedures and bylaws in applying the new coach selection procedures in 2004.

(7)    Whether USOC had a prior history of racial discrimination against Koreans.

f.      <u>Relief Prayed</u>.

General Damages for plaintiff's mental pain, suffering, humiliation, embarrassment and damage to his professional reputation and image locally and internationally.

Special Damages for economic losses in the past and future.

Punitive Damages for the intentional and malicious action of removal.

Reasonable Attorneys fees and costs.

g.      <u>Points of Law</u>.

1.      Under <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973) a plaintiff alleging disparate treatment must first establish a prima facie case of discrimination. <u>Id.</u> at 802.  Specifically, the plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; or (4) similarly situated individuals outside his protected class were treated more favorably. <u>Id.</u> See also <u>Raad v. Fairbanks North Star Borough School District</u>, 323 F.3d 1185, 1195-96 (9th Cir. 2003).

2.      Circumstantial and direct evidence may include impact of the action, a historical background of discrimination, the specific sequence of events leading up to the challenged action, departures from normal procedural

sequence, substantive departures, and individual instances of discrimination.

Harkness v. Sweeny Independent School Dist. of Sweeny Tex., 554 F.2d

1353 (5th Cir. 1977) on rem. jmt. aff'd, 608 F.2d 594 (5th Cir. 1979). In

evaluating whether the defendant's articulated reason is pretextual, the trier

of fact must consider the same evidence that the plaintiff introduced to

established his prima facie case. Cordova v. State Farm Ins. Companies, 124

F.3d 1145, 1149-50 (9th Cir. 1997). It is improper for a Court to ignore the

evidence in support of the prima facie case when considering the issue of

Pretext. Stegall v. Citadel Broadcasting, 350 F.3d 1061, 1068-69 (9th Cir.

2003). In Pavon v. Swift Transp. Co. Inc., 192 F.3d 902, 908 (9th Cir. 1999),

the Ninth Circuit held that to establish a claim under Section 1981, the

plaintiff must prove he was subjected to intentional discrimination based on

his race and not *solely* on the basis of the place or nation of their origin.

3.    A plaintiff within a protected class might be able to prove pretext by

showing that the employer promoted members of other racial classifications

who lacked some of the job qualifications upon which the employer relied.

Lesane v. Hawaiian Airlines, 75 F.Supp.2d 1113, 1123 (D.Haw. 1999).

4.    In his concurring opinion in Saint Francis College v. Al-Khazraji, 481 U.S.

604, 614, 107 S.Ct. 2022, 95 L.Ed2d 582 (1987), Justice Brennan noted that

the line between discrimination based on ancestry or ethnic characteristics and discrimination based on place or nation of origin is not a bright one. Often, the two are identical as a factual matter: one was born in the nation whose primary stock is one  own ethnic group. Moreover, national claims have been treated as ancestry or ethnicity claims in some circumstances. Id. The situation described by Justice Brennan is applicable to the present case, since Plaintiff comes from Korea, a country in which he was born in a nation whose primary stock is the Korean ethnic group. In the present case, race and national origin are the same thing, at least as far as Plaintiff Dae Sung Lee  situation is concerned.

5.    Finally, if the defendant can articulate some legitimate, non-discriminatory reason for the allegedly discriminatory conduct, then the plaintiff must be given a full and fair opportunity to demonstrate by competent evidence that the reasons articulated by the defendants are in fact a pretext or a coverup for its discriminatory decision. The inquiry is twofold: Plaintiff can prove pretext by: (1) indirectly by showing that the employer  proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer. Raad v. Fairbanks

North Star Borough School District, 323 F.3d 1185, 1194 (9th Cir. 2003).

6.    Plaintiff Dae Sung Lee was qualified to serve as the United States
Taekwondo Coach at the 2004 Olympic Games. As the court noted in its
decision Lee v. U.S. Taekwondo Union, 331 F.Supp.2d 1252, 1262-63 (D.
Haw. 2004), Plaintiff was a highly successful Taekwondo athlete who won a
gold medal in the 1987 Pan American Games and was a Taekwondo
National Champion from 1979 through 1987.

