IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DAE SUNG LEE, | ) | Civil No.  04-00461 SOM LEK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM IN SUPPORT |
| | ) | OF MOTION |
| vs. | ) | |
| | ) | |
| UNITED STATES TAEKWONDO | ) | |
| UNION, a Colorado nonprofit Corporation, | ) | |
| UNITED STATES OLYMPIC | ) | |
| COMMITTEE, a federally chartered | ) | |
| nonprofit corporation, JOHN DOES 1-10; | ) | |
| JANE DOES 1-10; DOE PARTNERSHIPS | ) | |
| 1-10; DOE CORPORATIONS 1-10; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM IN SUPPORT OF MOTION

I.    FACTUAL AND PROCEDURAL CONTEXT

This action concerns the wrongfully terminated coach of the 2004

United States Olympic Taekwondo Team, Plaintiff LEE. Plaintiff LEE alleges that

he was removed as coach of the 2004 United States Olympic Taekwondo Team for

racist reasons.

In the Order Denying Defendants' Three Motions for Summary Judgment

filed on August 17, 2005, this Honorable Court held that there was direct evidence

of pretext since the USOC's Robert Gambardella allegedly characterized all

people of Korean ancestry and/or ethnicity as "crooks", and that he did not want Koreans, including Korean Americans, involved in the USTU.

In this Honorable Court's Order, it was noted that there were also specific and substantial indirect evidence of pretext, in that the new coaching criteria was developed such that there was no way to tell who the Olympic Coach would be until June 2004, and yet there was evidence that the USTU'S Governance and Management Committee (whose members were all selected by the USOC) "ratified" the appointment of Jean Lopez as coach in March 2004.

On December 22, 2005, counsel for Defendants informed Plaintiff that they "will be noticing a number of videotape depositions (perhaps as many as twelve) on the mainland in January. We anticipate those depositions being conducted during the weeks of January 16, January 23rd and January 30th."

On December 22, 2005, Plaintiff's counsel asked Defendants' counsel as to the names of the witnesses Defendants' intended to depose. Defendants never responded to said request by Plaintiff.

On December 27, 2005, Defendants provided a "preliminary" list of twenty eight (28) witnesses. All of the witnesses identified by Defendants reside on the mainland. Thirteen of those listed on the preliminary list give the address of

Defendants' local counsel (Roeca Louie & Hiraoka). This is the first time Defendants have ever identified any of its witnesses in this case.

On January 10, 2006, Plaintiff filed his Motion to Strike Witnesses to be heard before the Honorable Leslie E. Kobayashi on January 31, 2006.

On January 11, 2006, Defendants noticed the deposition of Sang Lee (Colorado Springs, Colorado) for January 30, 2006 and Samuel Pejo (Colorado Springs, Colorado) for January 31, 2006.

On January 12, 2006, Defendants noticed the oral deposition of Edward H. Ford (Miami, Florida) for January 19, 2006, John Seiber (Nashville, Tennessee) for January 20, 2006, Steven Lopez (Houston, Texas) for January 26, 2006, Jean Lopez (Houston, Texas) for January 27, 2006, Chang Kil Kim (San Francisco, California) for February 1, 2006, Steven Dring (Washington, D.C.) for February 2, 2006, and John Holloway (Washington D.C.) for February 3, 2006. In all, Defendants noticed nine depositions spanning six cities in three weeks. Defendant's unreasonable oral deposition schedule was noticed without consultation with Plaintiff on less than thirty days notice.

On January 16, 2006, counsel for Plaintiff wrote to counsel for Defendants stating that it would be prudent to postpone the above scheduled depositions for a more reasonable time frame for February and wait for the ruling on Plaintiff's

Motion to Strike Witnesses. Plaintiff also gave notice of their intent to depose Virginia Witte. (See Exhibit "A").

On January 19, 2006, counsel for Defendants wrote to counsel for Plaintiff stating "we agreed to continue to the month of February 2006 the mainland depositions previously noticed by Defendants in the above-referenced case. You have agreed that Plaintiff will stipulate to extend the discovery cut off for purposes of conducting these depositions." (See Exhibit "B"). No such stipulation was ever filed with the court.

