ROECA LOUIE & HIRAOKA

DAVID M. LOUIE            2162-0
Email:  dlouie@rlhlaw.com
APRIL LURIA              4687-0
Email:  aluria@rlhlaw.com
900 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii  96813-3917
Telephone: (808) 538-7500
Facsimile: (808) 521-9648

WILLIAMS & CONNOLLY LLP

Mark S. Levinstein
Email:  mlevinstein@wc.com
Robert L. Moore
Email:  rlmoore@wc.com
Patrick J. Houlihan
Email:  phoulihan@wc.com
725 12th Street, N.W.
Washington, D.C.  20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

Attorneys for Defendants
United States Taekwondo Union and
United States Olympic Committee

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | | |
|---|---|---|
| DAE SUNG LEE, | ) | Civil No. 04—00461 SOM LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | DEFENDANTS UNITED STATES |
| vs. | ) | TAEKWONDO UNION'S AND |
| | ) | UNITED STATES OLYMPIC |
| UNITED STATES TAEKWONDO | ) | COMMITTEE'S MEMORANDUM |

UNION, a Colorado nonprofit )
Corporation, UNITED STATES )
OLYMPIC COMMITTEE, a federally )
chartered nonprofit corporation; )
JOHN DOES 1-10; JANE DOES 1- )
10; DOE PARTNERSHIPS 1-10; )
DOE CORPORATIONS 1-10, )
                                )
                    Defendants. )
                                )
                                )
_____ )

IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PROTECTIVE
ORDER TO ENFORCE THE
DISCOVERY CUTOFF AND FOR
OTHER RELIEF; EXHIBITS "1"
AND "2"; CERTIFICATE OF
SERVICE

Hearing Date:  March 2, 2006
Time:  9:00 a.m.
Honorable Leslie E. Kobayashi

Trial Date:  April 4, 2006

601-001/Opp to Pltff MPO

# TABLE OF CONTENTS

Argument ...................................................................................................3

I.      Plaintiff Should Not Be Permitted to Prevent Defendants from
        Taking Depositions Repeatedly Postponed at Plaintiff's Request
        Through the Disingenuous Assertion that the Discovery Deadline
        Has Passed. ......................................................................................3

        A.      Plaintiff's Counsel's Failure to Meet and Confer Before
                Filing His Motion Violates Rule 26(c) of the Federal Rules
                of Civil Procedure. ...............................................................3

        B.      Plaintiff Expressly Agreed to Extension of the Discovery
                Deadline Until the Noticed Depositions Were Complete.....................4

        C.      Neither Plaintiff Nor Plaintiff's Counsel Has Been
                Prejudiced By Defendants Noticing the Depositions of Mr.
                Ford and Mr. Seiber on Dates Proposed by Plaintiff's
                Counsel Or Unilaterally Noticing the Depositions of Mr. Lee
                and Mr. Pejo Because Plaintiff's Counsel Refused to
                Propose Dates.......................................................................8

II.     Plaintiff Should Not Be Permitted to Exceed the Deposition Limit
        in Order to Depose Virginia Witte. ..................................................9

III.    Defendants' Valid Subpoenas for Plaintiff's Medical Records
        Should Not Be Quashed and Should Be Permissible Evidence at
        Trial. ...........................................................................................11

IV.     Plaintiff or His Counsel or Both Should Be Required to Pay the
        Defendants' Costs Including Attorney Fees Incurred in Opposing
        Plaintiff's Motion, Pursuant to Rules 26(c) and 37(a)(4) of the
        Federal Rules of Civil Procedure ...................................................13

Conclusion ...............................................................................................18

# TABLE OF AUTHORITIES

## FEDERAL CASES

In re Akros Installations, Inc., 834 F.2d 1526 (9th Cir. 1987).................................17

## FEDERAL STATUTES AND RULES

Fed. R. Civ. P. 26(c) ................................................................................3, 13, 17, 18

Fed. R. Civ. P. 37(a)(4) ........................................................................2, 13, 17, 18

