ROECA LOUIE & HIRAOKA

DAVID M. LOUIE          2162-0
Email: dlouie@rlhlaw.com
APRIL LURIA     4687-0
Email: aluria@rlhlaw.com
900 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii   96813-3917
Telephone: (808) 538-7500
Facsimile: (808) 521-9648

WILLIAMS & CONNOLLY LLP

Mark S. Levinstein
Email: mlevinstein@wc.com
Robert L. Moore
Email  rlmoore@wc.com
Patrick J. Houlihan
Email: phoulihan@gmail.com
725 12th Street, N.W.
Washington, D.C.  20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

Attorneys for Defendants
United States Taekwondo Union and
United States Olympic Committee

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | | |
|---|---|---|
| DAE SUNG LEE, | ) | Civil No. 04—00461 SOM LEK |
| | ) | |
| Plaintiff, | ) | **DEFENDANTS UNITED STATES** |
| | ) | **TAEKWONDO UNION AND** |
| vs. | ) | **UNITED STATES OLYMPIC** |
| | ) | **COMMITTEE'S MOTION** *IN* |



| | |
|---|---|
| UNITED STATES TAEKWONDO UNION, a Colorado nonprofit Corporation, UNITED STATES OLYMPIC COMMITTEE, a federally chartered nonprofit corporation; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10,<br><br>       Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | *LIMINE* TO EXCLUDE IMPROPER OPINION TESTIMONY OF NONPARTIES AS TO WHETHER OR NOT ALLEGED STATEMENTS WERE RACIST AND/OR HOW THEY MADE THEM FEEL; DECLARATION OF APRIL A. LURIA [AND EXHIBITS "1" – "3" THERETO]; CERTIFICATE OF SERVICE<br><br>Hearing Date:  March 28, 2006<br>Time:  9:45 a.m.<br>The Honorable Susan Oki Mollway<br>Trial Date: April 4, 2006 |

**DEFENDANTS UNITED STATES TAEKWONDO UNION AND UNITED STATES OLYMPIC COMMITTEE'S MOTION *IN LIMINE* TO EXCLUDE IMPROPER OPINION TESTIMONY OF NONPARTIES AS TO WHETHER OR NOT ALLEGED STATEMENTS WERE RACIST AND/OR HOW THEY MADE THEM FEEL**

Throughout this litigation, Plaintiff has repeatedly questioned non-party witnesses as to what they think of statements attributed to Defendants and whether these statements are racially insensitive, indicating Plaintiff's intent to introduce such evidence at trial.  Defendants United States Taekwondo Union ("USTU") and United States Olympic Committee ("USOC") hereby move for an order *in limine* to exclude this evidence and all references thereto at trial.  The grounds for this motion are set forth below.

## DESCRIPTION OF THE EVIDENCE

Plaintiff will likely designate the following as potential testimonial and documentary evidence for use at trial:[1]

- Bruce Harris' opinion as to what he "think[s] of that list of questions" contained in the September 5, 2003 and August 4, 2003 letters from Thomas Satrom to Bruce Harris ("Satrom Letters"). Among the portions of the Satrom letters Harris was commenting upon included reference to a perception of the USTU having an apparent allegiance to Korea, Harris (4/6/05) 13:7-8, and a perception of a "good ol' boy system of promotions. Ex. 1 (Deposition of Bruce Harris, April 6, 2005) at 13:7-8, 39:13-14. Mr. Harris testified that he believed that these portions of the Satrom Letters were "racially motivated," and "racially insensitive." *Id.* at 13:3-14:19; 39:13-40:3.

- Jay Warwick was similarly asked about certain statements contained in the Satrom Letters regarding the perceived "good ol' boy system" and "allegiance to Korea" and whether he considered them to be "racially insensitive" towards people of Korean heritage. Mr. Warwick, said he did not know whether Korean-Americans would find such statements racially insensitive because he is not Korean-American. Ex. 2 (Deposition of Jay Warwick, April 6, 2005) at 22:8-23:14; 24:9-27:8.

- Jill J. Chalmers' was asked for her opinion as to whether statements contained in the Satrom Letters and/or made during United States Olympic Committee ("USOC") and USTU meetings, like the alleged statement that members of the USTU needed to "quit that bowing crap" were "racially insensitive." Although Ms. Chalmers testified that she did not think so, she said it is a hard question for her to answer because she is not a

---

[1]    This description and enumeration of the challenged evidence is a comprehensive, but not necessarily definitive, list of the testimonial and documentary evidence which will likely be designated by Plaintiff describing nonparty reactions to various statements allegedly made by Defendants.

Korean American, Ms. Chalmers did describe the statements as "inflammatory." Ex. 3 (Deposition of Jill Chalmers, April 8, 2005) at 13:24-19:11; 26:11-28:18; 89:8-90:19.

