# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

| | | |
|---|---|---|
| DAE SUNG LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES | ) | |
| TAEKWONDO UNION, a | ) | |
| Colorado nonprofit Corporation, | ) | |
| UNITED STATES OLYMPIC | ) | Civil No. 04—00461 SOM TEK |
| COMMITTEE, a federally | ) | DECLARATION OF ROBERT |
| chartered nonprofit corporation; | ) | GAMBARDELLA |
| JOHN DOES 1-10; JANE DOES | ) | |
| 1-10; DOE PARTNERSHIPS 1- | ) | |
| 10; DOE CORPORATIONS 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF ROBERT GAMBARDELLA
### CHIEF EXECUTIVE OFFICER, UNITED STATES TAEKWONDO UNION

1.     My name is Robert P. Gambardella. I am currently serving as the Chief Executive Officer ("CEO") of the United States Taekwondo Union ("USTU"). I have held that position since February of 2004.

2.     I received a Bachelor of Science degree in Health Education from George Williams College in 1977. I subsequently earned a Masters of Arts degree in Sport Management from the University of Northern Colorado in 1997. Presently I am working on my second Masters degree in Sport Management from the University of Lyon, France, in cooperation with the International Olympic Committee. My anticipated graduation is October 2004.



EXHIBIT "B"

3.    From 1983 to 1996 I was the Head Women's Volleyball Coach at the United States Military Academy at West Point. I then worked for USA Volleyball as the Director of Junior Athlete Development and High Performance Programs (1996-1999) before serving as the Director of the USA National Volleyball Teams for Men and Women (1999-2000). I joined the United States Olympic Committee ("USOC") in October of 2000 as a Manager in the Sport Partnerships Division, and in 2002 I became the Associate Director of International Programs in the USOC's International Affairs Division.

4.    As the CEO, I am responsible for leading the day-to-day business operations of the USTU and for orchestrating the restructuring process necessary to resolve the USTU's numerous financial and administrative problems and to bring it into compliance with the Ted Stevens Olympic and Amateur Sports Act and the USOC Bylaws. This restructuring process began in February of 2004 when the former management of the USTU resigned and was replaced by me as the new CEO, working with a new five member Governance and Management Committee.

5.    As part of the new management of the USTU, we focused on reforming the USTU by reinforcing the primary mission of the USOC and its national governing bodies: supporting United States Olympic athletes to achieve sustained competitive excellence, including winning Olympic medals. To achieve that goal we are transforming the USTU into a performance-based organization with its primary goal of winning Olympic medals. In addition to having the most qualified athletes representing the United States at the Olympic Games, it is also important that the USTU provide these athletes with the best coaches to assist them in obtaining peak performance. However, unlike team sports, there is no single coach responsible for all of the taekwondo athletes nationwide. Therefore, each athlete trains on his or her own with the coach that he or she feels provides the most assistance.

6.    The USTU "remediation plan" charged the USTU Governance and Management Committee with a number of duties, including "[d]oing whatever . . . is necessary to ensure that USTU succeeds as an organization and fulfills its mission regarding the sport of Taekwondo." One component of the USTU process for ensuring that the USTU fulfills its mission was the development of new criteria for the selection of the USTU's Olympic coaches. The new USTU leadership believes strongly that coaching decisions should be based on who would best assist the athletes in winning medals. A taekwondo coach is with the Olympians during the weeks leading up to the games and sits next to the competition ring and is responsible for advising the competitors throughout each match. Therefore, we

believe that the coaches who worked on a daily basis with the athletes as they attained the skills necessary to qualify for the Olympic Games —and who are thus familiar with the athlete's strengths, abilities and weaknesses—would generally provide the greatest chance of victory. Furthermore, because the taekwondo athletes representing the United States are not chosen until two or three months prior to the Olympic Games, the replacement of these coaches with someone unfamiliar with the athletes would be very disruptive to the training process. In fact, if we named outsiders as the Olympic coaches, the athletes would continue training with the coaches with whom they have been working, and the USTU would be paying expenses for Olympic coaches who would not be helping the athletes at all.

