Dae Sung Lee
820 East Hind Drive, Suite 123
Honolulu, Hawaii 96821
Telephone: (808) 377-5040

On Behalf of Petitioners

## UNITED STATES TAEKWONDO UNION

| | |
|---|---|
| Dae Sung Lee and Hawaii State Taekwondo Association, Yong In Cheon, California State Taekwondo Association, Chu Y. Lee, Jae Y. Ro, Florida State Taekwondo Association, Bill Cho, Illinois State Taekwondo Association, Kyung W. Kim, Massachusetts State Taekwondo Association, Kyung B. An, Yong K. Kang, Joon M. Nam, New York State Taekwondo Association, Kuk H. Han, North Carolina State Taekwondo Association, Hee S. Lee, In S. Kim, Texas State Taekwondo Association, Jung H. Kim, Washington State Taekwondo Association, Samuel S. Pejo,<br><br>    Petitioners,<br><br>vs.<br><br>United States Taekwondo Union and United States Olympic Committee.<br><br>    Respondent. | Complaint; Affivadit of Dae Sung Sung Lee; Exhibits "A" – "S"; Certificate of Service |

## COMPLAINT

COMES NOW, Petitioners Dae Sung Lee and the Hawaii State

Taekwondo Association (hereinafter "HSTA"), and hereby files this Complaint against

Respondents United States Taekwondo Union (hereinafter "USTU") and United States

1

 

Olympic Committee (hereinafter "USOC"). This complaint is made pursuant to Article

XXVI of the Bylaws of the USTU in effect on or before November 3, 2004.

I.    Identity of Petitioners and Respondents

The addresses of the Petitioners are:

Mr. Dae Sung Lee
820 East Hind Drive
Honolulu, Hawaii 96821

Hawaii State Taekwondo Association
820 East Hind Drive
Honolulu, Hawaii 96821

Yong In Cheon
2815 South Diamond Bar
Diamond Bar, California 91765

California State Taekwondo Association
2815 South Diamond Bar
Diamond Bar, California 91765

Chu Y. Lee
779 North Lake Boulevard
North Palm Beach, Florida 33408

Jae Y. Ro
775 Cypress Gardens Boulevard
Winter Haven, Florida 33880

Florida State Taekwondo Association
775 Cypress Gardens Boulevard
Winter Haven, Florida 33880

Bill Cho
200 W. Main Street
St. Charles, Illinois 60174

Illinois State Taekwondo Association
200 W. Main Street
St. Charles, Illinois 60174

2



Kyung W. Kim
1192 Tarker Street
Springfield, Massachusetts 01128

Massachusetts State Taekwondo Association
1192 Tarker Street
Springfield, Massachusetts 01128

Kyung B. An
306 Kings Highway
Brooklyn, New York 11223

Yong K. Kang
84 Clowes Avenue
Goshen, New York 10924

Joon M. Nam
84 Clowes Avenue
Goshen, New York 10924

New York State Taekwondo Association
84 Clowes Avenue
Goshen, New York 10924

Kuk H. Han
1552 N. Fayetteville Street
Ashboro, North Carolina 27203

North Carolina State Taekwondo Association
1552 N. Fayetteville Street
Ashboro, North Carolina 27203

Hee S. Lee
24 Canyon Creek Village
Richardson, Texas 75080

In S. Kim
4461 Ridgecrest Circle
Amarillo, Texas 79109

Texas State Taekwondo Association
4461 Ridgecrest Circle
Amarillo, Texas 79109

Jung H. Kim
9105 N. Division Street
Spokane, Washington 99218

Washington State Taekwondo Association
9105 N. Division Street
Spokane, Washington 99218

Samuel S. Pejo
8323 Colony Circle
Colorado Springs, Colorado 80909

The addresses of the Respondents are:

USTU
One Olympic Plaza
Colorado Springs, Colorado 80909

USOC
One Olympic Plaza
Colorado Springs, Colorado 80909

II.    <u>Eligibility of Petitioner to File Complaint</u>

Petitioner Dae Sung Lee is a Group F member of the USTU for the year

2004. Petitioner HSTA is a Group A member of the USTU for the year 2004.  Petitioners

will be filing a deposit in the amount specified in Article XXVI, Section 3 of the USTU

Bylaws.

