ROECA LOUIE & HIRAOKA
David M. Louie (2162-0)
Email:  dlouie@rlhlaw.com
April Luria (4687-0)
Email:  aluria@rlhlaw.com
900 Davies Pacific Center
841 Bishop Street
Honolulu, HI  96813-3917
Telephone:   (808) 538-7500
Facsimile:   (808) 521-9648

WILLIAMS & CONNOLLY LLP
Mark S. Levinstein
Email:  mlevinstein@wc.com
William J. Bachman
Email:  wbachman@wc.com
Robert L. Moore
Email:  rlmoore@wc.com
Patrick J. Houlihan
Email:  phoulihan@wc.com
725 Twelfth Street, N.W.
Washington, D.C.  20005
Telephone:   (202) 434-5000
Facsimile:   (202) 434-5029

Attorneys for Defendants
United States Taekwondo Union and
United States Olympic Committee

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | | |
|---|---|---|
| DAE SUNG LEE, | ) | Civil No. 04—00461 SOM LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | DEFENDANTS UNITED STATES |
| vs. | ) | TAEKWONDO UNION AND |
| | ) | UNITED STATES OLYMPIC |
| UNITED STATES TAEKWONDO | ) | COMMITTEE'S TRIAL BRIEF |

UNION, a Colorado nonprofit )
Corporation, UNITED STATES )       Date: March 21, 2006
OLYMPIC COMMITTEE, a federally )
chartered nonprofit corporation; )  Trial Date: May 17, 2006
JOHN DOES 1-10; JANE DOES 1- )
10; DOE PARTNERSHIPS 1-10; )
DOE CORPORATIONS 1-10, )
                          )
                  Defendants. )
_____ )

Trial Brief WJB Version [FINAL]

## DEFENDANTS UNITED STATES TAEKWONDO UNION AND UNITED STATES OLYMPIC COMMITTEE'S TRIAL BRIEF

Defendants United States Taekwondo Union ("USTU") and

United States Olympic Committee ("USOC") submit the following Trial

Brief:

## I.    FACTS

### A.    The Role of the United States Olympic Committee

Under law the United States Olympic Committee ("USOC")

has the responsibility for, among other things, the Olympic movement in the

United States and for the United States participation in the Olympic, Pan

American, and Paralympic Games.  Included among the USOC's obligations

is the responsibility to review applications by not-for-profit organizations

that apply to serve as the National Governing Body ("NGB") for an Olympic

or Pan American sport.  Until July of 2004, the USOC Membership &

Credentials Committee ("USOC M&C Committee") was the group of

volunteers responsible for advising the USOC Board of Directors about the compliance of NGBs with their obligations.

**B.      Problems With the United States Taekwondo Union**

The United States NGB with the greatest compliance problems from the mid-1990's through 2004 was the United States Taekwondo Union ("USTU").

Among the many potential problems and issues raised repeatedly concerning the USTU's operations were: (1) inability to properly account for the USTU's funds, (2) improper expenditure of USTU funds for the benefit of USTU officers and Board members, (3) improper use of USTU funds to purchase gifts, cigarettes, and alcohol, (4) misuse of USOC funds provided by the USOC that the USTU had agreed were only to be used for specified purposes, (5) use of funds that should have been used to advance the mission of the USTU to further the international political ambitions of the USTU President, Sang Lee, (6) failure to afford athletes a proper role in the governance of the USTU and its committees, as required by law, (7) failure to process and resolve the many grievances that plagued the USTU and its membership, (8) fraudulent elections and fraudulent membership practices, (9) issuing of cash to staff and governance personnel and failing to properly account for the use of those funds, (10) allowing

USTU governance personnel to spend USTU funds for improper and unnecessary alcoholic beverages, golf, travel, entertainment, and personal expenses, (11) using USTU funds and resources to assist individuals and private businesses favored by the USTU leadership, and (12) failing to provide a fair or equitable opportunity for coaches, referees, and administrators who were interested in participating in the competitions and activities of the USTU.

