ROECA LOUIE & HIRAOKA
David M. Louie (2162-0)
Email: dlouie@rlhlaw.com
April Luria (4687-0)
Email: aluria@rlhlaw.com
900 Davies Pacific Center
841 Bishop Street
Honolulu, HI 96813-3917
Telephone: (808) 538-7500
Facsimile: (808) 521-9648

WILLIAMS & CONNOLLY LLP
Mark S. Levinstein
Email: mlevinstein@wc.com
William J. Bachman
Email: wbachman@wc.com
Robert L. Moore
Email: rlmoore@wc.com
Patrick J. Houlihan
Email: phoulihan@wc.com
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

Attorneys for Defendants
United States Taekwondo Union and
  United States Olympic Committee

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | | |
|---|---|---|
| DAE SUNG LEE, | ) | Civil No. 04—00461 SOM LEK |
| | ) | |
| Plaintiff, | ) | **DEFENDANT UNITED STATES** |
| | ) | **TAEKWONDO UNION AND** |
| vs. | ) | **UNITED STATES OLYMPIC** |
| | ) | **COMMITTEE'S OPPOSITION** |
| UNITED STATES TAEKWONDO | ) | **TO PLAINTIFF'S MOTION** *IN* |
| UNION, a Colorado nonprofit | ) | *LIMINE* **TO EXCLUDE THE** |

Corporation, UNITED STATES )
OLYMPIC COMMITTEE, a federally )
chartered nonprofit corporation; )
JOHN DOES 1-10; JANE DOES 1- )
10; DOE PARTNERSHIPS 1-10; )
DOE CORPORATIONS 1-10, )
)
          Defendants. )
)
)
)
_____ )

**TESTIMONY OF DEFENDANTS'
EXPERT JOHN CANDON;
DECLARATION OF APRIL A.
LURIA [AND EXHIBITS "1" -
"6" ATTACHED THERETO];
CERTIFICATE OF SERVICE**

Hearing Date:  April 11, 2006
Time:  9:00 a.m.
The Honorable Susan Oki Mollway
Trial Date: May 17, 2006

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................... ii

BACKGROUND.................................................................................... 1

    A.    Dr. Loudat's Opinion.......................................................... 1

    B.    Mr. Candon's Rebuttal to Dr. Loudat................................... 3

ARGUMENT ........................................................................................ 6

    A.    Mr. Candon Is Competent To Provide Expert Testimony At Trial .................................................................................. 6

    B.    Mr. Candon's Opinions Are Reliable.................................... 9

        1.    Plaintiff's Motion Does Not Reach the Vast Majority of Mr. Candon's Opinions. ......................................... 9

        2.    The So-Called Distinction Between Colorado Springs and Castlerock Is a Distinction Without a Difference ............. 15

CONCLUSION .................................................................................... 18

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*DSU Medical Corp. v. JMS Co.*, 296 F. Supp. 2d 1140 (N.D. Cal. 2003) ...............11

*Daubert v. Merrell Dow Pharmaceuticals*, 43 F.3d at 1311 (9th Cir. 1995) .......... 13

*Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) ......................10, 11

*Doe v. Cutter Biological, Inc.*, 971 F.2d 375 (9th Cir. 1992)................................... 7

*General Electric Co. v. Joiner*, 522 U.S. 136 (1997)............................................... 17

*Grant v. Bristol-Myers Squibb*, 97 F. Supp. 2d at 986 (D. Ariz. 2000)....................11

*Hemmings v. Tidyman's, Inc.*, 285 F.3d 1174 (9th Cir. 2002) ................................. 18

*Industrial Hard Chrome, Ltd. v. Hetran, Inc.*, 92 F. Supp. 2d 786
    (N.D. Ill. 2000)................................................................................................ 9

*Kennedy v. Collagen Corp.*, 161 F.3d 1226 (9th Cir. 1998)................................... 17

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).................................................11

