```
 1              IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF HAWAII
 2            CIVIL ACTION NO. 04-00461-SOM-LEK

 3   ─────────────────────────────────────────────────

     DEPOSITION OF JILL J. CHALMERS, ESQUIRE
 4   EXAMINATION DATE:  Friday, April 8, 2005

 5   ─────────────────────────────────────────────────

     DAE SUNG LEE,
 6
     Plaintiff,
 7
     v.
 8
     UNITED STATES TAEKWONDO UNION,
 9   a Colorado nonprofit corporation, et al.,

10   Defendants.

11   ─────────────────────────────────────────────────

12           PURSUANT TO SUBPOENA, the deposition of JILL
     J. CHALMERS, ESQUIRE, was taken at 8:11 a.m. on Friday,
13   April 8, 2005, at the Double Tree Hotel at 1775 E.
     Cheyenne Mountain Boulevard, Colorado Springs,
14   Colorado, before Valorie S. Mueller, Registered
     Professional Reporter and Notary Public in and for the
15   State of Colorado, said deposition being taken pursuant
     to the Federal Rules of Civil Procedure.
16

17

18
                        Valorie S. Mueller
19              Registered Professional Reporter

20

21

22

23                        EXHIBIT "A"

24

25
```

DEPOSITION OF JILL CHALMERS, ESQUIRE                                      4/8/2005
DAE SUNG LEE v. UNITED STATES TAEKWONDO UNION, et al.

Page 8

1   PROCEEDINGS
2   JILL J. CHALMERS, ESQUIRE
3   The deponent herein, being first duly
4   sworn to testify to the truth in the above cause, was
5   examined and testified on her oath as follows:
6   EXAMINATION
7   BY MR. JONES:
8   Q   Would you please state your name and
9   business address for the record, please?
10  A   Jill J. Chalmers. I'm at Holme Roberts &
11  Owen, 90 South Cascade, Suite 1300, Colorado Springs,
12  80913.
13  MR. RYCHENER: And if I could just state,
14  now that we're on the record, that Holme Roberts & Owen
15  has produced, in response to your subpoena, documents
16  this morning which we've Bates stamped HRO-1 through
17  HRO-251.
18  MR. JONES: And are those documents
19  responsive to the subpoena?
20  MR. RYCHENER: Yes.
21  Q   (BY MR. JONES) Ms. Chalmers, what is your
22  occupation?
23  A   I'm an attorney.
24  Q   Are you licensed in the state of Colorado?
25  A   Yes.

Page 9

1   Q   Have you ever taken a deposition before?
2   A   Never.
3   MR. LEVINSTEIN: Taken or given?
4   MR. JONES: Taken.
5   Q   (BY MR. JONES) Given the fact that you
6   haven't taken one before, I'll briefly run through the
7   ground rules to avoid problems as we proceed along.
8   As your attorney might have told you, a
9   deposition is basically an interview. It is an
10  under-oath interview, so it is important that we get a
11  clear record. The purpose of the deposition is
12  primarily for use in court.
13  If this matter goes to trial and you are not
14  able to testify in Hawaii where the action is pending,
15  the deposition could be read directly to the jury in
16  place of your live testimony. You understand that?
17  A   Yes.
18  Q   I will try and make myself clear, but if I
19  do not in my questioning, please say, I don't
20  understand the question, could you please rephrase it
21  or re-ask it, and I'll be happy to do so.
22  Nobody wants you to guess. We're just asking
23  for your best answers based upon personal knowledge
24  today.
25  A   Okay.

Page 10

1   Q   If you do go ahead and respond to
2   questions, we'll all assume that you understand the
3   question and are responding fully and truthfully. Is
4   that fair?
5   A   That's fine.
6   Q   We will take breaks every 45 minutes or
7   so, but if for any reason you want to take a break,
8   just ask for one, and we'll go off the record.
9   A   Okay.
10  MR. LEVINSTEIN: For the record, I just
11  want to say that taking the deposition of a lawyer of
12  the defendant is a very unusual thing. It raises all
13  sorts of concerns about attorney work product and
14  privilege. We are going to go very slowly so we can
15  make sure we identify those issues. Ms. Chalmers has
16  her own counsel here.
17  And, in general, our view is if there are
18  events at which there are other people available to
19  testify, in general it is not appropriate to take the
20  deposition of Ms. Chalmers about things that counsel
21  has special knowledge.
22  In fact, the questions you're going to
23  ask, we have the view are all privileged, given the
24  limited allowance the judge made at the hearing on that
25  document to come in. We have not challenged that she