7.    Mr. Jean Lopez, the gentleman selected to coach the 2004 US Olympic
Taekwondo Team, did not have any experience in Team Leader or Team
Manager duties, unlike Plaintiff Dae Sung Lee. This is an important point
because the original letter submitted by Defendant USTU requested the
vacation of Plaintiff Olympic Coach status because there was only one
credential for Taekwondo and the coach had to be someone who could
fulfill both the Coach and Team Leader positions. Mr. Jean Lopez was pre-
selected by the USOC and USTU excluding Plaintiff for wrongful
discriminatory reasons.

8.    The new Olympic Coach criteria are also suspect in that neither USTU
Executive Director Robert Gambardella nor USOC Sport Performance
Director Kelly Skinner had any experience at all in Taekwondo. Neither had

practiced Taekwondo, competed or coached in any Taekwondo

tournaments. And yet, these two gentlemen were the chief architects of the

new coaching criteria.

9. The admission of long term harassment of racial minorities in an

organization is admissible to show a persistent pattern of racial hostility.

Lam v. University of Hawaii, 40 F.3d 1551, 1562 (9th Cir. 1994). In Lam,

defendants argued that certain acts and comments were inadmissible

because it concerned acts and comments that were too remote in time or too

attenuated from plaintiff situation. The Ninth Circuit rejected such

arguments and held that evidence of long term harassment of other members

of Plaintiff racial minority by members of defendant organization was

admissible becaus In evaluating whether the defendant articulated reason is

pretextual, the trier of fact must consider the same evidence that the plaintiff

introduced to established his prima facie case. Cordova v. State Farm Ins.

Companies, 124 F.3d 1145, 1149-50 (9th Cir. 1997). There was a previous

attitude of racism towards Koreans and Korean Americans as demonstrated

by the comments made by Mr. Thomas Satrom of the USOC Membership

and Credentials Committee in 2003. In his August 4, 2003 letter to the

USTU, Mr. Satrom cited a number of problems and issues concerning the

USTU and its leadership. Among the problems noted were:

> An allegiance to Korea to the detriment of U.S. programs
> and the interests of U.S. athletes.

> An adherence to the [Korea] Kukkiwon certification
> process and a failure to develop a U.S. Dan Certification
> program.

> Questionable use of funds (such as. . . chartering aircraft
> to deliver medals from Korea).

SOF #10. (See Thomas Satrom  August 4, 2003 letter.)

Mr. Satrom followed up with the second letter on September 5, 2003

making the following accusations and charges:

> It has been reported that USTU chartered an airplane to
> deliver medals from Korea for the 2003 USTU Junior
> Olympic Taekwondo Championships. Please explain
> why medals were ordered from Korea

> Please provide a detailed summary of the Kukkiwan
> program [which is based in Korea]. The Committee
> would like a complete understanding of this program

> How does the USTU respond to the perception that the
> USTU is governed by cultural values emanating from
> Korea, which may not be in harmony with American
> values. The perception seems to be that loyalty to one
> instructor or superior is all important, that  espect means
> subservience, and that competitions are often based on
> olitical determinations  not on who is the best athlete on
> the mat. As an individual stated to the Committee,  l]ong
> ago I realized the USTU leadership could never be held
> accountable. For the most part, they did not understand
> our American culture of sport, nor embrace its

underlying values of un-biased officiating, a level
playing field, and fair play. As another individual stated
to the Committee, orean culture places a higher value on
loyalty to one  family, friends, school, etc. than it does no
honesty and fair play. The result is that the best man
usually doesn win, but the favorite son does. As a third
individual stated,  he  orean good  l boy system of
promotions, certifications, and selections of  ho attends
what has got to go.
SOF #11. (See Thomas Satrom letter dated September 5,
2003.)