For reasons of their own, Defendants never followed up and never attempted to reschedule said oral depositions in the month of February.

Defendants' counsel did write to Plaintiff on January 24, 2006 addressing the oral deposition of Virginia Witte. Defendant noted that Ms. Witte is no longer employed by Defendant USOC and no longer holds any position with Defendant USTU. However, Defendants stated that if we will want to take her deposition, that they would probably wish to have it in their offices in Washington, D.C. (See Exhibit "C").

At the Motion to Strike Witnesses, Magistrate Kobayashi ruled that thirty days notice is required for oral depositions to be taken on the mainland, and that Defendants' noticed oral depositions failed to meet this requirement. Magistrate

Kobayashi further ruled that any discovery must be completed by the discovery cutoff date of February 3, 2006.

ASSUMING (emphasis added) that the above mentioned "stipulation" was unlimited, Magistrate Kobayashi ordered Plaintiff to give available dates for oral depositions. Plaintiff complied with Magistrate Kobayashi's order, even though the stipulation ran only for the month of February, and there was no way that the thirty day notice requirement could not be met.

Still Plaintiff did not feel it was appropriate to disregard the orders of a sitting Magistrate, and so on February 6, 2006, Plaintiff fulfilled the requirements by writing to Defendants. (Exhibit "D").

On February 6, 2006, Defendants wrote to Plaintiff, increasing their preliminary witness list from 28 in December 2005 to 90. However, the letter failed to comply with Magistrate Kobayashi's order in that many of the witnesses did not have complete addresses or any address at all. (Exhibit "E").

On February 8, 2006, Defendants again wrote to Plaintiff stating that the proposed dates were inconvenient for them. However, Defendants failed to give any alternative dates. The letter went on to further state that they would oppose the oral deposition of Virginia Witte, even though they had agreed to depose her earlier in January. (Exhibit "F").

In their February 8, 2006 letter, Defendant also states that they would look into scheduling the depositions of Edward Ford and John Seiber for February 27, 2006. However, Defendants failed to follow up on this until noticing said depositions on February 16, 2006, severely prejudicing and unduly burdening Plaintiff with an unreasonable time frame for compliance.

On February 15, 2006, Plaintiff wrote to Defendants stating that according to Defendants' own letter (Exhibit "B") the parties only agreed to continue the discovery cut off until the end of February, and that due to the thirty day notice requirement, no such depositions could be taken. (Exhibit "G").

On February 16, 2006, Defendants wrote to Plaintiff stating that irrespective of what Magistrate Kobayashi ruled, they would go forward with their scheduling of the oral depositions of Edward Ford (Miami, Florida) for February 27, 2006 and John Seiber for February 28, 2006. (Exhibit "H").

In further violation of the discovery cutoff, Defendants noticed the subpeona of Plaintiff's medical records from Dr. Ronald Lee and Dr. Howard Minami to be completed on February 14 and 15, 2006. The agreement of counsel did not apply to additional discovery and was limited to the oral depositions of those already being discussed in January 2006. (Exhibit "I").

## II.    ARGUMENT

### A.    The Discovery Agreement Only Extended to February 2006.

The clear language of the letters, especially the letter from Defense Counsel, shows that the discovery cut off was only extended to the end of February 2006. Defense counsel also had two weeks and ample opportunity to reschedule the depositions to fit within the extended discovery cut off and still comply with the thirty day notice rule. This they chose not to do. We also should not forget about why this whole situation came up in the first place, which is Defendants refusal to comply with Plaintiff's request for their witnesses, which effectively delayed discovery for six months in this case.

The whole reason why the discovery cut off was only extended to February was because the month of March is needed to prepare for trial. There are many deadlines in this case, Motions in Limine, preparation of Exhibits, deposition designations and so forth which have specific deadlines in March. Perhaps Defendants have the resources to fly all over the country to take depositions on a moment's notice, but Plaintiff does not. And Plaintiff should not have to be subjected to the whims of defense counsel, which clearly is a thinly veiled attempt to overly burden Plaintiff with a prejudicial deposition schedule on short notice.