## MISCELLANEOUS

C. Wright & A. Miller, Federal Practice and Procedure §2288 (1970)...................17

ROECA LOUIE & HIRAOKA

DAVID M. LOUIE          2162-0
Email:  dlouie@rlhlaw.com
APRIL LURIA             4687-0
Email:  aluria@rlhlaw.com
900 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii   96813-3917
Telephone: (808) 538-7500
Facsimile: (808) 521-9648

WILLIAMS & CONNOLLY LLP

Mark S. Levinstein
Email:  mlevinstein@wc.com
Robert L. Moore
Email:  rlmoore@wc.com
Patrick J. Houlihan
Email:  phoulihan@wc.com
725 12th Street, N.W.
Washington, D.C.  20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

Attorneys for Defendants
United States Taekwondo Union and
United States Olympic Committee

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | | |
|---|---|---|
| DAE SUNG LEE, | ) | Civil No. 04—00461 SOM LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | DEFENDANTS UNITED STATES |
| vs. | ) | TAEKWONDO UNION'S AND |
| | ) | UNITED STATES OLYMPIC |
| UNITED STATES TAEKWONDO | ) | COMMITTEE'S MEMORANDUM |

| | | |
|---|---|---|
| UNION, a Colorado nonprofit Corporation, UNITED STATES OLYMPIC COMMITTEE, a federally chartered nonprofit corporation; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10, | ) ) ) ) ) ) ) ) | IN OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER TO ENFORCE THE DISCOVERY CUTOFF AND FOR OTHER RELIEF; CERTIFICATE OF SERVICE |
|        Defendants. | ) ) ) ) | Hearing Date: March 2, 2006 Time: 9:00 a.m. Honorable Leslie E. Kobayashi |
| | ) | Trial Date: April 4, 2006 |

## DEFENDANTS UNITED STATES TAEKWONDO UNION'S AND UNITED STATES OLYMPIC COMMITTEE'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER TO ENFORCE THE DISCOVERY CUTOFF AND FOR OTHER RELIEF

Plaintiff's Motion for Protective Order ("Motion") is without merit. Plaintiff's Motion asks the Court to prevent Defendants from taking properly-noticed depositions that were repeatedly postponed at Plaintiff's request. Plaintiff's Motion also seeks to have the Court enforce a discovery deadline despite Plaintiff's express agreement to "extend[] the discovery cutoff to complete the oral depositions that Defendants [had] already scheduled." Ex. A to Motion (emphasis added). Defendants therefore request that the Court deny Plaintiff's Motion. In addition, because Plaintiff's Motion was not "substantially justified," and was filed without complying with the Federal Rules of Civil Procedure, Defendants seek their reasonable costs, including attorney's fees, pursuant to Rules 26(c) and 37 of the Federal Rules of Civil Procedure.

## Argument

**I.    Plaintiff Should Not Be Permitted to Prevent Defendants from Taking Depositions Repeatedly Postponed at Plaintiff's Request Through the Disingenuous Assertion that the Discovery Deadline Has Passed.**

   **A.    Plaintiff's Counsel's Failure to Meet and Confer Before Filing His Motion Violates Rule 26(c) of the Federal Rules of Civil Procedure.**

The Motion filed by Plaintiff is a Motion for Protective Order, governed by Rule 26(c) of the Federal Rules of Civil Procedure.  Rule 26(c) provides, in pertinent part, that:

> Upon motion by a party or by the person from whom discovery is sought, <u>accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action</u>, and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (1) that the disclosure or discovery not be had; . . .

Fed. R. Civ. P. 26(c) (emphasis added).

Plaintiff's counsel did not attach the certification required by Rule 26(c), and he could not have done so, because he never conferred or attempted to confer with Defendants' counsel before filing the Motion.  On that basis alone, the Motion should be denied.