Defendants further seek to preclude any live testimony at trial as to whether any witness, regardless of race or national origin, felt that statements allegedly made by members of the USTU or USOC were racially insensitive or offensive in any way.

## ARGUMENT

### I. The Opinions of Nonparties as to Whether a Statement Is Racially Insensitive Are Irrelevant

Testimony by Mr. Harris, Mr. Warwick, Ms. Chalmers or others about what they think of certain statements, or whether Korean-Americans might find those statements racially insensitive, *see* Ex. 1 at 39:13-14, constitutes speculation and are inadmissible under both Rule 602 and Rule 402. It is axiomatic that "speculation is not evidence." *NLRB v. Clinton Elecs. Corp.*, 284 F.3d 731, 738 (7th Cir. 2002); *see also United States v. Lanci*, 669 F.2d 391, 394-95 (6th Cir. 1982) ("What a person who does not claim to know the facts may imagine or guess the facts to have been is never admissible."); *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625 (9th Cir. 2005). For several reasons, Plaintiff's efforts to invite witnesses to opine as to whether other people's alleged statements were racially insensitive – an exercise fraught with obvious evidentiary peril – must be rejected.

First, speculative statements are inadmissible for the very reason that the declarant lacks the requisite personal knowledge required under Rule 602. *Carmen v. S. F. Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("A plaintiff's belief. . . without evidence supporting that belief, is no more than speculation or unfounded accusation . . . . It is not enough for a witness to tell all she knows; she must know all she tells"); *Norita v. N. Mar. I.*, 331 F.3d 690 (9th Cir. 2003) (plaintiffs' affidavits held inadmissible under 602 where the affiants failed to establish that they had personal knowledge of the allegations contained therein); *Latman v. Burdette*, 366 F.3d 744 (9th Cir. 2004) (evidence held inadmissible where attached to declaration by counsel who lacked personal knowledge of the documents' authenticity); *Surfvivor Media, Inc.*, 406 F.3d 625. Indeed, in the case at hand, the witnesses themselves concede lack of knowledge regarding the insensitivity of alleged statements. *See, e.g.*, Ex. 2 at 25:11-23 (responding "I don't know. I'm not of Korean heritage" when asked whether a statement seemed racially insensitive towards Korean Americans); Ex. 3 at 27:25-28:2 (when asked whether comments were racially insensitive to Korean Americans, Chalmers as a Caucasian, stated "[i]ts a hard question for me to answer because I'm not Korean American, so I can't tell you how Korean Americans might have felt"). In addition, one could only judge Mr. Satrom's statements and

5

their "sensitivity" if one has full knowledge of the facts and circumstances that led to Mr. Satrom's writing the letters.

Second, it is clear that such speculative statements do not "make the existence of any fact that is of consequence to the determination of the action more probable or less probable" and therefore fail the relevance test of Rule 401. *See generally, Rice v. Rose & Atkinson*, 176 F. Supp. 2d 585, 595 (S.D. W. Va. 2001) ("Speculation . . . is excludable by Rule 401 because it has no tendency to make the existence of any material fact more or less probable than it would be without that evidence."), *aff'd*, 36 F. Appendix (4th Cir. 2002); *Fournier v. McCann Erickson*, 242 F. Supp. 2d 318, 328-33 (S.D.N.Y. 2003) (numerous items of "speculative" evidence excluded for failure to meet Rule 401 test). Whether or not witness A would categorize or characterize Declarant B's alleged comments as racially insensitive simply has no relevance to the core issues and facts of this case. Being "insensitive" is not an element of any claim under 42 U.S.C. § 1981, and whatever views a witness without full knowledge may have of any statement's "sensitivity" is completely irrelevant.

Moreover, evidence from any persons about statements contained in the Satrom Letters and whether they believe them to be "racially insensitive" has no probative value whatsoever and should therefore be excluded in its entirety under Rule 402. Relevant evidence is "evidence having any tendency to make the

existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." Fed. R. Evid. 401. Opinions of nonparties—regarding whether they find a given statement to be "racially insensitive"—has no bearing whatsoever on whether or not Plaintiff was improperly discharged as Olympic coach on account of his race.

It is undisputed that Thomas Satrom, the author of the Satrom letter, in his role as the Chairman of the Membership and Credentials Committee, had absolutely no authority or say over who would serve as the Olympic coach for taekwondo in 2004. And no matter how often Plaintiff attempts to characterize Mr. Satrom's statements as "racially insensitive," they are not probative as to the sole issue disputed in this case – whether the USTU's Governance and Management Committee's decision to implement objective, facially-neutral coach selection criteria was driven by racial animus. *See DeHorney v. Bank of Am. National Trust & Sav. Ass'n.*, 879 F.2d 459 (9th Cir. 1989) (holding that to establish a claim of discrimination, there must be sufficient nexus between the alleged discriminatory remarks and the adverse employment decision); *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir. 1990) (holding stray remarks by *nondecisionmakers* insufficient to prove discrimination); *McGinest v. GTE Servs. Corp.*, 360 F.3d 1103, 1138 (9th Cir. 2004) (noting "Ninth Circuit cases involving [discrimination] have always involved evidence of discrimination *among decisionmakers*).