7.     The USTU's prior criteria for selecting Olympic coaches focused on the applicants' prior coaching experience in a wide array of international competitions, including the Olympic Games, the Pan-American Games, the World Championships, the World Cup, and the Pan-American Championships. Therefore, the coaches selected under these criteria did not necessarily have any familiarity with the individual taekwondo competitors who were going to be representing the United States in the Olympics. Being named the Olympic coach was more like receiving an award than being selected to help train United States Olympians. This approach yielded coaches who were named to a figurehead position and who were then often ignored by the United States athletes. In one memorable incident at the Sydney Olympics in 2000, Steven Lopez—a competitor from the United States who won the gold medal in Sydney—was forced to move this figurehead coach out of the way during the gold medal match so that he could hear the instructions and advice that his own coach, Jean Lopez, was shouting from the stands.

8.     During the beginning of 2004, the USTU developed, with the assistance of the USOC Sport Partnerships Division, new coaching criteria designed to support the United States Olympians who would be competing in Athens. These criteria were approved by the USOC Sport Partnerships Division, the USOC Delegation Review Committee, and the USOC Executive Committee. Under the new coaching criteria, coaches are selected based on the following criteria, in priority order:

> (A) Number of athletes the coach has placed on the 2004 Olympic Team
>
> (B) Competition record (from June, 2003 to June, 2004) of the athletes placed on the 2004 Olympic Team. Priority consideration will be given to results from, in priority order:
> - 2003 World Championships

- 2003 Pan American Games

9. The USTU coach selection procedures also require the USTU Chief Executive Officer to screen candidates to ensure that they meet the defined criteria and to forward the nominees to the USTU Governance and Management Committee, which must then vote on approval of the nominees.

10. There are four taekwondo weight classes for each gender in the Olympic Games. However, a maximum of four taekwondo athletes per country can participate in the Olympic Games. Although the USTU had hoped to qualify the maximum four athletes, only two qualified: Steven Lopez and Nia Abdallah. As a result, to this point the USTU has only been allowed one taekwondo coaching credential for the 2004 Olympic Games. It is my understanding that Dae Sung Lee did not coach any of the athletes who participated in the Olympic qualifying tournaments. In other words, Mr. Lee was not the coach for any of the elite level competitors who were competing for spots on the United States Olympic Team.

11. In selecting the United States Olympic taekwondo coach, the USTU followed the exact procedures outlined above. I considered all the coaches who had expressed interest in the position and coaches like Mr. Lee who had previously held USTU international coaching positions. Applying the new selection criteria, the coaches who had placed Steven López and Nia Abdallah on the Olympic Team—Jean Lopez and Chul Ho Kim—satisfied the first criterion. Jean Lopez scored higher on the second criterion because the athlete he coached, Olympic gold medalist Steven Lopez, possessed the better competition record in the most recent elite international competitions—the 2003 World Championships and the 2003 Pan-American Games. Therefore, as the USTU CEO, I recommended that Jean Lopez be selected and I forwarded Jean Lopez's name to the USTU Governance and Management Committee. I discussed the basis for my selection with the USTU Governance and Management Committee. The Committee voted to recommend Jean Lopez to serve as the coach for the 2004 Olympic Games, and this recommendation was approved by the USOC on June 22, 2004.

12. Because of the importance to the USTU of its athletes doing well in the Olympics and because the USTU firmly believes that its athletes will be likely to perform better when assisted by coaches who consistently over time have worked with them, the USTU Governance and Management Committee voted unanimously on July 1, 2004, to allocate the necessary funds to also send Chul Ho Kim, Nia Abdallah's coach, to the Malta training camp and to Athens to coach Nia Abdallah. However, the USTU does not, at this time, have a second coaching

credential for Coach Kim, who was Nia Abdallah's coach at the Pan-American Games and is also her coach at the Olympic Training Center in Colorado Springs. If we are unable to secure a second credential, Coach Kim will not be permitted to coach Nia Abdallah from ringside during the Olympics. However, the USTU is currently seeking another coaching credential that would permit Coach Kim to assist Nia Abdallah ringside. One important factor in the consideration given to the USTU's request for another coaching credential is that the potential recipient actually be a coach working and training with one of the athletes, rather than a mere figurehead. We are hopeful that by the dates of the Olympic taekwondo competition, we may have a second coaching credential for Coach Kim.

13. Throughout the coach selection process and the process by which the coach selection process and procedures were developed, the sex, race, or national origin of coaching candidates was never a consideration. All decisions were based on performance issues and an effort to select the coaches who would be most likely to help our United States Olympians win medals in Athens. It is my understanding that Coach Kim is a Korean-American, but again that played no role, one way or the other, in the decisions we made.

14. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: August 6, 2004

Robert P. Gambardella