III.    <u>Basis for Complaint</u>

A.  <u>State Associations With Appointed State Presidents Were Denied
    Representation.</u>

Article I, Section 2(d) of the USTU Bylaws states that "[e]ach State

Association with at least 100 individual members shall be entitled to the number of votes

and delegates to the National Board of Governors set out below: 1 vote for 100-500

members". Petitioners' understanding is that Hawaii had 128 registered members in 2004,

4

thus entitling Petitioner HSTA to one delegate and one vote at the 2004 USTU Annual Meeting.

Petitioner HSTA previously had an appointed State President. However, because of the remediation efforts of the USOC, the appointed President's position was terminated in early 2004, leaving Petitioner HSTA without leadership. This put Petitioner HSTA into a state of disarray.

In order for Petitioner HSTA to select a delegate, a special meeting would be required under Article XIX Section 6 of the USTU Bylaws. A special meeting is required because Petitioner HSTA would not know how many delegates it would be selecting until August 1, which is the cut off date for counting membership for voting purposes. See Article I, Section 2(e) which states that the "number of delegates to which a State Association is entitled is to be based on the number of individual members registered by August 1st of each voting year."

However, only a State President can call such a meeting, which Petitioner HSTA did not have due to Respondents' short sighted remediation efforts. Article XIX Section states in relevant part: "Special meetings of the State Board of Governors may be called by the [State] President with the approval of a majority of the State Executive Committee." As a result, Petitioner HSTA could not select a delegate to the 2004 Annual Meeting without violating the USTU Bylaws.

The USOC/USTU did not provide any guidance to State Associations without an appointed State President but with more that 100 registered members on how it was supposed to go about the business of selecting delegates to the 2004 Annual Meeting. This severely prejudiced Petitioner HSTA and left its membership without its

entitled voice or vote at the 2004 USTU Annual Meeting. The errors and omissions in this instance were wholly on the part of the USTU and/or USOC and not a result of any actions by the State Association membership. Accordingly, the Annual Meeting was invalid due to the fact that not all members were duly represented.

     B. <u>Notice For the 2004 USTU Annual Meeting Was Inadequate.</u>

     Article IV, Section 2 of the USTU requires that written notice be given for the USTU Annual Meeting at least forty (40) days prior to the meeting.

     Petitioner HSTA never received notice of the 2004 Annual Meeting either directly to its membership, or through its last appointed state president, Mr. Bobby Smith. The first indication that a meeting was scheduled was the posting of the "Tentative Meeting Agenda" (Exhibit "A") on or about October 15, 2004, twenty (20) days before the November 2, 2004 meeting . The actual "Notice of Annual Meeting" (Exhibit "B") was posted on or about October 30, 2004, four days before the meeting. This is inadequate notice since both of these attempts fail to comply with the requirements of Article IV, Section 2. Without adequate Notice, the 2004 Annual Meeting is invalid, rendering all decisions and actions at said meeting to be null and void. The only remedy is for Respondents to reschedule the 2004 Annual Meeting.

     C. <u>Ineligible Delegates Were Allowed to Participate at the Annual Meeting.</u>

     On October 28, 2004, Mr. Steve Locke, Chair of the USTU Governance and Management Committee, issued a Memorandum regarding the "Credentialing of Delegates to the 2004 Annual Meeting (Exhibit "C"). In that memorandum, it was requested that each State Association "provide the USTU with the name or names of those individuals who will serve as delegate at the Annual Meeting."

However, Article IV, Section 3 of the Bylaws requires that all "delegates to the National Board of Governors must be listed at the Office of the Executive Director as registered members of the Corporation at least sixty (60) days prior to the regular meetings." The fact that Mr. Locke's memorandum was issued seven (7) days prior to the meeting indicates that delegates who should have been deemed ineligible were allowed to participate at the Annual Meeting, rendering the 2004 USTU Annual Meeting invalid, and all decisions and votes at said meeting null and void.

D. Executive Committee Meeting Requirement was Violated.

Article IV, Section 5(d) of the USTU Bylaws states that "The Executive Committee SHALL hold an agenda meeting before each regular meeting of the National Board of Governors to establish the order of the agenda items." (emphasis added). However, Petitioner Dae Sung Lee was never informed of any USTU Executive Committee meeting and did not attend any such meeting prior to the 2004 USTU Annual Meeting held on November 3, 2004. As Chair of the USTU Junior Olympic Committee, Petitioner Dae Sung Lee was still a member of the USTU Executive Committee, as were Program Coordinators John Holloway, Yon Hwan Park and others who attended the Annual Meeting. The failure to hold an Executive Committee meeting in violation of the USTU Bylaws is sufficient cause to hold the Annual Meeting to be invalid.