The aforementioned problems were manifest in the perceptions of the taekwondo community at large. For example, the USOC M&C Committee heard from many individuals that there was a widespread perception in the taekwondo community that the judging of taekwondo competitions was not fair or unbiased, and that individuals who challenged the USTU leaders or raised concerns about the conduct of the USTU or its governance or management personnel would suffer adverse consequences. Another widely-held perception was the domination and control of the USTU by President Sang Lee, who in the fall of 2002 engineered an elimination of presidential terms limits.

### C.     The USOC M&C Committee Attempts to Assist the USTU

For years the USOC M&C Committee worked with USTU personnel to try to bring the USTU into compliance. Over time, it had

become clear to members of the USOC M&C Committee that the leadership of the USTU did not have the ability or the commitment to operate the USTU properly, as required by law. As a result, the USOC M&C Committee recommended to the USOC Board of Directors that it issue a complaint of non-compliance against the USTU and charge the USOC Executive Committee with conducting a formal hearing concerning the allegations of non-compliance by the USTU.

### D.    Dae Sung Lee

Plaintiff Dae Sung Lee was a friend and ally of USTU President Sang Lee. When Dae Sung Lee ended his career as a competitor and became a taekwondo coach, his coach, President Sang Lee, rewarded Dae Sung Lee's loyalty with various coaching positions and other positions of prestige and importance in the USTU. Dae Sung Lee also served as a member of the USTU Board and the USTU Executive Committee and there is no evidence that he ever questioned or challenged the conduct of Sang Lee or the USTU, even when he knew or should have known of substantial improprieties.

### E.    Coach Selection Criteria

In the years prior to 2004, the USTU's coach selection criteria were completely subjective. Sang Lee selected the chair of a Coaching Science

Committee and that person in turn selected all the members of the committee. The Coaching Science Committee lacked standards and it was common for the Chair of the committee to select coaches without seeking nominations or holding a meeting. Rather than selecting the coaches most familiar with the top United States' athletes, the perception was that many of the coaches were selected as a result of their relationships with Sang Lee and/or his friends. In fact, in the case of Dae Sung Lee's selection in 2003, he was selected in a manner that violated even the completely subjective procedures.

### F.    Compliance Review Leads to Settlement and Remediation

Between 2001-2003, the USOC M&C Committee conducted a compliance review of the USTU. The review focused on, among other things, the many concerns raised by the USTU members and the financial and governance issues that had plagued the USTU for more than 10 years. The USTU was unable to present evidence that it was in compliance with its obligations as an NGB, and conceded that it was not in compliance.

While the USOC M&C Committee had no power to hold that the USTU was non-compliant, the USOC M&C Committee was asked for its recommendations about a possible settlement or resolution pursuant to which the non-compliant USTU might nevertheless remain the NGB for taekwondo in the United States. When the USOC did not reach a settlement agreement

with the USTU, the USOC M&C Committee recommended that the USOC

Board of Directors charge the USOC Executive Committee to hold a formal

compliance hearing concerning the USTU.

      The USOC Board of Directors agreed with the recommendation of

the USOC M&C Committee and directed the USOC Executive Committee to

hold a hearing regarding the USTU's status as the national governing body for

the sport of taekwondo. This hearing was scheduled for January 2004, and

following the submission of evidence, the USTU agreed to enter into a

Settlement Agreement and Remediation Plan with the USOC. The

Remediation Plan, initially proposed by the USTU and negotiated between the

USTU and the USOC, required the resignation of all USTU officers, and

mandated that the USTU would be overseen on an interim basis by a new

interim Chief Executive Officer and five-person Governance and Management

Committee.

### G. New Management Assumes Control of the USTU and Implements New Coach Selection Criteria

      The new USTU management took office in February 2004. A

major focus of the new USTU management was on restoring USTU member

confidence and ending some of the improper and controversial practices of the

previous USTU management. Among these was the Olympic coach selection

criteria. For a variety of reasons, the USTU GMC recommended the withdrawal of the USTU's designated prior coach Dae Sung Lee and team leader Lynette Love and implemented new coach selection criteria that selected the Olympic coaches from among the coaches of the athletes who qualified to be on the Olympic team. The USTU decided to revise the criteria so that the coaches selected would provide the athletes with the best chance for Olympic success. Along these lines, the criteria favored home coaches, who were indisputably the most familiar with the athletes' strengths, weaknesses, strategies, and training techniques.