*Royal College Shop, Inc. v. Northern Insurance Co.*, 895 F.2d 670
    (10th Cir. 1990)............................................................................................. 8

*Sullivan v. United States Department of Navy*, 365 F.3d 827 (9th Cir. 2004) ........ 17

*Thomas v. Newton International Enterprises, Inc.*, 42 F.3d 1266
    (9th Cir. 1994)........................................................................................... 6, 7

*United States v. Christophe*, 833 F.2d 1296 (9th Cir. 1987) .................................... 7

*United States v. Downing*, 753 F.2d 1224 (3d Cir. 1985)......................................... 9

*United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000) *criticized by* 413 F.3d
    1093 (9th Cir. 2005).......................................................................................11

*United States v. Maher*, 645 F.2d 780 (9th Cir. 1981) .............................................. 7

*United States v. Rahm*, 993 F.2d 1405 (9th Cir. 1993)............................................. 9

*United States v. Rearden*, 349 F.3d 608 (9th Cir. 2003)............................................ 9

*Wilmington v. J.I. Case Co.*, 793 F.2d 909 (8th Cir. 1986) ..................................... 18

## STATE CASES

*Confederated Tribes of Siletz Indians of Oregon v. Weyerhaeuser Co.*, 2003
    WL 23715981 (D. Or. Jan. 21, 2003) ...........................................................11

*Kitchen Kaboodle II, Inc. v. United States*, 1997 WL 416356 (D. Or. May 6,
    1997) .......................................................................................................... 9

## FEDERAL STATUTES

Fed. R. Evid. 702..................................................................................................... 6

**DEFENDANTS UNITED STATES TAEKWONDO UNION AND UNITED
STATES OLYMPIC COMMITTEE'S OPPOSITION TO PLAINTIFF'S
MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY
OF DEFENDANTS' EXPERT JOHN CANDON**

Defendants United States Taekwondo Union ("USTU") and United
States Olympic Committee ("USOC") submit this opposition to Plaintiff's motion
to exclude the expert testimony of John Candon. As explained in greater detail
below, Mr. Candon's work in this case easily satisfies the standard for expert
testimony, and Plaintiff's motion should therefore be denied.

## BACKGROUND

### A.    Dr. Loudat's Opinion

Plaintiff's expert Dr. Loudat purports to have estimated the loss to
both Plaintiff Dae Sung Lee's officer compensation and his Sub-Chapter S net
income purportedly as a result of his withdrawal as coach of the 2004 Olympic
team.[1] Ex. 1 (Expert Report of Dr. Thomas Loudat, March 14, 2005) at i. In
reaching his damages estimates, Dr. Loudat calculated an estimated high-loss
scenario[2] and a low-loss scenario as well as a base case figure, which he reached
by splitting the difference between the two figures. Ex. 2 at 81:13-14 ("base case,

---

[1]    As Dr. Loudat acknowledged, he was not retained to opine on liability or
causation. Ex. 2 (Deposition of Dr. Thomas Loudat, June 22, 2005) at 10:11-16.

[2]    Dr. Loudat testified repeatedly that he was not offering any opinion that the
high loss scenario would have actually occurred. *See, e.g.*, Ex. 2 at 170:15-17
("And because of those unknowns, that's why I didn't opine that the high scenario
was what would have occurred.").

which is the mid point of each"). As Dr. Loudat conceded, the base case numbers were driven in large measure by the high loss calculation. Ex. 2 at 103:20-22.