Page 11

1   will be questioned about certain limited subjects. But
2   we're making no waiver by allowing her to be here
3   today.
4   MR. JONES: Understood.
5   Q   (BY MR. JONES) Where are you employed,
6   Ms. Chalmers?
7   A   At Holme Roberts & Owen.
8   Q   That is a law firm?
9   A   That's correct.
10  Q   And where is it located?
11  A   We have many offices, but I work in
12  Colorado Springs.
13  Q   How long have you been with that firm?
14  A   Since 2000.
15  Q   Do you have an area that you specialize
16  in?
17  A   I have a few areas I specialize in. They
18  include representation of nonprofit organizations. I
19  also have a subspecialty in intellectual property.
20  Q   In your position at Holme Roberts, has
21  your firm ever represented the United States Taekwondo
22  Union?
23  A   Yes, we did represent the United States
24  Taekwondo Union.
25  Q   Roughly during what period has it or did

8 (Pages 8 to 11)

DEPOSITION OF JILL CHALMERS, ESQUIRE                                          4/8/2005
DAE SUNG LEE v. UNITED STATES TAEKWONDO UNION, et al.

Page 12

1  it represent United States Taekwondo Union?
2    A    To my knowledge, I know that we
3  represented USTU at least from 2002. And I know we
4  withdrew representation at some time and continued
5  representation recently again.
6    Q    I saw some documentation in the documents
7  that were just furnished that suggests you might have
8  withdrawn around October 2003, something like that.
9  Does that sound about right?
10    A    That sounds correct.
11    Q    I'm not going to hold you to that date,
12  but I just noticed one letter.
13         What was the scope of your representation
14  during 2002 through 2003, if you can recall, of USTU?
15         MR. LEVINSTEIN: Objection; calls for
16  privilege.
17    Q    (BY MR. JONES) During 2002 and 2003, did
18  you represent USTU in a decertification action brought
19  by the United States Olympic Committee against it?
20         MR. LEVINSTEIN: Objection. You can
21  answer.
22    A    Yes.
23    Q    (BY MR. JONES) Just to clarify, does the
24  USTU still exist under that name?
25    A    No. USTU was merged out of existence due

Page 13

1  to a reincorporation in Colorado.
2    Q    Did that happen recently?
3    A    Yes. That happened in November of last
4  year.
5    Q    What is the new name, which I assume is
6  public record?
7    A    The new name is USA Taekwondo.
8    Q    Is it correct that the decertification
9  action brought by the USOC against USTU during 2003 was
10  settled at some point?
11    A    To my knowledge, it was settled.
12    Q    When the settlement took place, was --
13  well, was your representation terminated before the
14  actual final settlement was agreed upon?
15    A    Yes.
16    Q    Did other counsel take over in your place?
17    A    Yes.
18    Q    What was the name of that counsel?
19    A    I believe his name is Richard Tagmeyer.
20    Q    I'd like to show you an exhibit, if I
21  could, marked as exhibit -- previously marked as
22  Exhibit 4.
23         MR. LEVINSTEIN: Thanks again.
24    Q    (BY MR. JONES) Have you had a chance to
25  skim through Exhibit 4?

Page 14

1    A    Yes, I've skimmed it.
2    Q    Have you seen that document before?
3    A    Yes, I have.
4    Q    Is that a letter from Thomas Satrom,
5  Chairman of the USOC Membership and Credentials
6  Committee, to Bruce Harris, Executive Director of the
7  U.S. Taekwondo Union, dated August 4, 2003?
8    A    That's what it appears to be.
9    Q    When did you first see this document?
10    A    I don't know an exact date, but generally
11  in early fall of 2003.
12    Q    Would it be roughly around the time it was
13  sent out to Bruce Harris, if you know?
14    A    I don't know. I don't think we were
15  retained immediately upon its sending.
16    Q    The letter contains a list of problems,
17  does it not, that the USOC apparently perceived that
18  the USTU had?
19         MR. LEVINSTEIN: Objection. Contrary to
20  the document. Speaking on behalf of the Membership and
21  Credentials Committee, not the USOC.
22    A    The letter appears to list a number of
23  problems or concerns.
24    Q    (BY MR. JONES) Concerns of the Membership
25  and Credentials Committee of the USOC?

Page 15

1    A    That's my understanding, yes.
2    Q    And correct me if I'm wrong, but one of
3  the listed problems, they state, is an allegiance to
4  Korea to the detriment of U.S. programs and the
5  interest of U.S. athletes?
6    A    Yes, that's listed as No. 5.
7    Q    Did you understand about the time your
8  firm was retained to handle the decertification action
9  against USTU that a substantial number of Korean
10  Americans held management positions with USTU?
11    A    Can you repeat the question again? Sorry.
12    Q    Did you understand or learn that at the
13  time you were retained and began work for USTU that a
14  substantial number of Korean Americans were in
15  management or appointed positions for USTU?
16    A    My understanding was that there were a
17  number of Korean Americans in governance positions,
18  which are different, in my mind, than management
19  positions.
20    Q    Fair enough. And was it a substantial
21  number?
22         MR. LEVINSTEIN: Objection.
23    A    That was my understanding. I guess,
24  substantial, I'm not sure. But in a regular
25  organization that I deal with, yes, it seemed to be

9 (Pages 12 to 15)

DEPOSITION OF JILL CHALMERS, ESQUIRE                                4/8/2005
DAE SUNG LEE v. UNITED STATES TAEKWONDO UNION, et al.