Other people in leadership positions within the USOC have also expressed

racial hatred and animosity towards Koreans and Korean Americans. One

such person is Ms. Jeannie Picariello, another member of the USOC

Membership and Credentials Committee. According to Ms. Jill Chalmers,

an attorney for the USTU, stated that during a meeting in October 2003,

several members of the M&C Committee had referred to the USTU as a

Korea Mafia-run organization.  She also testified that Picariello admonished

USTU to 'cut out the bowing crap' referring to the practice in most martial

arts including Taekwondo for competitors to bow to eachother and the

officials during competition.

10.    There are specific events of discriminatory behavior leading up to plaintiff's

removal as coach. According to Ms. Brunner, she had a conversation with

Mr. Gambardella at the 2004 US Open Taekwondo Championships held in

February 2004.  This was soon after the USOC took over the USTU for

remediation purposes and Mr. Gambardella was the newly appointed USTU

Executive Director.  Ms. Brunner testifies that during the course of the

conversation, she inquired as to why Ms. Barbara Wakefield was appointed

the USTU Interim Referee Chair and why someone who had more support

in the Taekwondo referee community, including racial minorities such as

Korean Americans was not selected.  This was a concern for Ms. Brunner

because of the fact that Korean Americans have the higher referee

certifications due to their Taekwondo seniority and have the experience

necessary to properly direct and/or officiate at Taekwondo National,

Regional and International competitions.  (See Declaration of Mary

Brunner).  According to Ms. Brunner, USTU Executive Director Robert

Gambardella replied  don  want any more Koreans involved at all, they are

all crooks. When Ms. Brunner replied  ust because a few got caught doing

something doesn  mean you can exclude them all.  Mr. Gambardella

responded all of them are crooks as far as I  concerned. This showed racial

animus at the same time he was formulating the new coach selection

criteria.

11.    During and after the 2004 Olympics there was further evidence of racism.

Defendants discriminated against OTC Resident Coach and US Taekwondo National Coach Chul Ho Kim in preventing him from participating as an Olympic Coach at the 2004 Olympic Games. Mr. Gambardella and Mr. Skinner both relied on the weightlifting criteria to select coaches, with the first preference going to the National Coach residing at the Olympic Training Center in Colorado Springs. If Defendants had adopted the weightlifting criteria in their entirety, then Mr. Chul Ho Kim would have been considered for the 2004 Olympic Coaching position.  Soon after the 2004 Olympic Games were completed, Mr. Kim returned to OTC to find that the locks to his office were changed and that he could not gain access to the OTC cafeteria.   Soon thereafter, Mr. Kim was notified by Mr. Gambardella that his position was terminated.  When Mr. Chul Ho Kim went to speak to Mr. Gambardella about his position, Mr. Gambardella fired Mr. Kim and told him to go back to Korea. Mr. Kim was very upset with the comments made by Mr. Gambardella to the point where he felt racially discriminated against by Mr. Gambardella. In <u>Costa</u>, the Supreme Court held that circumstantial and direct evidence should be treated alike, noting: circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. <u>Costa</u>, 123 S.Ct at 2154;

-13-

McGinest, 360 F.3d at 1122.

12.    Although defendants argue that plaintiff released his claims, they fail to have an agreement which qualifies as a valid settlement of his individual claims against them.  A compromise or settlement is an agreement to terminate, by means of mutual concessions, a claim which is disputed in good faith or unliquidated. Sylvester v. Animal Emergency Clinic of Oahu, 825 P.2d 1053, 72 Haw. 560 (1992).  Like other contracts, settlement agreement requires offer and acceptance, consideration, and parties who have capacity and authority to agree. Sylvester, supra.  A compromise and settlement should be construed to include only those matters the parties intended to include. Wigington v. Pacific Credit Corp., 634 P.2d 111, 2 Haw. App. 435 (Haw. App. 1981).  A release of claims under 1983 is valid only if it results from a decision which is voluntary, deliberate, and informed.  Jones v. Taber, 648 G. 2d 1201, 1203 (9th Cir. 1981).