This whole situation could have been avoided had defendant been more diligent in the discovery process.

What this Honorable Court needs to realize is that defense counsel has been consistently rude and uncooperative throughout the discovery process and are constantly of the mind set that the rules do not apply to them. This is clearly shown in not only the memoranda that has been filed in this case by the Defendants, but also the orders in response to those borderline frivolous, venom filled motions and memoranda. Defendants should not be allowed to continuously disregard the applicable rules and agreements without repercussion.

B.    **The Discovery Agreement Only Applied to Oral Depositions.**

As can be seen in the letters of Plaintiff and Defendants (Exhibits "A" and "B"), the discovery agreement, if valid (since no formal stipulation was ever filed with this Honorable Court), only extended to the oral depositions that were being discussed in January 2006. It is not stated anywhere that the discovery agreement applied to the subpeona of records. Accordingly, Plaintiff asks that the subpeona of Plaintiff's medical records which were completed beyond the original discovery cutoff be found invalid and that the records be barred from use at trial. Defendants have no justification for requesting said records, when their own letter clearly states that the discovery cutoff was limited to oral depositions.

## C.    Depositions Are Being Scheduled On Less Than 30 Days Notice.

At the hearing for Plaintiff's Motion to Strike Witnesses, Magistrate Kobayashi stated that parties must give thirty days notice when scheduling mainland oral depositions. Defendants failed to comply with this requirement when setting their January depositions.

In setting the February 2006 depositions of John Seiber and Edward Ford for February 27-28, 2006, Defendants stated that they would look into it on February 8, 2006, but failed to actually set those oral depositions until February 16, 2006. This severely prejudices Plaintiff and subjects him to an undue burden because it fails to give Plaintiff adequate time to make airline reservations. There is no way that Plaintiff could have made reservations since these oral depositions are being held in two different cities located in two different states (Nashville, Tennessee and Miami, Florida).

In addition, Defendants failed to make arrangements for video conferencing capabilities as they promised at the hearing on Plaintiff's Motion to Strike Witnesses. Plaintiff's lead trial counsel, Michael Jay Green, Esq. intended to participate via video conferencing with another attorney for plaintiff in personal attendance at the deposition. Further, the oral deposition of Edward Ford is being held at 9:30 a.m. eastern time, which is 4:30 a.m. in Hawaii. Why Defendant chose

to overly burden, inconvenience with such an unreasonable time shows the lengths at which Defendants have mistreated Plaintiff and his counsel.

This is simply another example of the type of behavior that Defendants have engaged in from the onset of this case and one need only look at the rulings and orders from the Honorable Susan Mollway and the Honorable Leslie Kobayashi to see the frivolousness of Defendants' positions. Defendants cannot be allowed to take advantage of Plaintiff in this manner, and therefore this Honorable Court should quash both the Notice of Oral Depositions and the accompanying subpoenas.

**D.    <u>Good Cause Exists to Orally Depose Virginia Witte.</u>**

In their February 8, 2006 letter, Defendants unreasonably state that Plaintiff is not entitled to orally depose Virginia Witte because she already was cross examined at the Preliminary Injunction hearing in August 2004. (See Exhibit "F"). However, what Defendants failed to note is that no discovery had been done at that point in the case. Further, the issues of the Preliminary Injunction hearing was substantially different than the ones that will be adjudicated at trial. The focus of the preliminary injunction was to allow Plaintiff to participate at the 2004 Olympic Games as the US Taekwondo Coach. The focus for trial is now the issue of Section 1981. As a member of the USOC audit department and the USTU'S

-10-

Governance and Management Committee, she has relevant testimony for issues at trial, more so than the issues of the preliminary injunction. Accordingly, Plaintiff must be allowed to orally depose Ms. Witte.

## III.  **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests this Honorable Court grant the requested relief and to award attorneys' fees and costs associated with this Motion.

DATED: Honolulu, Hawaii, _____ FEB 17 2006 _____

_____
MICHAEL J. GREEN
WARD D. JONES
GLENN H. UESUGI
Attorneys for Plaintiff
DAE SUNG LEE

-11-