**B.    Plaintiff Expressly Agreed to Extension of the Discovery Deadline Until the Noticed Depositions Were Complete.**

Turning to the substance of Plaintiff's Motion, it is replete with misrepresentations and inaccuracies, and Defendants must therefore first set the record straight. Plaintiff's Motion seeks to preclude Defendants from taking the properly noticed depositions of five witnesses: Mr. Edward Ford, Mr. John Seiber, Mr. Chang Kil Kim, Mr. Sang Lee, and Mr. Samuel Pejo. The depositions of Mr. Lee and Mr. Pejo were originally scheduled for the last week in June 2005, *see* Ex. 1 (Letter from Mark Levinstein to Ward Jones dated June 6, 2005), but were postponed at Plaintiff's request because Plaintiff claimed there were conflicts that arose at the last minute. When Plaintiff failed to provide alternate dates for these depositions by December 2005, Defendants again noticed the depositions for Mr. Lee and Mr. Pejo for January 2006. At the same time, Defendants also noticed the depositions for Mr. Ford, Mr. Seiber, and Mr. Kim for dates in January 2006, well before the February 4, 2006 discovery deadline.

Plaintiff's counsel Glenn Uesugi, by letter dated January 16, 2006, requested that Defendants postpone these depositions until after the hearing on Plaintiff's Motion to Strike Defendants' Witnesses scheduled for February 2, 2006. *See* Ex. A to Motion. Because such postponement would prevent the depositions from taking place prior to the February 4 discovery deadline, Mr. Uesugi also agreed to "extending the discovery cutoff to complete the oral depositions" for the

4

five witnesses that Defendants had previously noticed. Ex. A to Motion (emphasis added). Based upon that agreement, Defendants postponed the five depositions as a professional courtesy.

After Plaintiff's Motion to Strike Defendants' Witnesses was denied by Magistrate Judge Kobayashi on February 2, 2006, Defendants sought to reschedule the depositions which had been postponed at Plaintiff's request. By letter dated February 6, 2006, Mr. Uesugi provided—for the first time—alternate dates for these depositions. *See* Ex. D to Motion. Mr. Uesugi offered the week of February 27 for the depositions of Mr. Ford, Mr. Seiber, and Mr. Kim, and March 6 and 7 for the depositions of Mr. Lee and Mr. Pejo. *See id.* By letter dated February 8, 2006, Defendants' counsel informed Mr. Uesugi that they would confirm the availability of their witnesses during the week of February 27, but that they would be unavailable to take the depositions of Mr. Lee and Mr. Pejo on March 6 or 7. *See* Ex. F to Motion. Defendants' counsel therefore requested that Mr. Uesugi provide alternate dates for those depositions within the next few days. *See id.*

Based upon these communications and the agreement to extend the discovery deadline until the noticed depositions were complete, Defendants were surprised by Plaintiff's subsequent refusal to agree to schedule any further depositions. In a letter dated February 15, 2006, Mr. Uesugi made two utterly

5

remarkable assertions.  First, Mr. Uesugi falsely asserted that he had only agreed to extend the discovery deadline until February 28, 2006.  *See* Ex. G to Motion.  Mr. Uesugi's recent statement is flatly contradicted by the express agreement between the parties, as stated in Mr. Uesugi's January 16 letter, to extend the discovery deadline until the noticed depositions were complete.  *See* Ex. A to Motion.  Mr. Uesugi knew that this claim to limit the extension to February 28, 2006 could not be true, because the only dates he had proposed for depositions of Mr. Lee and Mr. Pejo were in March.  Given the eight months Plaintiff's counsel required to provide alternate dates for the postponed depositions of Mr. Lee and Mr. Pejo, Defendants would have never agreed to postponement of the depositions unless the discovery deadline was extended by whatever time was necessary to complete the noticed depositions.  In light of the upcoming trial date, counsel for both parties anticipated that the depositions could be rescheduled for February, but that was never the deadline for discovery that Plaintiff's Motion now advocates.  Indeed, by failing to provide any possible dates for the depositions of Messrs. Pejo and Lee in February and only suggesting dates in March for those depositions, Mr. Uesugi's February 6 letter expressly acknowledges that no such February deadline existed.  *See* Ex. D to Motion.  If such a deadline had existed, Plaintiff's counsel disregarded it by refusing to offer any dates in February.