## II.    Any Probative Value of Such Opinion Testimony Is Outweighed by Its Unfairly Prejudicial and Confusing Nature

Any marginal probative value assigned to whether nonparties believed statements in the Satrom Letters or other alleged statements to be racially insensitive is outweighed by its prejudicial nature, rendering the purported evidence inadmissible under Rule 403. Evidence is considered unfairly prejudicial where it "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case." *United States v. Skillman*, 922 F.2d 1370, 1374 (9th Cir. 1990) (citing 1 J. Weinstein & M. Berger, *Weinstein's Evidence*, ¶ 403[03], at 403-36 to 403-39 (1989 ed.)). Plaintiff wants the jurors to judge harshly any witness who does not consider the statements to be "insensitive" and to convince the jury that Defendants are bad people through a parade of Plaintiff's friends, Korean Americans and non-Korean Americans, who are willing to testify that they consider various statements racially-insensitive. This evidence is unfairly prejudicial because it asks the jury to render a subjective judgment, not based on the evidence, but upon the irrelevant opinion and speculation of witnesses.

**III.    Opinion Testimony Concerning Whether Statements Were Racially Insensitive Is Not Rationally Based on the Perception of the Witness or Helpful to a Clear Determination of a Fact in Issue**

Finally, testimony of witnesses, such as Mr. Harris's opinion as to how certain statements might be perceived, is inadmissible lay opinion testimony. A lay witness may only give opinions that are: "(a) rationally based on the perception of the witness, [and] (b) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue . . ." *Head v. Glacier NW. Inc.*, 413 F.3d 1053, 1062 (9th Cir. 2005) (citing Fed. R. Evid. 701). But lay witnesses are not needed to interpret clear statements, *United States v. Cox*, 633 F.2d 871, 875-76 (9th Cir. 1980), especially when the opinion goes to the ultimate issue, and the witness's testimony distracts the jurors "from their task of drawing an independent conclusion." *Hester v. BIC Corp.*, 225 F.3d 178, 182, 184 (2d Cir. 2000); *See also Lynch v. City of Boston*, 180 F.3d 1, 17 (1st Cir. 1999) (holding lay opinions are not helpful, and therefore not admissible, when the jury can readily draw the necessary inferences and conclusions from the facts without the aid of opinion). In *Hester*, the Second Circuit held that a coworker's testimony that plaintiff was fired because of her race was an improper topic for lay opinion and inadmissible under Rule 701. 225 F.3d 178. Indeed, as the court noted, "[o]ne purpose of Rule 701(b) is to prevent lay witnesses from suggesting that the jury take such a jump." *Id.* at 184. Similarly, in *Alexis v. McDonald's Restaurants*, 67 F.3d 341 (1st Cir. 1995),

the trial court excluded testimony opining that if the plaintiff had been "a rich white woman," she would not have been treated in the same manner. *Id.* at 347. While the deponents inferred racial animus from their own observations, the court concluded that such observation did not support an inference of racial animus, because:

> Although these observations may be entirely compatible with a race-based animus, there simply is no foundation for an inference that [defendant] harbored a racial animus toward [plaintiff] or anyone else, absent some probative evidence that [defendant's] petulance stemmed from something other than a race-neutral reaction to the stressful encounter . . .

*Id.*

Similarly, there is simply no evidence here that Satrom or any other individual affiliated with Defendants whose alleged statements the witnesses are asked to consider, harbored any racial animus. The issue is the intent of the person speaking or writing, not how a particular individual might react. The opinions of non-parties to this case who do not allege personalized discrimination as to whether the statements of another are racially insensitive are not helpful to the jury in deciding the issue in this case. There is nothing about these witnesses or any others that makes them any more qualified to interpret the Satrom Letters or other alleged statements than the members of the jury. Therefore, such evidence should be excluded under Rule 701 as improper lay opinion testimony.

## CONCLUSION

For the foregoing reasons, the deposition testimony regarding witnesses' "feelings" on whether or not statements were racially insensitive, and any testimony to that effect at trail, should be excluded.

DATED:  Honolulu, Hawaii          MAR 1 4 2006

_____

DAVID M. LOUIE
APRIL LURIA
Attorneys for Defendants United States
Olympic Committee and United States
Taekwondo Union