Respondents may attempt to argue that the USTU Governance and Management Committee constitutes the USTU Executive Committee and that the USTU Governance and Management Committee did hold a meeting prior to the 2004 Annual Meeting, satisfying the requirements of Article IV, Section 5(d) of the USTU Bylaws.

7

A reading of the USOC Remediation Plan for USTU (Exhibit "D") points to the invalidity of such an argument. While the Remediation Plan does recognize the Governance and Management Committee as "a committee of USTU's Board of Governors" it does not specify that the Governance and Management Committee would serve as the Executive Committee. In fact, the USOC Remediation Plan clearly distinguishes between the Executive Committee and the Governance and Management Committee in paragraph 6.

The bylaws of the USTU clearly require that an Executive Committee meeting be held prior to the Annual Meeting so that agenda items can be discussed. Since no Executive Committee meeting was held, the Annual Meeting itself was invalid.

E. <u>Name Change to USA Taekwondo Violated the Articles of Incorporation.</u>

Article I of the USTU Articles of Incorporation states that the "name of this organization is the UNITED STATES TAEKWONDO UNION, INC.". There are no provisions in the USTU Articles of Incorporation which allow for the use of any alternate names.

Article VIII of the Articles of Incorporation deals with Amendments. Section 1 states that "Amendments to the Articles of Incorporation may be made by two-thirds (2/3) votes cast at a regular meeting of the Board of Governors." Section 2 states that all "proposed amendments must be postmarked to the Secretary General in writing by certified mail return receipt requested at least ninety (90) days before the meeting of the Board of Governors. All proposed amendments will be considered by the Board of Directors (Executive Committee) at least sixty (60) days before the meeting of the Board

of Governors. Except for such proposed amendments as are sent out, no other amendments shall be considered...."

Section 3 states that not "later than forty-five (45) days before the date of the meeting of the Board of Governors at which amendments are to be considered, a general notice of the proposed amendment to the Articles of Incorporation, shall be distributed by the Secretary General to all known delegates and State Association presidents of the Corporation, including the Board of Governors and the Executive Committee, setting forth the text or substantive terms of the proposed amendments, the time and place of the meeting at which such amendments are to be voted upon, and a provision informing interested members of the Corporation that they may submit materials for consideration by the Board of Governors at such meeting by delivering to the Secretary, not less than thirty (30) days before the meeting, written data, views, or arguments concerning the proposed amendments."

NONE of these procedures as outlined in Article VIII of the USTU Articles of Incorporation were followed. Instead, the name change to USA Taekwondo was simply announced to those in attendance without comment, discussion or input from the Board of Governors. Furthermore, valuable time and financial resources of the USTU were utilized to create a logo and shell corporation relating to the new name USA Taekwondo, without the knowledge or consent of the Executive Committee or Board of Governors. That, combined with the lack of a vote on the matter, constitutes a substantial injury to the rights of the membership. The Articles of Incorporation's procedural safeguards are in place to insure transparency to the membership, which neither the USTU nor the USOC feel is an important concept to uphold.

F. <u>The Principle of "One Delegate, One Vote" was Violated</u>

Article IV, Section 8 of USTU Bylaws states: "Group member voting will be in accordance with the rule known as 'one delegate one vote; two delegates – two votes, etc.' In other words, if a Group member is entitled to three votes and only one delegate appears, then that Group member can vote only one vote."

Article IV, Section 8 was clearly violated during the paddle vote on the motion made by Mr. Juan Moreno to adopt the Governance Proposal. During that vote, Group B member National Collegiate Taekwondo Association (hereinafter "NCTA") delegate Mr. Yong Chin Pak had stepped outside of the meeting room. During said vote fellow Group B NCTA Delegate Anne G. Chase voted using her own paddle and also the paddle of Mr. Pak, raising a paddle in each hand.