The new coach selection criteria were completely objective and intended to preclude the consideration of friendships or invidious discrimination on the basis of race, sex, national origin, or other discriminatory criteria. Under the new criteria, coaches were selected based on the following criteria, in priority order:

(A)    Number of athletes the coach has placed on the 2004 Olympic Team;

(B)    Competition record (from June, 2003 to June 2004) of the athletes placed on the 2004 Olympic Team. Priority consideration will be given to results from, in priority order:

- 2003 World Championships
- 2003 Pan American games.

8

**H.    Taekwondo Athletes Coaches Are Selected for Athens**

During the U.S. Olympic qualifying events in June 2004, only one man, Steven Lopez, and one woman, Nia Abdallah, qualified to compete in taekwondo during the 2004 Olympic Games. Therefore, under the new coach selection protocol, only Jean Lopez (Steven Lopez's coach) and Chul Ho Kim (Nia Abdallah's coach) met the first criterion for coaching the 2004 United States Olympic Taekwondo team. Because Stephen Lopez, the athlete Jean Lopez coached, had performed more successfully than Nia Abdallah, the athlete coached by Chul Ho Kim, in the 2003 events referenced in the coach selection criteria, Jean Lopez was nominated by the USTU and approved by the USOC to serve as the head coach for the 2004 Olympic taekwondo team.

**II.  LIABILITY**

Plaintiff's sole remaining claim[1] is for intentional discrimination based on race in violation of 42 U.S.C. § 1981, which provides that:

> All persons within the jurisdiction of the United
> States shall have the same right in every State and
> Territory to make and enforce contracts, to sue, be
> parties, give evidence, and to the full and equal
> benefit of all laws and proceedings for the security

---

[1]    Plaintiff had originally also asserted nine common law claims. This Court dismissed the common law claims on the grounds that Plaintiff was required to pursue these claims in arbitration.

> of persons and property as is enjoyed by white
> citizens, and shall be subject to like punishment,
> pains, penalties, taxes, licenses, and exactions of
> every kind, and to no other.

42 U.S.C. § 1981(a).

**A.     Legal Standard – Plaintiff's Claims Are Governed by the
*McDonnell Douglas* Burden-Shifting Analysis**

The burden-shifting analysis set forth by the United States

Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05

(1973), applies in this case.

First, Plaintiff must establish a prima facie case of unlawful

discrimination. To do so, Plaintiff must show that he is a member of a class

protected by Section 1981 and that he was treated differently than similarly

situated individuals who were not in that class. *See, e.g., Wakefield v.

Providence Health Sys.-Or.*, No. 02-35661, 2003 WL 22442977, at *2 (9th

Cir. Oct. 8, 2003) (mem.). In other words, Plaintiff must show that "the

defendant was more likely than not motivated by" intentional discrimination.

*Gay v. Waiters' Dairy Lunchmen's Union,* 694 F.2d 531, 538 (9th Cir. 1982).

Plaintiff must provide evidence of actions taken by the Defendants from

which one may infer that, if such actions remain unexplained, that it is more

likely than not that the Defendants' actions were "based on a discriminatory

criterion illegal under the Act." *Furnco Constr. Corp. v. Waters*, 438 U.S.

576, 577 (1978) (quotation omitted).  A prima facie case "in effect creates a presumption that the employer unlawfully discriminated." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (quotation omitted).

Finally, in discrimination cases, courts permit inferences of discriminatory motive from remarks alleged to be racially charged *only* when the plaintiff can demonstrate a sufficient nexus between those remarks and the adverse action.  *E.g., DeHorney v. Bank of Am.,* 879 F.2d 459, 468 (9th Cir. 1989).  In particular, the Ninth Circuit demands, at a minimum, that "stray remarks" come in the context of the employment or contractual decision at issue.  *E.g., Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1438 (9th Cir. 1990) ("[S]tray remarks, . . . when unrelated to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate criteria, even when such statements are made by the decisionmaker in issue.") (quoting *Smith v. Firestone Tire & Rubber Co.,* 875 F.2d 1325, 1330 (7th Cir. 1989)).  The Ninth Circuit has therefore rejected Section 1981 claims when a plaintiff attempting to use discriminatory remarks to create an inference of intentional discrimination has failed to provide "a sufficient nexus between the alleged discriminatory remarks and the adverse employment decision." *Mustafa v. Clark County Sch. Dist.,* 157 F.3d 1169, 1180 (9th Cir. 1998).