In reaching these conclusions, Dr. Loudat assumed that Plaintiff's "student base would be measurably enhanced if was the credentialed coach" and that Plaintiff suffered "irreparable professional harm due to incident." Ex. 1 at 4. This aspect of Dr. Loudat's opinion was concededly not the product of any expertise, but rather based on the "the *general concept or general knowledge* that a market-differentiating characteristic such as Olympics coaching experience can be publicized and generally leads to some income award or reward, which is typically the case in this society." Ex. 2 at 14:11-16 (emphasis added). Dr. Loudat also assumed that, if Plaintiff had been named the 2004 Olympic coach, the gross profits of his school in Hawaii would have "increased equivalently" to Han Won Lee's school located in Colorado following the latter's experience as a coach in the Olympics in 2000. Ex. 1 at 6. According to Dr. Loudat, (who testified that he formed this opinion by relying exclusively on Han Won Lee's declaration and tax returns, Ex. 2 at 38:8-11), Han Won Lee's experience as an assistant coach for the 2000 Olympic taekwondo team had "led to measurable financial benefits and

2

enhance[d] professional reputation," Ex. 1 at 5,[3] that would have likewise flowed

to Plaintiff had he been named coach.

**B.     Mr. Candon's Rebuttal to Dr. Loudat**

Mr. Candon was retained by Defendants to examine Dr. Loudat's

report and offer his opinion on that opinion.  Because the entirety of Dr. Loudat's

high-loss scenario was predicated on Mr. Dae Sung Lee's business performing

similarly to Mr. Han Won Lee's business in Colorado, one of the things that

Mr. Candon did was examine the two individuals as well as the two businesses to

determine if they were, in fact, comparable.  First, Mr. Candon stated his opinion

that success in the taekwondo market is largely personality-driven.  Ex. 3 (Expert

Report of John Candon, May 11, 2005) at 12.  Mr. Candon further opined that the

success of the business can be a function of an individual's "strengths and

weaknesses, as well as their relative desire to succeed financially and the choices

that they make in their lives."  *Id.*  Mr. Candon also opined that he had reviewed

evidence that suggested that the management styles of the Plaintiff and Han Won

Lee were markedly different.  Ex. 3 at 13.  For example, while Han Won Lee spent

---

3     Dr. Loudat also stated in his report that Mr. Young In Cheon's experience as
head coach of the Olympic taekwondo team at the 2000 Olympics "led to
measurable financial benefits and enhance[d] professional reputation."  Ex. 1 at 5.
In fact, Young In Cheon withdrew his initial declaration and admitted he went
bankrupt and Plaintiff's counsel represented that Dr. Loudat had not relied on
Young In Cheon's declaration.  It is unclear to what extent Loudat relied upon
Young In Cheon's experience.

aggressively on bill collection and advertising; the Plaintiff's spending on these items was negligible. Mr. Candon also stated that his review of the evidence suggested that revenue at Plaintiff's business had been declining from a high in 1998. Ex. 3 at 14.

Mr. Candon also offered a comparison between the communities of Colorado Springs, Colorado,[4] the area where he believed Han Won Lee's school was located, and Honolulu, Hawaii, where Plaintiff's school is located. The purpose of the comparison was to illustrate that, before simply assuming, as Dr. Loudat did, that a business in one community can be used as a predictor of what could happen to a second business in another community, an expert must first ensure that these two communities are comparable. Ex. 3 at 12-13. As Mr. Candon subsequently testified:

> My point in the report is to show that it's to rely on Han Won Lee's school or any other business as a benchmark for measuring [another] enterprises expected experience, whether it's loss or growth. Those two schools or the businesses have to be very comparable to each other.

> My point in the report was to show that there are differences, not to prove that they are similar, but to show that there are enough differences that Han Won Lee's school is not a good benchmark for measuring Master Dae Sung Lee's experience.

---

4     Mr. Candon used Colorado Springs as the comparison community because that was the address noted on Han Won Lee's tax returns. Ex. 4 (Deposition of John Candon, January 30, 2006) at 20:13-19.

Ex. 4 at 206:19-207:4.