Page 52

1  tell you.
2      Q   (BY MR. JONES) The second attachment is a
3  press release?
4          MR. RYCHENER: I would also note -- I
5  would object on lack of foundation. I would also note
6  that all of these attachments are dated after Holme
7  Roberts & Owen withdrew from representation.
8      A   It looks to me like a press release.
9      Q   (BY MR. JONES) Given the date on the
10 third -- well, on all of these exhibits, do you happen
11 to know why they're in your file?
12     A   We keep correspondence relating to clients
13 in our files.
14         MR. LEVINSTEIN: Her file or Steven
15 Smith's files? These were all together, so . . .
16     Q   (BY MR. JONES) Just to understand, Steven
17 Smith's and your files have been merged?
18     A   That's correct. We keep one set of client
19 files.
20     Q   Okay. So he might have gotten this after
21 you were no longer involved with the case?
22     A   That's my best understanding.
23         MR. LEVINSTEIN: For the record, he got
24 it after both of them were no longer involved in the
25 case.

Page 53

1          MR. JONES: Right. Understood.
2          MR. UESUGI: Should we take a break?
3  We've been going about an hour and a half.
4          MR. JONES: Good idea.
5          (Recess taken from 9:43 a.m. to 9:52
6          a.m.)
7          (Deposition Exhibit No. 111 was marked
8          for identification.)
9      Q   (BY MR. JONES) What is Exhibit 111?
10     A   This looks like an e-mail from Steve Smith
11 to Gary Johansen in response to an e-mail from Gary to
12 Steve.
13     Q   Gary was apparently advising of the
14 resignations of Mark Bryant, Juan Moreno, and Waugh &
15 Associates?
16     A   That's correct.
17         (Deposition Exhibit No. 112 was marked
18         for identification.)
19     Q   (BY MR. JONES) Exhibit 112, what is that?
20     A   It is a letter that was sent by fax to us
21 from Waugh & Associates, and the letter is to the
22 president of USTU, Sang Lee, at the time from Ken Waugh
23 informing USTU of Waugh & Associates resignation as
24 their accountant.
25     Q   Do you happen to know why Waugh &

Page 54

1  Associates resigned?
2      A   No.
3          (Deposition Exhibit No. 113 was marked
4          for identification.)
5      Q   (BY MR. JONES) What is that document,
6  Exhibit 113?
7      A   It's an e-mail from Gary Johansen to Steve
8  Smith containing a draft press release from the USOC, a
9  draft letter to Bruce Harris from Kelly Skinner, a
10 draft letter to Bruce Harris from Jim Scherr, and a
11 draft remediation plan.
12     Q   This one is dated October 30, 2003?
13     A   That's correct.
14     Q   Were you still representing USTU on
15 October 30th, 2003?
16         MR. LEVINSTEIN: Why don't you look at
17 the next document?
18         MR. JONES: I know.
19     A   I believe so. I can't recall the date of
20 our resignation.
21         MR. JONES: Let me mark the next one.
22         (Deposition Exhibit No. 114 was marked
23         for identification.)
24     A   No. At that time, we were no longer
25 representing USTU.

Page 55

1      Q   (BY MR. JONES) Just like a day after,
2  right?
3      A   That's correct.
4      Q   Why did Holme and Roberts withdraw from
5  representation on October 29, 2003, if you know?
6          MR. LEVINSTEIN: Objection; calls for
7  attorney-client privileged communication.
8          MR. RYCHENER: Same objection.
9          MR. JONES: Instructing her not to
10 answer?
11         MR. RYCHENER: That's correct, to the
12 extent it calls for attorney-client communications. I
13 think the letter indicates, to some extent. But beyond
14 the letter, I think I will instruct her not to answer.
15     Q   (BY MR. JONES) Was Holme Roberts also
16 representing USOC in any matters during this period, if
17 you know?
18     A   I don't believe so, but I don't know for
19 certain.
20     Q   Do you know if it had in the past?
21     A   I believe it had in the past.
22     Q   It had represented USOC in the past?
23     A   I believe so, but I don't know for
24 certain.
25     Q   Going back to Exhibit 113, these

19 (Pages 52 to 55)

Valorie S. Mueller, RPR                                              303-681-9939
VSM REPORTING, LLC    P.O. BOX 186    LARKSPUR, CO  80118-0186       vsmreporting.com