13.    Though defendants argue application of the after acquired evidence rule it is inapplicable because they had notice.  McKennon v. Nachiville Banner Publishing Co., 513 U.S. 352 (1995). McKennon was an age discrimination case in which evidence unknown to the defendant employer was discovered during litigation which would have provided independent and sufficient

grounds for PLAINTIFF's termination.  There, the defendant claimed and

the court assumed for purposes of its analysis that had the defendant known

of the PLAINTIFF'S misconduct (copying confidential documents), it

would have discharged her at once for that reason.  Id.  The court held that it

was appropriate to limit relief about whom evidence of independent

wrongdoing was discovered.  Id.  The doctrine is to give due account for the

corresponding equities that have arisen from the employees wrong-doing.

Id.  The court said the application must be case by case based upon the

facts.  Id.  Kelly Skinner, as the USOC employee of Sports Partnerships

responsible for taekwondo, attended the May 23, 2003 USTU meeting, and

after listening to the discussion regarding Olympic coach selection and

USTU voting irregularities, wrote a letter dated June 3, 2003 to Gary

Johansen of the USOC legal department, Jim Scherr, Director of USOC

Sports Partnerships the USOC auditing department, and others summarizing

the discussion; stating that athletes were involved with the nomination but

not the voting process, and asserting that this was a violation of USTU DRC

approved selection procedures.   Mr. Skinner thus gave notice to key USOC

decision makers and in doing so removed any doubt that USOC had full

knowledge of any USTU voting irregularities beginning on May 22, 2003

and certainly by June 3, 2003.  Of course, Bruce Harris, USTU executive

director was in attendence at the May 22, 2003 USTU conference  and

therefore USTU had full notice as well.  Given that fact alone, the doctrine

of 'newly acquired evidence' is inapplicable because the subject evidence is

*not newly acquired.*  Rather, it is old evidence that both USOC and USTU

and their in house lawyers have now had for over two years and which they

consciously chose never to act upon.  Therefore the the <u>McKennon</u> doctrine

is inapplicable.  Second, <u>McKennon</u> places the burden of proof ( on

employer) to show not only that it could have fired an employee for the later

discovered misconduct but that it would in fact have done so.  <u>O'Day v.</u>

<u>McDonnell Douglas Helicopter</u>, 79 F. 3d 756 (9th Cir. 1996). Finally,

<u>McKennon</u> is inapplicable because it is premised on equity and a finding of

independent wrongdoing by the PLAINTIFF as a precondition to

application of the doctrine which after all is used to limit relief sought.

Here, PLAINTIFF did absolutely nothing wrong.

14. Lastly, defendants approved plaintiff's appointment as Olympic coach in

2003 and then, in 2004 notified him that they were changing the coach

selection criteria and based upon that criteria, withdrew his appointment.

Therefore, they are equitably estopped, two years later, from claiming his

-16-

appointment was invalid in the first place."Equitable estoppel" requires

proof that one person willfully caused another to erroneously believe certain

state of things, and that person reasonably relied on this erroneous belief to

his or her detriment.  <u>Maria v. Freitas</u>, 832 P.2d 259, 73 Haw. 266, (Hawai'i

1992) "Quasi-estoppel" precludes party from asserting to another's

disadvantage, right inconsistent with position previously taken. Id.

15.  Plaintiff has standing to assert economic damages even though his

taekwondo school is incorporated.  The Ninth Circuit Court of Appeals has

held that the same discriminatory conduct can result in both corporate and

individual injuries.  <u>Marshall v. Kleppe</u>, 637 F.2d 1217, 1219-21, 1222 (9th

Cir.1980).  Mere presence of an injury to a corporation does not necessarily

negate the simultaneous presence of an individual injury. <u>Pareto v. F.D.I.C.,</u>

139 F.3d 696 (Cal.)(9th Cir. 1998).  Therefore, foundationally it is proper

for plaintiff's economist to view damage to the income of plaintiff's school

for purposes of deriving economic damages to plaintiff individually.