The second incorrect assertion made in Mr. Uesugi's February 15 letter was that Defendants were required to reschedule the five depositions by January 30—three days before Magistrate Judge Kobayashi had denied Plaintiff's Motion to Strike Defendants' Witnesses and more than a week before Mr. Uesugi provided any dates for his availability or the availability of his witnesses. *See* Ex. G to Motion. As support for this assertion—that Defendants were "required" to schedule the depositions on arbitrary dates without Plaintiff's notice or consent, in violation of the agreement Plaintiff's counsel had requested—that scheduling would not occur until after the Court's February 2 hearing on Plaintiff's Motion— Mr. Uesugi cites Magistrate Judge Kobayashi's reference to the general practice of providing such notice for depositions on the mainland. These depositions were noticed in January and Defendants' counsel agreed to wait for the Court to deny Plaintiff's Motion and for Plaintiff's counsel to propose dates when he and his witnesses would be available. Plaintiff's counsel should not now be permitted to use his request that depositions not be scheduled while his Motion was pending or his failure to suggest dates as a shield to prevent enforcement of his own stipulation to extend the discovery deadline.

After receiving Mr. Uesugi's February 15 letter, Defendants attempted to meet and confer with Plaintiff's counsel regarding the previously noticed depositions. Despite having scheduled the depositions of Mr. Ford and Mr. Seiber

on dates provided by Mr. Uesugi, Defendants were more than willing to reschedule those depositions if those dates were no longer agreeable or would now be burdensome on Plaintiff or his counsel.  Defendants also wanted alternate dates for the depositions of Mr. Lee and Mr. Pejo, which Plaintiff's counsel has refused to provide despite repeated requests.  However, Mr. Uesugi refused to even speak to Defendants' counsel on this issue.[1]  Defendants therefore noticed the depositions for Mr. Ford and Mr. Seiber for February 27 and February 28, the dates Mr. Uesugi previously proposed, and Defendants have noticed the depositions of Mr. Samuel Pejo and Mr. Sang Lee for March 20th and 21st in Colorado Springs, CO, where they both live and where they were scheduled in June, 2005.

> **C.    Neither Plaintiff Nor Plaintiff's Counsel Has Been Prejudiced By Defendants Noticing the Depositions of Mr. Ford and Mr. Seiber on Dates Proposed by Plaintiff's Counsel Or Unilaterally Noticing the Depositions of Mr. Lee and Mr. Pejo Because Plaintiff's Counsel Refused to Propose Dates.**

Plaintiff's Motion disingenuously asserts that scheduling the depositions of Mr. Ford and Mr. Seiber on dates provided by Plaintiff's counsel is "severely prejudicing and unduly burdening" because Plaintiff purportedly lacks the resources to "fly all over the country."  Motion at 6.  Plaintiff's Motion further asserts that scheduling these depositions on the agreed-upon dates "fails to give

---

[1]    It should also be noted that, as explained above, Plaintiff's counsel did not make any attempt to comply with the meet and confer requirement prior to filing his Motion.

Plaintiff adequate time to make airline reservations." As explained above,

Defendants have been willing to confer with Plaintiff's counsel to arrange for

videoconferencing and to permit reservations weeks in advance, but Plaintiff's

counsel's refusal to cooperate has made that impossible. Plaintiff's counsel's

claim of financial hardship flies in the face of their own conduct. Plaintiff has

deposed ten of Defendants' witnesses, with only one of those depositions occurring

in Hawaii. Suddenly, Plaintiff's counsel claimed in their motion that they cannot

afford to attend, in person or via videoconference, Defendants' five remaining

depositions. In fact, for the depositions of Mr. Ford and Mr. Seiber, Plaintiff has

ample resources to have Mr. Uesugi attend in person, and to pay for Mr. Green to

attend by videoconference. Accordingly, this Court should reject assertions of

burden or prejudice arising from depositions scheduled on dates proposed by and

agreed to by Plaintiff's counsel, and the taking of depositions that were previously

scheduled in June, were postponed at the request of Plaintiff's counsel, and which

have not been rescheduled because Plaintiff would not propose dates.