During that same vote, AAC representatives Sammy Pejo, Mayumi Pejo-Spence and Steven Lopez also voted with a paddle in each hand. Article XXX, Section 5 does state that the National AAC shall elect the appropriate number of Athlete Representatives to the Executive Committee and Board of Governors; however said rule does not entitle AAC members to violate the concept of One Person, One Vote. All that is required is that the appropriate number of seats be made available to AAC members on the Board of Governors. If an inadequate number of Athlete Representatives fail to show up, then those that do appear can only vote their one vote. Giving AAC representatives more than one paddle constitutes a major violation of the USTU Bylaws, requiring that the paddle vote in question be held invalid and a new vote be taken on this particular issue.

G. <u>USOC Executive Director James Scherr Acted Inappropriately at the Meeting.</u>

10

After the motion to accept the Governance Proposal was defeated by a vote of 22 approving and 27 rejecting the adoption of the resolution, USOC Executive Director James Scherr stood up and threatened the USTU Board of Governors and those in attendance by stating in the strongest possible terms that he would be recommending to the USOC Executive Committee that the USTU be decertified. Mr. Scherr's sole reason for threatening such action was the fact that the Governance Proposal was rejected by a majority of the USTU Board of Governors present.

Article III, Section 4 of the USTU Bylaws states: "The National Board of Governors may, while retaining its responsibility, delegate power and authority to officers and/or committees and other associated with the Corporation." While it is true that the day to day workings of the USTU were temporarily turned over to the USOC and the Governance and Management Committee for remediation, the USTU and its Board of Governors still retained ultimate and final responsibility for the USTU.

If the USTU Board of Governors rejected the Governance Proposal, then the appropriate action on the part of the USOC and the USTU Governance and Management Committee would have been to have taken the comments and suggestions voiced at the Annual Meeting and rework the plan so that it would be approved, at the next USTU Mid-Year Meeting. It was wholly inappropriate to have the USOC Executive Director step up and engage in intimidation tactics by threatening the USTU with decertification for not approving the plan as outlined. As Article III Section 4 of the USTU bylaws state, the USTU Board of Governors retain ultimate responsibility, and the Board should be allowed to exercise its responsibility and duties without threats or intimidation from the USOC.

11

H. <u>Voting was Conducted in an Inconsistent Manner at the Annual Meeting.</u>

Petitioners also object to the fact that voting at the Annual Meeting was conducted in an inconsistent and confusing manner.  Specifically, the first proposal to adopt the Governance Proposal was voted on by a formal paddle vote and was defeated.  The second proposal was voted on by a voice vote after side bars among certain constituents, in a vague and deliberately confusing announcement as to the exact nature of the proposal being "voted" on, with little, if any, chance of deliberation.  Although the tactic of mass confusion was clearly directed to those of Korean-American (or, for lack of a better phrase, "Korean-American looking") descent, non-Korean delegates were similarly confused and misled.

I. <u>Korean-Americans Were Disenfranchised at the Annual Meeting.</u>

The entire meeting was conducted by the USTU and USOC in a manner designed to disenfranchise members of the Board of Governors of Korean-American (or Korean-American looking) descent. The methods used by the USTU and USOC included the following: Denying certain Korean-Americans the right to speak; Rushing the proceedings and switching the manner of voting in an attempt to obfuscate and confuse the agenda; and Doing an end-run around the democratic process of allowing <u>all</u> members of the Board of Governors, regardless of racial and ethnic background, to voice their opinion.  When faced with the defeat of the Governance Proposal by a majority of the members of the Board of Governors, the USTU and USOC resorted to an underhanded technique of attempting to pass the original proposal under the guise of a separate one.

One need look back only to the racist comments made by Ms. Jeannie Picarello this past year characterizing the USTU as a "Korean-mafia", and the USOC's refusal to condemn such language to note the institutional bias that has been shown by the USOC and its hand-picked USTU Management and Governance Committee against those of Korean-American (and Korean-American looking) descent. Ms. Picarello was apparently rewarded by the USOC for her racist comments, since she was subsequently selected to lead the USA Delegation to the 2006 Winter Olympics.

J. The Minutes of the Annual Meeting are Inaccurate.

Petitioners have had a chance to review the minutes of the meeting which were posted on the USTU webpage (Exhibit "E") and found that it was not reflective of his understanding of what transpired. Specifically, Petitioners object to the language in Section 17 of the Minutes as being inaccurate in its entirety.