If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to produce evidence showing that the defendant undertook the challenged action for a "legitimate, non-discriminatory reason." *McDonnell-Douglas*, 411 U.S. at 802.

If the defendant offers a legitimate, non-discriminatory reason, then "the presumption of discrimination 'drops out of the picture,'" *see, e.g., Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at 511), and the plaintiff must prove by a preponderance of the evidence that the legitimate non-discriminatory reason was solely a pretext for intentional discrimination. *See Cornwell v. Electra Cent. Credit Union, No. 04-35408,* 2006 U.S. App. LEXIS 5136, at *21-22 (9th Cir. Mar. 1, 2006).

### B.     Plaintiff's Evidence Does Not Establish a Prima Facie Case that Defendants' Conduct Was the Result of Intentional Racial Discrimination

In order for Plaintiff to establish a prima facie case of discrimination under § 1981, Plaintiff must introduce sufficient evidence supporting an inference that his appointment as the 2004 Olympic coach was rescinded as a result of intentional discrimination against him based on his race. In this case, none of the evidence that Plaintiff contends evidences racial discrimination had anything to do with coach selection. The evidence

will show that the members of the USTU GMC made the only decisions at issue in this case without any consideration of the race of the candidates to serve as the 2004 Olympic coach.

**C.  The USTU and USOC Have Demonstrated Legitimate, Non-Discriminatory Reasons for the Actions Plaintiff Has Challenged**

In the event Plaintiff meets his burden of establishing a prima facie case by a preponderance of the evidence, Defendants have plainly demonstrated legitimate, non-discriminatory reasons for the actions.  This Court has previously held that non-discriminatory reasons existed for the issuance of new, objective coaching criteria, the rescinding of Plaintiff's initial appointment, and the application of those objective criteria to select Jean Lopez as the 2004 Olympic coach.  *Lee v. USTU*, 331 F. Supp. 2d 1252, 1268-69 (D. Haw. 2004).  Nothing has changed since the Court reached those conclusions.

By February 2004 there was wide consensus among the USOC Sports Partnership personnel, the new USTU CEO, and the five members of the USTU GMC that the 2004 Olympic Coach Selection criteria for taekwondo should be rewritten to utilize objective criteria to identify the coach or coaches most likely to help the two United States athletes succeed

in Athens.  Application of the criteria resulted in the selection of Jean Lopez

as the Head Coach.[2]

**D.    No Evidence Exists That Either the Decision to Implement New Coaching Criteria Or Its Application Were a Pretext for Intentional Discrimination Against Plaintiff Because of His Race**

In the absence of direct evidence that the rescinding of

Plaintiff's appointment was a product of discrimination against Korean-

Americans, Plaintiff must produce specific and substantial admissible

evidence to support his claim.  *See, e.g., Godwin v. Hunt Wesson Inc.,* 150

F.3d 1217, 1221 (9th Cir. 1998); *see also Tarin v. County of Los Angeles*, 123

F.3d 1259, 1264 (9th Cir. 1997).

Plaintiff has to prove by a preponderance of the evidence that

the new, objective, race-neutral criteria were intentionally designed to

discriminate against Korean-Americans.  There is absolutely no evidence

that could support such a conclusion.

---

[2]     Although not required under the criteria, the USTU GMC named Chul Ho Kim, a Korean, as an additional coach at the request of the second athlete who had qualified for the Olympics.

### III.    Damages

#### A.    Plaintiff Cannot Prove Fact of Damage or Causation with Respect to His Alleged Economic Damages

In the event that Plaintiff establishes liability under 42 U.S.C. § 1981, he is entitled to economic damages.  However, a prerequisite is showing that the damages allegedly suffered are directly related to the alleged violation of 42 U.S.C. § 1981.  *Lee v. USTU*, Order Denying Defendants' Motion to Preclude Expert Testimony at 2 (D. Haw. Jan. 22, 2006).