Specifically, Mr. Candon pointed to factors such as median age, discretionary income, income per capita, and growth and decline rates in the number of businesses as factors an expert typically would review when trying to compare businesses in different communities. Ultimately, Mr. Candon concluded that the differences between the communities *as well as* fundamental differences between Han Won Lee and Plaintiff, rendered financial results of Han Won Lee's dojang a poor predictor of the results that would have been achieved by someone else.[5]

Mr. Candon also performed an analysis of Dr. Loudat's low-loss scenario. Ex. 3 at 14-16. The premise of Dr. Loudat's analysis was that if Plaintiff had served as the coach of the 2004 Olympic taekwondo team it would have sufficiently raised his profile that it "would have increased [Dae Sung Lee's earnings] to the mean earnings profile of a 'coach athlete' at the 90th percentile earnings profile." Mr. Candon's analysis ultimately concluded that it appeared that Plaintiff's revenues exceeded those predicted by Dr. Loudat in the low-loss scenario.

---

5    Mr. Candon is also of the opinion that Mr. Loudat's use of the U.S. Treasury Rate is the incorrect discount rate because the earnings stream of a business is not nearly as safe as a risk-free financial instrument. Ex. 3 at 13.

# ARGUMENT

## A.    Mr. Candon Is Competent To Provide Expert Testimony at Trial

According to Plaintiff, simply because Mr. Candon is an "accountant by education, training and experience" he is unqualified to give opinions on economics or market analysis. Plaintiff's Motion *in Limine* to Exclude the Testimony of John Candon at 8.[6] Not surprisingly, Plaintiff offers no authority for this novel proposition – nor could he, as it is an argument devoid of support in the law or the facts. Stated simply, there is no requirement, anywhere, that because Mr. Candon's formal training is as an accountant, he is limited or foreclosed in any way from offering the opinions he has proffered in this case.

In order for a witness to be qualified to offer expert opinions pursuant to Rule 702 and *Daubert that* witness must only be "qualified as an expert by knowledge, skill, experience, training, or education,"[7] Fed. R. Evid. 702. The standard for qualifying expert witnesses is liberal. *Thomas v. Newton Int'l*

---

[6]    Plaintiff also erroneously asserts that because Mr. Candon has failed to publish any sort of articles in reputable business journals, he lacks the reputation or standing within the community to make such opinions. Plaintiff's Motion in Limine at 8. There is no requirement under the law that a predicate to offering opinions on a subject includes publishing articles on the subject.

[7]    Qualification on only one of the listed bases can be sufficient to qualify the expert witness. *Thomas v. Newton Int'l Enterprises, Inc.*, 42 F.3d 1266, 1269 (9th Cir. 1994) (trial court abused discretion in excluding expert testimony concerning safety of conditions on ship during loading at dock on ground that expert lacked qualifications when witness had 29 years of experience as a longshoreman).

*Enterprises, Inc.*, 42 F.3d 1266, 1269 (9th Cir. 1994) (Rule 702 "contemplates a broad conception of expert qualifications").  In considering the competency of a witness, the trial court must only "determine whether a proposed witness's qualifying training or experience, and resultant specialized knowledge, are sufficiently related to the issues and evidence before the trier of fact [so] that the witness's proposed testimony will be of assistance to the trier of fact." 3 Weinstein § 702.04[1][b].  *See United States v. Christophe*, 833 F.2d 1296, 1300 (9th Cir. 1987) (court properly let FBI agent explain based upon experience investigating 800-1000 robberies why latent fingerprints are found in only 10 percent of robbery cases); *United States v. Maher*, 645 F.2d 780, 783-84 (9th Cir. 1981) (no error to allow DEA agent to testify regarding counter-surveillance techniques used in transporting drugs based upon explanation of experience with counter-surveillance techniques).[8]

Applying these criteria, Mr. Candon easily qualifies to offer expert testimony is this case.  Not only is Mr. Candon a Certified Public Accountant, he is Accredited in Business Valuation by the AICPA, is a Certified Business Appraiser,