16.  Plaintiff is entitled to punitive damages. Punitive or exemplary damages are

generally defined as those damages assessed in addition to compensatory

damages for the purpose of punishing the defendant for aggravated or

outrageous misconduct and to deter defendant and others from similar

conduct in the future. <u>Masaki v. General Motors Corp.</u>, 780 P.2d 566, 71 Haw. 1, (Hawai'i 1989).Clear and convincing standard of proof applies to all claims for punitive damages; plaintiff must prove by clear and convincing evidence that defendant has acted wantonly or oppressively or with such malice as implies a spirit mischief or criminal indifference to civil obligations, or that there has been some willful misconduct or such an entire want of care which would raise the presumption of a conscious indifference to consequences. <u>Kaopuiki v. Kealoha</u>, 87 P.3d 910, 104 Hawai'i 241, (Hawai'i App. 2003).

h.     <u>Previous Motions</u>.

(1)     Defendants' Motion to Dismiss Sports Act. Granted in Part and Denied in Part.

(2)     Plaintiff's Application for Preliminary Injunction.  Denied.

(3)     Defendants' Motion for Protective Order. Granted.

Defendants' (4) Motions for Summary Judgment:

(4)          #1 Re: Insufficient Evidence of 1981 claim. Denied.

(5)          #2 Re: Plaintiff's Release.          Denied.

(6)          #3 Re: After Acquired Evidence Doctrine.   Denied.

(7)          #4 Re: Lack of Subject Matter Jurisdiction.  Denied.

(8)      Defendants' Motion to Strike Economic Claim.  Denied.

(9)      Defendants' Motion for Reconsideration of same.  Denied.

(10)     Defendants' Motion to Strike Witness Thomas Loudat.  Denied.

(11)     Defendants' Motion for Reconsideration of same.  Denied.

(12)     Plaintiff's Motion to Strike Witnesses.  Denied.

    i.    <u>Witnesses to be Called</u>.

       <u>See</u> Attached Witness List. Exhibit A.

    j.    <u>Exhibits, Schedules, and Summaries</u>.

       <u>See</u> Attached Exhibit List. Exhibit B.

    k.    <u>Further Discovery or Motions</u>.

       No further dispositive motions are anticipated.  Additional discovery
is pending.

    l.    <u>Stipulations</u>.

       None have been established.

    m.    <u>Amendments, Dismissals</u>.

       No amendments.  The court dismissed all claims listed in the
Complaint except the 42 USCA 1981 claim for damages.

    n.    <u>Settlement Discussion</u>.

       There have been two judicial settlement conferences with no

p.    <u>Bifurcation, Separate Trial of Issues</u>.

None is anticipated.

q.    <u>Reference to Master or Magistrate Judge</u>.

This is not agreed to or anticipated.

r.    <u>Appointment of Limitation of Experts</u>.

Not applicable.

s.    <u>Trial</u>.

Jury Trial is scheduled for April 4, 2006. A timely jury demand is on file.

t.    <u>Estimate of Trial Time</u>.

Ten trial days are estimated.

u.    <u>Claims of Privilege or Work Product</u>.

Holmes and Roberts, the attorneys for USOC and USTU have claimed work product and privilege regarding a number of areas pertaining to the period leading up to the USTU/USOC remediation agreement.  Various 2004 meeting minutes of USTU new governing body have also been redacted for the same reason.

v.    <u>Miscellaneous</u>.

None

DATED: Honolulu, Hawaii, February 14, 2006.

same reason.

        v.      <u>Miscellaneous</u>.

        None

DATED: Honolulu, Hawaii, February 14, 2006.

_____
WARD D. JONES
MICHAEL J. GREEN
GLENN H. UESUGI
Attorneys for Plaintiff Dae Sung Lee