## II.    Plaintiff Should Not Be Permitted to Exceed the Deposition Limit in Order to Depose Virginia Witte.

Despite agreeing to extend the discovery deadline to complete the

noticed depositions—and providing dates in March for such depositions in a

February 6 letter—Plaintiff's counsel decided on February 15 to try to unilaterally

modify that agreement, falsely asserting for the first time that the discovery

deadline had only been extended until the end of February. Plaintiff's Motion reveals the apparent motive behind this significant change in position: Plaintiff would like to take the deposition of Virginia Witte and wants to condition participation in the previously noticed depositions upon Defendants' agreement to extend the deposition limit. *See* Motion at 10-11. During the hearing on Plaintiff's Motion to Strike Defendants' Witnesses, Plaintiff's counsel repeatedly expressed his intention to hold Defendants to the ten depositions allowed by the Federal Rules of Civil Procedure. Based upon the position of Plaintiff's counsel, Defendants reduced the number of witnesses they would depose to comply. Plaintiff now asks the Court for permission to exceed the very limit to which it steadfastly sought to hold Defendants. Defendants reduced the total number of depositions to ten (10) and Plaintiff should not now be permitted to exceed that limit.

In addition, Plaintiff fails to make any showing of good cause necessary to exceed the deposition limit. Instead, Plaintiff asserts only that Ms. Witte "has relevant testimony for issues at trial." Motion at 11. The mere possibility of "relevant testimony" falls far short of Plaintiff's burden to demonstrate good cause. This is especially true considering that Plaintiff has known that Ms. Witte may have relevant knowledge since August 2004 at the latest, when she was Defendants' only witness who submitted a declaration in

opposition to the motion for a TRO and she testified in person before the Court at the hearing held on Defendants' Motion to Dismiss and Plaintiff's Application for a Temporary Restraining Order.  In addition, eighteen months ago Plaintiff received Ms. Witte's prior written testimony in the USOC Executive Committee hearing.  Plaintiff could have deposed Ms. Witte at any time during the ensuing eighteen months, but Plaintiff instead elected to depose ten other witnesses. Because Defendants agreed to Plaintiff's request not to exceed the deposition limit, and because Plaintiff fails to even assert that good cause exists to exceed that limit, Plaintiff's request to depose Virginia Witte should be denied.

## III.    Defendants' Valid Subpoenas for Plaintiff's Medical Records Should Not Be Quashed and Should Be Permissible Evidence at Trial.

Throughout the discovery process, Defendants have attempted to ascertain what evidence Plaintiff intends to offer in support of his claim that he suffered public embarrassment, humiliation, and mental anguish.  Defendants therefore requested all facts, evidence, and individuals with relevant knowledge relating to Plaintiff's allegation that he "suffered general damages resulting from public embarrassment, humiliation, mental anguish, damage to his character, [and] damage to his professional reputation which has taken decades to build."  Ex. 2 (USTU's First Set of Interrogatories) at ¶¶ 1-4.  Defendants also sought production of all documents "that relate to Plaintiff's claim that Plaintiff has suffered general damages resulting from public embarrassment, humiliation, mental anguish,

11

damage to his character, or damage to his professional reputation." Ex. 3 (USTU's First Request for Production of Documents) at ¶ 7.

Despite Plaintiff's obligation to respond accurately and completely to these discovery requests and to supplement such responses on a timely basis, Plaintiff failed to identify any medical problems which he may later assert are related to this litigation. Defendants learned for the first time during the January 26, 2006 deposition of Plaintiff's spouse, Heon Mi Lee that Plaintiff has made several visits to two doctors Dr. Ronald Lee and Dr. Howard Minami. During that deposition, Ms. Lee asserted that Plaintiff had sought medical assistance for, *inter alia*, stomach problems and an irregular heartbeat. Ms. Lee also asserted that these medical problems were a direct result of Defendants' revocation of his appointment as Olympic coach and this litigation. Based upon that testimony, Defendants timely served (February 2, 2006) these two doctors with requests for Plaintiff's medical records.