Petitioners' understanding of the issue of the final voice vote was "whether the proposal should be amended to require a board seat to be reserved for a representative of the states." Petitioners did NOT vote to accept the Governance Proposal. Accordingly, Petitioners request that the Minutes of the Annual Meeting be changed to reflect his understanding as outlined above. If are not amended pursuant to Petitioners' wishes and intent, then they respectfully request that it be noted in the minutes that he voted NO for all items contained in Section 17 of the Minutes.

On November 17, 2004, Mr. Joon Pyo Choi, delegate from Ohio, wrote a letter to Mr. Tony Baggiano, a member of the USTU Governance and Management Committee. (Exhibit "F"). In that letter, Mr. Choi also disagreed with the language of the minutes.

13

One need look back only to the racist comments made by Ms. Jeannie Picarello this past year characterizing the USTU as a "Korean-mafia", and the USOC's refusal to condemn such language to note the institutional bias that has been shown by the USOC and its hand-picked USTU Management and Governance Committee against those of Korean-American (and Korean-American looking) descent. Ms. Picarello was apparently rewarded by the USOC for her racist comments, since she was subsequently selected to lead the USA Delegation to the 2006 Winter Olympics.

J. The Minutes of the Annual Meeting are Inaccurate.

Petitioners have had a chance to review the minutes of the meeting which were posted on the USTU webpage (Exhibit "E") and found that it was not reflective of his understanding of what transpired. Specifically, Petitioners object to the language in Section 17 of the Minutes as being inaccurate in its entirety.

Petitioners' understanding of the issue of the final voice vote was "whether the proposal should be amended to require a board seat to be reserved for a representative of the states." Petitioners did NOT vote to accept the Governance Proposal. Accordingly, Petitioners request that the Minutes of the Annual Meeting be changed to reflect his understanding as outlined above. If are not amended pursuant to Petitioners' wishes and intent, then they respectfully request that it be noted in the minutes that he voted NO for all items contained in Section 17 of the Minutes.

On November 17, 2004, Mr. Joon Pyo Choi, delegate from Ohio, wrote a letter to Mr. Tony Baggiano, a member of the USTU Governance and Management Committee. (Exhibit "F"). In that letter, Mr. Choi also disagreed with the language of the minutes.

13

Petitioners have spoken to other delegates who disagree with the proposed minutes. Consequently, Petitioners reserve the right to supplement their Complaint and supporting evidence with documents and testimony from other delegates at the meeting.

IV.    Supporting Evidence

A.    The names and identities of those present as delegates, spectators, invited guests and other participants at the 2004 USTU Annual Meeting is information that Respondents possess. The office staff of the USTU have additional information regarding membership numbers of each State Association which were used to determine the number of delegates each State Association was entitled to. This information was never publicly released or disclosed by the USTU.

B.    Attached to this Complaint are Exhibits "A" through "S" which support Petitioners' claim.

C.    The USTU and/or USOC are also in possession of other correspondence, documents or other materials not in the possession of Petitioners which would support the allegations in the Complaint. These other correspondence, documents or other materials were never disclosed by the USTU and/or USOC, even though the membership was promised transparency in all dealings.

D.    Petitioners reserve the right to supplement their Complaint with additional documents and other supporting evidence.

V.    Relief Sought

For the above stated reasons, Petitioners respectfully request the following relief:

14

A.   A determination that the USTU Annual Meeting held on November 3, 2004 in Colorado Springs, Colorado was invalid;

B.   That all decisions or actions taken at said meeting are null and void.

C.   The name change to USA Taekwondo was procedurally defective and therefore invalid.

D.   Petitioners further request that a new meeting be scheduled and held in accordance with the USTU Articles of Incorporation and Bylaws that were in effect on or prior to the November 3, 2004 USTU Annual Meeting.

VI.   <u>Signature Under Oath</u>

Petitioners hereby certify under oath that to the best of their knowledge, all information set out in or attached to the complaint is true and accurate. Petitioners further state under oath that he agrees that if any information or allegations set out in the complaint are not true and accurate, then Petitioners understand that the deposit which was filed with the complaint will be forfeited. Petitioners also state under oath that they agree that if the petitioners do not prevail in the complaint proceeding, the deposit is forfeited.

DATED: Honolulu, Hawaii _____Dec. 16, 2004_____

_____
DAE SUNG LEE for
Petitioners

15