Plaintiff represented to the Court that Plaintiff's expert, Thomas Loudat ("Loudat"), will not offer expert opinion on either the fact of damage (which he assumed), or on causation of damage (which he also assumed). The Court therefore held that if Plaintiff cannot establish the fact that Plaintiff suffered economic damages, or that the violation of 42 U.S.C. § 1981 caused him economic damages, Defendants should renew their motion to exclude the testimony of Loudat. *Lee v. USTU*, Order Denying Defendants' Motion to Preclude Expert Testimony at 1 (D. Haw. Jan. 22, 2006).

**B.    The Opinions of Dr. Thomas Loudat Should Be Excluded Because They Don't Meet the Standards of Reliability and Relevance Set Forth in Rule 702 of the Federal Rules of Evidence and *Daubert*.**

Defendants previously challenged the opinions offered by Dr. Loudat as speculative and unreliable, in violation of both Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993) and its progeny.  The Court denied that motion but expressly invited Defendants to renew the motion at trial under certain circumstances.  *Lee v. USTU*, Order Denying Defendants' Motion to Preclude Expert Testimony at 1 (D. Haw. Jan. 22, 2006).  Defendants continue to believe that Dr. Loudat's opinions do not come close to approaching, let alone satisfying, the requirements set forth in *Daubert*, as his opinions are devoid of the tools of an economist.

Dr. Loudat's opinions discuss three damage scenarios – a "best-case" ($2,031,605), a "low-case" ($175,649), and a "base-case" ($1,076,289).  *Id.* at 3.  As a matter of law, the jury should not be permitted to consider the Dr. Loudat's "best case" scenario, because as this Court noted,

> Loudat testified that he did not 'believe to a reasonable degree of economic probability [that] Dae Sung Lee would have achieved the best-case scenario'.

Loudat Depo. at 43-44. *Id.* at 4. During his deposition, Dr. Loudat repeatedly stated that he was *not* offering an opinion that the best-case scenario would have actually happened. Rather, it appears that the calculation of a best case scenario number was for no other purpose than to plug in a number necessary to arriving at his base-case scenario and to provide a much higher number that might cause his base-case number to look to a jury like a good compromise amount.

### C. Plaintiff Cannot Recover the Alleged Lost Profits of the Corporation for Which He Is the Sole Shareholder

It is axiomatic that Plaintiff is only permitted to recover damages that he suffered personally. Accordingly, Defendants sought to preclude Plaintiff from introducing evidence regarding damages suffered by United States Taekwondo, Inc., the corporation owned by Plaintiff.

In response, Plaintiff represented to the Court that he:

> is not seeking damages on behalf of" his Taekwondo school. Opposition at 10. Instead, Lee is seeking only damages he has individually sustained. See Verified Complaint for Damages, Injunction and Declaratory Relief (July 28, 2004) ¶ 23 ("PLAINTIFF has suffered general damages resulting from public embarrassment, humiliation, mental anguish, damage to his character, damage to his professional reputation which has taken decades to build, as well as special damages for his loss of future business and personal earnings and loss of future business opportunities. (Emphasis added.)

17

*Lee v. USTU*, Order Denying Motion to Strike Claim by Taekwondo School and to Preclude evidence Regarding the Taekwondo School's Damages at 2 (D. Haw. Jan. 22, 2006).

In fact, however, the school where Plaintiff is employed is owned not by Plaintiff, but by a corporation, United States Taekwondo Center, Inc. Corporations may be permitted to raise claims under 42 U.S.C. § 1981,[3] but United States Taekwondo Center, Inc. has not asserted a claim[4] and is not a Plaintiff in this case. Plaintiff cannot recover damages for injuries allegedly sustained by the school where he teaches or injuries suffered by the United States Taekwondo Center, Inc., the corporation which owns and operates Plaintiff's taekwondo school. *Erlich v. Glasner*, 418 F.2d 226 (9th Cir. 1969).

---

[3] As the Supreme Court explained in *Domino's Pizza, Inc. v. McDonald*, slip op. at 2 n.1 (2006):

> Since JWM settled its claims and is not involved in this case, we have no occasion to determine whether, as a corporation, it *could* have brought suit under § 1981. We note, however, that the Courts of Appeals to have considered the issue have concluded that corporations may raise § 1981 claims. *See, e.g., Hudson Valley Freedom Theater, Inc. v. Heimbach,* 671 F.2d 702, 706 (CA2 1982).