---

[8]    And contrary to Plaintiff's suggestion, a witnesses' expertise need not be precisely matched to the questions at issue. See Doe v. Cutter Biological, Inc., 971 F.2d 375, 385-86 (9th Cir. 1992) (error to exclude doctors' affidavits about HIV generally in suit against manufacturers of blood clotting agent on ground that testimony was not based on their personal knowledge of the specific facts of the case).

and is a Senior Member of the American Society of Appraisers. More importantly, Mr. Candon possesses the requisite experience to offer the proffered opinions. Mr. Candon formed Candon Consulting Group, LLC in 1991. Candon is a consulting group that provides "business consulting and appraisal services, including a forensic accounting, including lost profits and lost earnings calculations, business valuations for transactions and for dispute resolution." Ex. 4 at 4:14-19. Mr. Candon has well over 20 years of experience performing valuations for businesses and enterprises including lost profits and lost earnings analyses. Ex. 5 (John Candon's Statement of Qualifications). As his resume makes clear, Mr. Candon has previously been qualified as an expert in business valuation, and lost profits and income. *See* Ex. 6 (John Candon's History of Deposition and Trial Testimony).

Indeed, even if the Court's consideration was limited to Mr. Candon's experience as an accountant – which it is not – courts have repeatedly admitted expert testimony regarding business valuations from accountants with experience in that field. *See, e.g.*, *Royal College Shop, Inc. v. Northern Ins. Co.*, 895 F.2d 670, 678-79 (10th Cir. 1990) (relying on expert testimony and analysis of a certified public accountant experienced in the valuation of businesses regarding a damages claim); *Industrial Hard Chrome, Ltd. v. Hetran, Inc.*, 92 F. Supp. 2d 786, 794 (N.D. Ill. 2000) (admitting testimony of accountant who had been experienced

in business valuations to testify regarding damages); *Kitchen Kaboodle II, Inc. v. United States*, 1997 WL 416356, at \*3 (D. Or. May 6, 1997) (admitting expert testimony of accountant who had a history of performing business valuations to render an opinion concerning the valuation of stock in privately-held companies). In sum, there can be no legitimate question that Mr. Candon possesses far more than the minimal level of skill and experience to offer expert opinions in this case.

### B.     Mr. Candon's Opinions Are Reliable[9]

#### 1.     Plaintiff's Motion Does Not Reach the Vast Majority of Mr. Candon's Opinions

As a threshold matter, even if Plaintiff's argument had a scintilla of merit, it would provide no basis for the exclusion of the vast majority of Mr.

---

9     Plaintiff has claimed only that Mr. Candon's opinions fail to satisfy Daubert's reliability prong; aside from a passing suggestion that Mr. Candon's opinions are not helpful, there is no assertion in Plaintiff's motion that the testimony is not relevant.  Mr. Candon's testimony is clearly relevant.  First, testimony is relevant if it concerns matters beyond the understanding of the average person.  See United States v. Rahm, 993 F.2d 1405, 1413 (9th Cir. 1993) ("Our 'proper subject' inquiry has generally focused upon whether the expert testimony improperly addresses matters within the understanding of the average juror.") (internal citations omitted); see, e.g., United States v. Rearden, 349 F.3d 608, 613–14 (9th Cir. 2003) (testimony by expert in creation of visual effects was relevant and helped show that pornographic images transmitted by defendant were of actual children).  Second, testimony is relevant if it relates to an issue in the case.  See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, at 591 (1993) (citing 3 Weinstein § 702[02]; United States v. Downing, 753 F.2d 1224, 1242 (3d Cir. 1985) ("An additional consideration under Rule 702 – and another aspect of relevancy – is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.")).