Plaintiff's Motion seeks to have those two subpoenas quashed and to preclude Defendants from using any medical records at trial. Although Plaintiff's Motion correctly states that the deposition deadline was only extended for the previously noticed depositions, these two subpoenas were served prior to that deadline. Furthermore, Plaintiff's prior discovery responses never identified any medical problems or physicians seen despite Defendants' requests for that

information.  Defendants only recently learned of the existence of such relevant

evidence through the January 26, 2006 deposition of Plaintiff's spouse.  Plaintiff

should not be permitted to preclude discovery of these medical records by

intentionally failing to disclose their existence.  Unless Plaintiff agrees that he and

his witnesses will not claim any medical injuries, Defendants are entitled to this

discovery.  According to Ms. Lee, the Plaintiff now claims that his drinking and

medical issues related to his drinking are connected to his not serving as the

Olympic coach.  If Plaintiff had made this claim in response to the Interrogatories

served upon him, Defendants would have had time to identify witnesses and gather

and present evidence concerning the Plaintiff's drinking long before the issue of

coaching in the 2004 Olympic Games ever arose.

**IV.    Plaintiff or His Counsel or Both Should Be Required to Pay the Defendants' Costs Including Attorney Fees Incurred in Opposing Plaintiff's Motion, Pursuant to Rules 26(c) and 37(a)(4) of the Federal Rules of Civil Procedure**

Rule 26(c) of the Federal Rules of Civil Procedure provides that "[t]he

provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to

"motions for protective order."  Rule 37(a)(4)(B) provides that if a motion is

denied, the court:

> "…shall, after affording an opportunity to be heard,
> require the moving party or the attorney filing the motion
> or both of them to pay to the party or deponent who
> opposed the motion the reasonable expenses incurred in
> opposing the motion, including attorney's fees, unless the

court finds that the making of the motion was
substantially justified or that other circumstances make
an award of expenses unjust."

As set forth above, Plaintiff's Counsel did not file the mandatory

certification and did not meet and confer in good faith before requiring Defendants

to respond to this Motion.  In addition, the Motion is based entirely on false

assertions and misrepresentations about what was agreed between counsel.  In

addition to the false statements discussed above, Plaintiff's Motion contains other

false assertions, including:

- "Magistrate Kobayashi further ruled that any discovery must be
  completed by the discovery cutoff date of February 3, 2006,"
  Motion at 4-5.  No such ruling was issued.

- Defendants "had agreed to depose [Virginia Witte] earlier in
  January," Motion at 5.  Defendants never agreed, at any time, to
  allow Plaintiff to exceed the deposition limit to depose Ms.
  Witte.

- "On February 16, 2006, Defendants wrote to Plaintiff stating
  that irrespective of what Magistrate Kobayashi ruled . . ."
  Motion at 6.  Defendants did not, and indeed would never,
  display any intention to disregard any Order of the Court.

14

- "We should also not forget about why this whole situation came up in the first place, which is Defendants' refusal to comply with Plaintiff's request for their witnesses, which effectively delayed discovery for six months in this case," Motion at 7. As explained in Defendants Opposition to Plaintiff's Motion to Strike Defendants' Witnesses—and referenced by Magistrate Kobayashi at the hearing on that Motion—Plaintiff never filed any interrogatory seeking such information.

- "Defendants failed to make arrangements for video conferencing capabilities as they promised at the hearing on Plaintiff's Motion to Strike Witnesses," Motion at 9. As an initial matter, Defendants never promised to make any arrangements for Plaintiff's counsel. That is Plaintiff's counsel's responsibility. Nevertheless, when Plaintiff's counsel finally agreed to discuss and confer about these matters, Defendants' counsel did accommodate Plaintiff's counsel and made such arrangements. Plaintiff's counsel Mr. Green will be attending the depositions of both Mr. Ford and Mr. Seiber by videoconference.

15

- "Further, the oral deposition of Edward Ford is being held at 9:30 am eastern time, which is 4:30 am in Hawaii. Why Defendant chose to overly burden, inconvenience with such an unreasonable time shows the lengths at which Defendants have mistreated Plaintiff and his counsel," Motion at 9-10. That representation was made to the Court after Plaintiff's counsel refused to confer about when he wanted the deposition scheduled, it was defendants' understanding that Mr. Uesugi is attending the deposition in person (he is), and Plaintiff's counsel had never requested any particular time for the depositions to be scheduled. Despite the fact that almost every witness resides on the mainland and that the only link this litigation has to Hawaii is Plaintiff's own residence, Defendants have made every attempt to schedule depositions suitable to Plaintiff and his counsel. The deposition was scheduled at the beginning of the business day where the non-party witness lives; the deposition of Mr. Seiber is not scheduled to begin until 5:00 pm eastern time on February 28; and Defendants have agreed to postpone the beginning of Mr. Ford's deposition until 10:30 am.