[4] In fact, Plaintiff filed a proposed Amended Complaint and a Motion to Amend to add United States Taekwondo, Inc. as an additional plaintiff, but then withdrew the motion after Defendants filed an opposition that made it clear the corporation did not have a claim to assert.

Most recently, the United States Supreme Court reiterated in the

*Domino's Pizza, Inc. v. McDonald* the rights of individuals to attempt to

recover for the harms flowing to corporations:

> ' . . . basic proposition that a corporation is a
> separate legal entity from its stockholders and
> officers,' . . . and [the district court] concluded that
> a president or sole shareholder may not step into
> the shoes of the corporation and assert that claim
> personally.'

*Domino's Pizza, Inc. v. McDonald*, slip op. at 3 (2006).

Dr. Loudat, Plaintiff's expert on economic damages, has

already conceded that his damages calculations reflect the lost profits of the

United States Taekwondo Center, Inc.  Loudat Depo. at 30:18-23.

Based upon Plaintiff's representations at the hearing on

Defendants' motions, the Court stated that:

> Lee appears prepared to present evidence that his
> personal earnings were tied to the school's
> revenue.  Under those circumstances, it makes no
> sense to preclude evidence of the school's revenue.

*Lee v. USTU*, Order Denying Motion to Strike Claim by Taekwondo School

and to Preclude evidence Regarding the Taekwondo School's Damages at 6

(D. Haw. Jan. 22, 2006).  However, because damages to a corporation are

not damages to the sole shareholder, *Von Brimer v. Whirlpool Corp.*, 536

F2d 838, 846 (9th Cir. 1976), Plaintiff's bald assertions to the contrary do

not satisfy Plaintiff's obligation to identify economic injuries separate and distinct from injuries allegedly suffered by the corporation he owns.

### D.    Plaintiff Cannot Satisfy the Requirements to Recover Punitive Damages

An award of punitive damages, under 42 U.S.C. § 1981, is only appropriate if Plaintiff proves by a preponderance of the evidence that Defendants' revocation of plaintiff's selection as Olympic coach and implementation of facially-neutral objective coach selection criteria was willful and egregious or recklessly indifferent to Plaintiff's federal rights. *Ngo v. Reno Hilton Resort Corp.*, 140 F.3d 1299, 1304 (9th Cir. 1998), *amended by*, 156 F.3d 988 (9th Cir. 1998); *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1068 n.15 (9th Cir. 2002), *amended by*, 319 F.3d 1073 (9th Cir. 2003). Namely, Plaintiff must establish that defendants "almost certainly knew that what [they] w[ere] doing was wrongful and subject to punishment." *Ngo*, 140 F.3d at 1304 (quoting *Soderbeck v. Burnett County*, 752 F.2d 285, 291 (7th Cir. 1985)).

The question of sufficiency of the evidence to justify an award of punitive damages is initially a question of law. *See, e.g.*, *Tran v. State Farm Mut. Auto. Ins. Co.*, 999 F. Supp. 1369, 1378 (D. Haw. 1998) (holding that "the question of punitives cannot be put to a jury" where evidence warranting such damages is insufficient); *see also Chizmar v. Mackie*, 896

P.2d 196, 209 (Alaska 1995) ("[W]here there is no evidence that gives rise to an inference of actual malice or conduct sufficiently outrageous to be deemed equivalent to actual malice, the trial court need not, and indeed should not, submit the issue of punitive damages to the jury."), *quoted by Kolstad v. ADA*, 527 U.S. 526, 538-39 (1999).  If Plaintiff fails to introduce evidence sufficient to establish that Defendants' actions were willful, egregious, and recklessly indifferent to Plaintiff's federal rights, the issue of punitive damages may not even be presented to the finder of fact.  *See, e.g., Nat'l. Consumer Coop. Bank v. Madden*, 737 F. Supp. 1108, 1115 (D. Haw. 1990) ("To present the issue of punitive damages to the jury, there must be 'sufficient evidence presented at trial to support a finding that the wrongdoer acted wantonly, oppressively, or maliciously.'") (internal quotation omitted).[5]