Candon's opinions in this case. The house of cards upon which all the Plaintiff's exclusion arguments are built is the Plaintiff's incorrect assertion that *all* of the economic comparisons made by Mr. Candon were based on the assumption that Mr. Han Won Lee's school was in Colorado Springs, Colorado. Plaintiff's Motion *in Limine* at 2. Plaintiff argues that Mr. Candon's opinions should be stricken because they are based upon "insufficient and erroneous facts," in the form of a market analysis that used Colorado Springs rather than Castlerock, Plaintiff's Motion *in Limine* at 9, and that his methodology does not satisfy *Daubert*, because of Candon's use of data from Colorado Springs rather than Castlerock. Plaintiff's Motion *in Limine* at 10. In fact, as discussed above and below, the vast majority of the opinions described in Mr. Candon's report are unrelated to the alleged Colorado Springs – Castlerock "distinction" to which Plaintiff attaches so much significance to.

In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) the Court set forth a series of non-exclusive factors a trial court should consider in determining whether an expert's testimony is based on reliable scientific knowledge: (1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential error rate; and (4) whether the theory or technique is generally accepted in the relevant scientific community.

*Daubert*, 509 U.S. at 592–94; *see also Grant v. Bristol-Myers Squibb*, 97

F.Supp. 2d at 986, 988 (D. Ariz. 2000).[10]

   "The factors the Court should consider in deciding how to make th[e

reliability] determination will depend on the *specific nature* of the testimony to be

presented and the facts of the particular case." *DSU Med. Corp. v. JMS Co.*, 296

F.Supp. 2d 1140, 1147 (N.D. Cal. 2003) (emphasis provided); *see, e.g., United*

*States v. Hankey*, 203 F.3d 1160, 1168–90 (9th Cir. 2000) (Trial court properly

admitted police officer's opinions regarding gang's "code of silence" where

reliability of testimony depended heavily on expert's knowledge and experience,

rather than methodology or theory.); *Confederated Tribes of Siletz Indians of*

*Oregon v. Weyerhaeuser Co.*, 2003 WL 23715981 (D. Or. Jan. 21, 2003)

("Extensive personal experience and knowledge of the area in question renders the

expert's opinion admissible, even where the expert lacks quantitative and academic

experience in the field.") (internal quotations omitted).

---

10 In determining the admissibility of non-scientific expert testimony, trial
courts "may consider the Daubert factors in assessing the reliability of the
proffered expert testimony, but they are not limited to those factors in determining
reliability." DSU Med. Corp. v. JMS Co., 296 F.Supp. 2d 1140, 1147 (N.D. Cal.
2003) (citing Kumho Tire, 526 U.S. at 150–51) (explaining that the Daubert factors
were not intended to be exhaustive or applied in every case).

During his deposition, Mr. Candon unequivocally stated that the
entirety of his work was not premised on his belief that Han Won Lee's school was
in Colorado Springs:

> Q     All the work you've done in this report was
> predicated on the fact that you believe Han Won Lee's
> school was in Colorado Springs, is that correct?
>
> A     No.

Ex. 4 at 17:16-19.  Notwithstanding this testimony, Plaintiff continues to assert that
the contrary is true.  However, the length, or lack thereof, of the discussion related
to Colorado Springs in Mr. Candon's report – spanning approximately one-half of a
page of a 16-page report – is instructive, as it is wholly consistent with
Mr. Candon's testimony.

Moreover, even if only Mr. Candon's opinions regarding Dr. Loudat's
high-loss scenario are considered, a substantial portion of those opinions do not
relate in any way to the so-called Colorado Springs – Castlerock "distinction."
These include differences between the personalities of Dae Sung Lee and Hon Won
Lee, differences in management styles of Dae Sung Lee and Han Won Lee,
differences in advertising expenditures, and differences in approaches to bill
collection.  Mr. Candon also offers opinion reflecting disagreements with
Dr. Loudat's choice of a discount rate, and Dr. Loudat's failure to take into account

that Plaintiff's business appears to have declined since 1998, possibly as result of increased competition in his marketplace.