16

"The court shall order sanctions unless it finds that 'the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.'" *In re Akros Installations, Inc.*, 834 F.2d 1526, 1530 (9th Cir. 1987), quoting Fed. R. Civ. P. 37(a)(4). "A motion for protective order is substantially justified 'if the motion raised an issue about which reasonable [people] could genuinely differ on whether a party was bound to comply with a discovery rule.'" *Id.*, quoting C. Wright & A. Miller, Federal Practice and Procedure §2288 (1970). In this case, Plaintiff's Motion, filed in violation of the meet and confer and certification requirements of Rule 26(c), and based on misrepresentations about agreements between counsel and other issues, cannot be said to have raised an issue about which reasonable people "could genuinely differ."

In deciding the issue of expenses, this Court should also consider that Defendants informed Mr. Uesugi in their February 16, 2006 letter that they would seek sanctions if he filed any motion based upon the frivolous assertion that he should not be required to comply with his own agreement to extend the discovery deadline. Having been forewarned, Plaintiff nevertheless filed the present Motion.

This Motion is just the latest discovery abuse by Plaintiff and his counsel. In August, in response to Defendants' request for an order prohibiting future discovery abuse, the Court stated:

17

> Defendants also ask the Court to enjoin Plaintiff and
> Plaintiff's counsel from engaging in further discovery
> abuses. . . . A protective order is not necessary at this
> time in light of this Court's ruling quashing the subpoena.
> Should further allegations of abusive discovery requests
> arise, the Court will entertain the appropriate motion for
> a protective order at that time.

Order Granting in Part and Denying in Part Defendants' Motion to Quash third-Party Subpoena, *Dae Sung Lee v. United States Taekwondo Union, et al.* at 9. (Magistrate Judge Kobayashi, August 1, 2005). While Defendants do not now seek a protective order, ordering Plaintiff's counsel to pay Defendants' reasonable costs are means to curb the same abuses of the discovery process as recognized last August.

For all of these reasons, Defendants respectfully request that the Court require Plaintiff and/or Plaintiff's Counsel to pay Defendants' reasonable expenses incurred, including attorney's fees, as mandated by Rules 26(c) and 37(a)(4) of the Federal Rules of Civil Procedure.

## Conclusion

Plaintiff's Motion represents the latest in a string of baseless motions, displaying Plaintiff's counsel's lack of any professional courtesy, respect, or candor towards the tribunal. The Motion improperly seeks to preclude Defendants from taking validly noticed depositions by falsely asserting that the discovery deadline has now passed, despite an express agreement between counsel to extend

that deadline until this Court denied Plaintiff's last motion and the previously noticed depositions were complete. The Motion also seeks to preclude discovery of medical records, the existence of which was only recently disclosed to Defendants by a witness (Plaintiff's wife) after Plaintiff failed to make proper disclosure in response to Defendants' discovery requests seeking that information. In fact, Plaintiff still has not filed any supplemental responses to Defendants' interrogatories to suggest that he intends to make any claim of medical problems related to this case. Finally, Plaintiff's Motion seeks leave of Court to depose Virginia Witte in excess of the deposition limit—despite Defendants holding to that limit based on Plaintiff's position—but is unable to assert any good cause other than that Ms. Witte "has relevant testimony for issues at trial." For all of these reasons, Plaintiff's Motion should be denied and this Court should order Plaintiff and his counsel to pay Defendants their reasonable expenses, including attorneys fees, incurred in opposing the Motion.

DATED: Honolulu, Hawaii, February 27, 2006

DAVID M. LOUIE
APRIL LURIA
Attorneys for Defendants United States
Olympic Committee and United States
Taekwondo Union

19