---

[5]    Evidence of a defendant's wealth or financial condition is generally inadmissible unless and until a plaintiff establishes a prima facie case of liability for punitive damages or demonstrates that such evidence is relevant to other issues in the litigation.  *See, e.g., In re Hawaii Fed. Asbestos Cases*, No. 85-0548, 1988 U.S. Dist. LEXIS 18659, at *11 (D. Haw. Nov. 5, 1988) (holding that "[a]ny evidence of the financial condition, size and/or wealth of the defendants is excluded [until the punitive damages] phase of the trial unless plaintiffs can demonstrate that the evidence is relevant to some other issue and only upon advance notice to the court and opposing counsel of the purpose of such evidence and the manner in which it will be introduced"); *Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, No. 02-2116, 2006 U.S. Dist. LEXIS 1327, at *11-13 (W.D. PA. Jan. 13, 2006); 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2390, at 508 (1995)

### E.    Mitigation of Damages and Causing His Own Damages

To the extent Plaintiff was harmed at all by the attendant publicity of the rescission of his appointment to coach in the Olympics, it was Plaintiff who publicized it. This included the misrepresentation that the decision was based upon the conclusion that Jean Lopez was more qualified, when it was actually based on the change of circumstances and the new objective criteria discussed above. In addition, Plaintiff failed to take steps that could have dramatically reduced or eliminated the alleged damages he claims to have suffered.

---

(citing research indicating that juries are more likely to find for the plaintiff on the threshold issue of liability for punitive damages when evidence of the defendant's net worth is introduced). The rationale for this rule was explained by the court in *Rupert v. Sellers*, 368 N.Y.S.2d 904, 909-13 (N.Y. App. Div. 1975):

> [A] Defendant's wealth should not be a weapon to be used by plaintiff to enable him to induce the jury to find the defendant guilty of malice, thus entitling plaintiff to punitive damages. . . . Not until plaintiff obtains such a special verdict that he is entitled to punitive damages is it necessary or important for him to know [the] defendant's wealth.

Dated:  Honolulu, Hawaii, March 21, 2006.

Respectfully submitted,

DAVID M. LOUIE
APRIL LURIA

ROECA LOUIE & HIRAOKA
900 Davies Pacific Center
841 Bishop Street
Honolulu, HI  96813-3917
Telephone:   (808) 538-7500
Facsimile:    (808) 521-9648

Mark S. Levinstein
William J. Bachman

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Telephone:   (202) 434-5000
Facsimile:    (202) 434-5029

Attorneys for Defendants United
States Olympic Committee and
United States Taekwondo Union

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | | |
|---|---|---|
| DAE SUNG LEE, | ) | Civil No. 04-00461 SOM LEK |
| | ) | |
| Plaintiff, | ) | CERTIFICATE OF SERVICE |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES TAEKWONDO | ) | |
| UNION, a Colorado nonprofit | ) | |
| Corporation, UNITED STATES | ) | |
| OLYMPIC COMMITTEE, a federally | ) | |
| chartered nonprofit corporation; | ) | |
| JOHN DOES 1-10; JANE DOES 1- | ) | |
| 10; DOE PARTNERSHIPS 1-10; | ) | |
| DOE CORPORATIONS 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing

was duly served by depositing the same in the United States Mail, postage

prepaid [M], hand-delivery [HD], facsimile transmission [F] or

electronically through CM/ECF [E] to the following at their last known

address:

WARD D. JONES, ESQ.          [ HD  ]
Bervar & Jones
1400 Pauahi Tower
1001 Bishop Street
Honolulu, Hawaii  96813
--and--

GLENN H. UESUGI, ESQ.          [ HD ]
MICHAEL J. GREEN, ESQ.
345 Queen Street, 2nd Floor
Honolulu, Hawaii  96817

    Attorneys for Plaintiff
    Dae Sung Lee

DATED:  Honolulu, Hawaii, March 21, 2006


_____
DAVID M. LOUIE
APRIL LURIA
Attorneys for Defendants
UNITED STATES TAEKWONDO
UNION and UNITED STATES
OLYMPIC COMMITTEE