The Ninth Circuit provides particular guidance to district courts in determining admissibility of expert evidence and emphasizes the use of an additional factor in determining the reliability of expert testimony that is applicable here: "One very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) (*Daubert II*). The court goes on to explain the rationale behind this additional reliability factor:

> [E]xperts whose findings flow from existing research are less likely to have been biased toward a particular conclusion by the promise of remuneration . . . . [I]ndependent research carries its own indicia of reliability, as it is conducted, so to speak, in the usual course of business and must normally satisfy a variety of standards to attract funding and institutional support . . . . That the testimony proffered by an expert is based directly on legitimate, preexisting research unrelated to the litigation provides the most persuasive basis for concluding that the opinions he expresses were derived by the [reliable] scientific method.

*Daubert II*, 43 F.3d at 1317 (internal quotations omitted).

Mr. Candon's opinions satisfy the Ninth Circuit's additional test for reliability because they are unquestionably the product of over 20 years of doing work in the real world, performing precisely the types of analysis that he opines Dr. Loudat should have done here. Mr. Candon's practices in "the usual course of business" are reflected in his opinions regarding Dr. Loudat's high and low loss scenario as well as Mr. Candon's expectation that in order to properly calculate the economic damages that Plaintiff or his business may have suffered, Dr. Loudat should have considered a:

> Study and analysis of the subject interest, including: past transactions, obligations, rights, any agreements restricting transferability or otherwise affecting value, and marketability. It also would require consideration of the subject's financial condition and operating results (including historical operating results); assets; liabilities; book value; the liquidation value of the subject interest's assets; and the economic and industry outlook. The analyst should also review the history and management of the subject interest, the nature of the business, factors affecting it and its prospects for the future. Consideration of published market data and other available public information relating to the subject and its industry, including: relevant historical trends; current performance indicators; and the outlook as of the analysis date for the economy and capital markets and other relevant factors that would be important.

Ex. 3 at at 15. Mr. Candon opined that Dr. Loudat appeared to have performed little or none of this work.

### 2.    The So-Called Distinction Between Colorado Springs and Castlerock Is a Distinction Without a Difference

At its most basic, Plaintiff's attack on the opinion of Mr. Candon, despite its being cloaked in the language of *Daubert*, appears to reveal a fundamental misunderstanding of Mr. Candon's opinions in this case.  Although much is made of what Mr. Candon purportedly knows or does not know about the location of Han Won Lee's school, Mr. Candon does not offer, and has never purported to offer an alternative damages calculation to the flawed opinion of Dr. Loudat.  Nor does Mr. Candon purport to perform a "but for" analysis of the economic performance of the Plaintiff's school.  Mr. Candon offers an opinion, not on what he himself did, but on what Dr. Loudat should have done.

Mr. Candon's opinion is that an essential prerequisite to stating that one economic actor in a particular market would achieve identical results to an another economic actor in a separate market is to first ensure that the two actors are susceptible to an apple-to-apple comparison, and that the two markets represent an orange-to-orange comparison.  According to Dr. Loudat, in performing a comparison of the businesses, there would be no need to ensure that the businesses are comparable.  Ex. 2 at 62:8-17.  On this essential point, the experts disagree – Dr. Loudat took negligible steps to compare actors and markets.[11]  Setting aside

---

11    Dr. Loudat acknowledged that (1) he knew nothing about the competition Han Won Lee faced or the number of competitors in Colorado, Ex. 2 at 60:5-13,

that Mr. Candon's opinions have grown naturally and directly out of work Mr.
Candon has conducted independent of litigation, this battle of the experts is no
basis for the exclusion of Mr. Candon's opinion.[12]

Furthermore, while it is true that Mr. Candon looked at Colorado
Springs as representing the general economy of that metropolitan area, the fact that
Han Won Lee's school is located in Castlerock does not make any part of
Mr. Candon's opinions inadmissible.  Mr. Candon testified (1) that he looked at
Colorado Springs as representing the general economy of that area, which would
include Castlerock and the other cities and towns surrounding it, Ex. 4 at 43:14-17;
(2) differences between Colorado Springs and Castlerock do not have meaningful
impact on his conclusions, Ex. 4 at 24:8-15; and, (3) that even if he had originally
correctly identified the school as being in Castlerock he still would have used
Colorado Springs in his analysis.  Ex. 4 at 171:1-6.

---

(2) had no idea about how many athletes from the training center helped at his
business, Ex. 2 61:3-6, and (3) had not compared the facilities.  Ex. 2 at 61:7-11.

12    Plaintiff has previously asserted that Dr. Loudat's assertion that Han Won
Lee's school and Plaintiff's school are comparable is reliable despite Plaintiff's
testimony as to the differences between Hawaii and the mainland and between
Hawaii and Colorado, and the absence of a meaningful analysis comparing schools
in Colorado and Hawaii.  In the next breath, Plaintiff argues that when Mr. Candon
states that the Honolulu and Colorado Springs areas are very different, that
evidence should be excluded because Castlerock is a smaller suburb in Colorado,
but outside Colorado Springs.

In the face of Mr. Candon's expert opinions, Plaintiff only offers argument suggesting a disagreement with Mr. Candon's opinion. However, in evaluating the reliability of expert testimony, the trial court is limited to a consideration of principles and methodology, and may not weigh the witness' conclusions. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146–47 (1997); *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1228 (9th Cir. 1998) (The *Daubert* rule focuses on the "principles and methodology underlying the expert's testimony, not on the conclusion."); *see, e.g., Sullivan v. United States Dep't of Navy*, 365 F.3d 827, 833–34 (9th Cir. 2004) (in medical malpractice case, trial judge committed reversible error in relying on defendant's expert opinions regarding disputed issues of material fact in order to exclude Plaintiff's medical expert testimony).

Plaintiff further argues that Mr. Candon's opinions should be stricken in their entirety because "he did not do a thorough analysis of the factors which he felt were important," because according to Plaintiff he "could not even give basic information for market comparison purposes." Plaintiff's Motion *in Limine* at 11. In other words, Plaintiff seeks to exclude Mr. Candon's testimony because Plaintiff's counsel did not like the expert's answers.[13] Once again, this is not a

---

13    Plaintiff's misleading characterization of Mr. Candon's deposition cannot serve as any basis for the exclusion of testimony. Illustrative is Plaintiff's suggestion that when Mr. Candon was asked to give examples of how Han Won Lee was more aggressive he could only provide two. Plaintiff's Motion in Limine at 5 ("However, at his oral deposition, Mr. Candon was asked for examples and he

valid attack on methodology but an impermissible attack on the merits of Mr.

Candon's opinions. *See Hemmings v. Tidyman's, Inc.*, 285 F.3d 1174, 1188 (9th

Cir. 2002) ("[I]n most cases, objections to the inadequacies of a study are more

appropriately considered an objection going to the weight of the evidence rather

than its admissibility."); *Wilmington v. J.I. Case Co.*, 793 F.2d 909, 920 (8th Cir.

1986) (explaining that inadequacies in expert's testimony can be brought out

through cross-examination and go to the weight of the expert's testimony rather

than to its admissibility). In sum, Plaintiff's arguments go to the weight to be

assigned the evidence and not to its admissibility.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Exclude the testimony

of Defendants' Expert John Candon should be denied.

DATED:  Honolulu, Hawaii, March 21, 2006

DAVID M. LOUIE
APRIL LURIA
Attorneys for Defendants United States
Olympic Committee and United States
Taekwondo Union

---

gave two"). In fact, Mr. Candon provided just two examples of Han Won Lee
taking steps to build his business, because Plaintiff expressly asked that he only
provide two examples! Ex. 4 at 29:4-17 ("We'll, we'll, we'll get to that, but give
me just two, for example.") (emphasis added).