# ORIGINAL

MICHAEL J. GREEN    4451-0
345 Queen Street, 2nd Floor
Honolulu, Hawaii 96813
Telephone: (808) 521-3336
Facsimile: (808) 566-0347
E-mail:  michaeljgreen@hawaii.rr.com

BERVAR & JONES
Attorneys at Law
A Law Partnership

WARD D. JONES 2958-0
BERVAR & JONES
1400 Pauahi Tower
1001 Bishop Street
Honolulu, Hawaii 96813
Telephone: (808) 550-4990
Facsimile: (808) 550-4991
E-mail:  wdj@bervar-jones.com

GLENN H. UESUGI    4865-0
345 Queen Street, 2nd Floor
Honolulu, Hawaii 96813
Telephone: (808) 521-3336
Facsimile: (808) 566-0347
E-mail:  glenn.uesugi@gmail.com

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 2 1 2006

at 3 o'clock and 40 min. PM
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DAE SUNG LEE, | ) | Civil No. 04-00461 SOM LEK |
| | ) | |
| Plaintiff, | ) | **PLAINTIFF DAE SUNG LEE'S** |
| | ) | **TRIAL BRIEF; CERTIFICATE** |
| | ) | **OF SERVICE** |
| UNITED STATES TAEKWONDO | ) | |

1

UNION, a Colorado nonprofit )
Corporation, UNITED STATES )
OLYMPIC COMMITTEE, a federally )
charged nonprofit corporation, JOHN )
DOES 1-10; JANE DOES 1-10; )
DOE PARTNERSHIPS 1-10; DOE )
CORPORATIONS 1-10, )
                                                            )
                          Defendants. )     Trial Date:  April 4, 2006
                                                            )     Judge:  Hon. Susan O. Mollway
_____ )

## PLAINTIFF DAE SUNG LEE'S TRIAL BRIEF

Now comes PLAINTIFF Dae Sung Lee ( PLAINTIFF) , by and

through  his attorneys, Ward D. Jones and Glenn H. Uesugi, and hereby files this

TRIAL BRIEF

### I.     STATEMENT OF THE CASE.

This action concerns the wrongfully terminated coach of the 2004

United States Olympic Taekwondo Team, Plaintiff Dae Sung Lee (hereinafter

'Lee') .  Plaintiff Lee alleges that he was removed as coach of the 2004 United

States Olympic Taekwondo Team for racist reasons.

Plaintiff Lee was originally selected as the 2004 Olympic Taekwondo

Coach in 2003 by Defendant United States Taekwondo Union (hereinafter

'USTU') , said selection being approved and ratified by Defendant United States

Olympic Committee (hereinafter 'USOC') in that same year.

In the fall of 2003, Defendant USOC's Board of Directors adopted a resolution to revoke Defendants USTU and USOC's membership for alleged financial and other reasons. An agreement was reached between Defendants USOC and USTU on or about January 27, 2004, in which the USOC agreed to remediate the USTU into compliance which included removal of all of the Korean Americans in executive positions and replaced by a non-Korean governing body and chief executive officer.

In April 2004, Defendant USTU notified Plaintiff Lee that his appointment as the 2004 United States Olympic Taekwondo Coach had been revoked.

Plaintiff Lee filed suit in federal court, claiming among other things, that he was discriminated against on the basis of race and/or national origin in violation of 42 U.S.C. Section 1981 in that Defendants USOC and/or USTU breached his contract for employment as coach of the 2004 United States Olympic Taekwondo Team for racial reasons.

II.     **BECAUSE LEE WAS REMOVED AS COACH FOR RACIAL REASONS, DEFENDANTS ARE LIABLE FOR VIOLATION OF 42 USC 1981.**

A.    Plaintiff Has Established a Prima Facie Case under Section
      1981 for Racial Discrimination.

It is provided by 42 U.S.C.A. 1981 that all persons within the

jurisdiction of the United States have the same right in every state and territory to

make and enforce contracts, to sue, be parties, and give evidence and to the full

and equal benefit of all laws and proceedings for the security of persons and

property as is enjoyed by white citizens, and are subject to like punishment, pains,

penalties, taxes, licenses and exactions of every kind, and to no other.   The

prohibitions of the statute encompass both governmental and private action.

General Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 102 S.Ct.

3141, 73 L.Ed.2d 835 (1982).   The essential elements necessary to transform an

agreement into a legally enforceable contract include, among other things,

competent parties, a subject matter, legal consideration, mutuality of agreement,

and mutuality of obligation.   The element of mutuality of agreement, or mutual

assent, frequently has been referred to in the law as a 'meeting of the minds' of the

parties to the contract or agreement.   To create a contract, then, the minds of the

parties must meet as to every essential term of the proposed contract, and there

must be a clear and unequivocal acceptance of a certain and definite offer in order

that a mere agreement may become a contract.   Therefore, it is necessary, among

other things that the minds of the parties meet as to the essential terms of the

proposed contract. <u>Joseph v. Donover Co.</u> 261 F.2d 812, (9th Cir. 1959). To be

enforceable under Hawaii law, a contract must be certain and definite as to its

essential terms. <u>Hi-Pac, Ltd. v. Avoset Corp.,</u> 26 F.Supp.2d 1230 (D. Hawaii

1997). Terms of a contract are certain and definite if they provide basis for

determining the existence of a breach and for giving the appropriate remedy. Id.

A sufficient and legal consideration is an essential element to a valid contract.

<u>Epp. v. Epp,</u> 905 P.2d 54, 80 Hawaii 79 (Haw. App. 1995). Mutual reciprocal

promises constitute good and sufficient consideration for contract. <u>Guaschino v.

Eucalyptus, Inc.,</u> 658 P.2d 888, 3 Haw. App. 632(Haw. App. 1983). All contracts

are, in absence of evidence to the contrary, presumed to be based on sufficient and

legal consideration. <u>In re Assessment of Taxes, H. Hackfeld & Co.,</u> 16 Haw. 584

(1905). For purposes of 42 U.S.C.A. 1981, the phrase 'make and enforce

contracts' includes the making, performance, modification, and termination of

contracts, and the enjoyment of benefits, privileges, terms, and conditions of the

contractual relationship. 42 U.S.C.A. 1981(b). The decisions of other circuits that

the first three elements of the <u>McDonnell Douglas</u> test are easily adapted to claims

arising under section 1981 outside of an employment context. So adapted, the

first three elements require claimants to show that: (1) it is a member of a protected

class, (2) it attempted to contract for certain services, and (3) it was denied the

right to contract for those services. See <u>Christian v. Wal-Mart Stores, Inc.,</u> 252

F.3d 862, 872 (6th Cir.2001); Bratton v. Roadway Package Sys., Inc., 77 F.3d 168,

176 (7th Cir.1996); Lindsey v. SLT Los Angeles, LLC, 432 F.3d 954,959 (9th

Cir.2005).   In order to establish a violation of 42 U.S.C.A. 1981 the plaintiff must

present sufficient evidence to enable a reasonable jury to concluded that the

defendant's action was motivated by racial considerations, Smith v. Firestone Tire

and Rubber Co., 875 F.2d 1325 (7th Cir. 1989); that is, the plaintiff has the initial

burden of establishing the prima facie case by proving that he was discriminated

against because of race. Naraine v. Western Elec. Co., Inc., 507 F.2d 590 (8th Cir.

1974).   Proof of discriminatory intent ordinarily requires a sensitive inquiry into

the circumstantial and direct evidence of intent as may be available, since an

admission of such intent is unlikely.  Hoard v. Teletype Corp., 450 F. Supp 1059

(E.D.Ark. 1978).   Circumstantial and direct evidence may include impact of the

action, a historical background of discrimination, the specific sequence of events

leading up to the challenged action, departures from normal procedural sequence,

substantive departures, and individual instances of discrimination.   Harkness v.

Sweeny Independent School Dist. of Sweeny Tex.,  554 F.2d 1353 (5th Cir. 1977)

on rem. jmt. aff'd, 608 F.2d 594 (5th Cir. 1979).   Statistically disparate racial

treatment may be evidence of racial discrimination.   EEOC v. Pacific Southwest

Airlines, 587 F.Supp. 686 (N.D.Cal. 1984).   When employment decisions are

delegated to a committee and members of that committee have allegedly engaged

in discriminatory treatment, the organization is liable. Lam v. University of

Hawaii, 40 F.3d 1551, 1561 (9th Cir. 1994).

        1.     Plaintiff Belongs to a Protected Class.

As an ethnic Korean person, born in Korea, it is without a doubt that

Plaintiff Dae Sung Lee is a member of a racial minority that is within the definition

of a protected class for purposes of the McDonnell Douglas framework. Persons

of the Korean race are a minority, not only in Hawaii, but in the entire United

States, and are entitled to be treated the same as a hite person for purposes of

Section 1981. One can state a cognizable 1981 claim if he can allege

discrimination based on any of a number of ethnicities, including: German, Italian,

Spanish, Russian, and Arab, to name just a few. Donaire v. NME Hosp., Inc., 27

F.3d 507, 509 (11th Cir. 1994).

        2.     Plaintiff was Qualified to be an Olympic Taekwondo Coach.

There is also no doubt that Plaintiff Dae Sung Lee was qualified to

serve as the United States Taekwondo Coach at the 2004 Olympic Games. As the

court noted in its decision Lee v. U.S. Taekwondo Union, 331 F.Supp.2d 1252,

1262-63 (D. Haw. 2004), Plaintiff was a highly successful Taekwondo athlete who

won a gold medal in the 1987 Pan American Games and was a Taekwondo

National Champion from 1979 through 1987. Plaintiff was also a highly

successful US Taekwondo National Team coach since 1989. Plaintiff's success

included coaching two US National Team members to gold medals at the 2003 Pan American Games. One of those athletes was Steven Lopez, a member of the 2004 US Olympic Taekwondo Team.

In October 2003, Plaintiff was told by USTU Executive Director Bruce Harris that he was approved by the USOC as the 2004 US Olympic Team head coach for Taekwondo. Id. at 1263. The process involved a nomination by the USTU Coaching Science Committee, approval by the majority of USTU Executive Committee, and finally approval by the USOC. Id.

> 3. Plaintiff was wrongfully terminated from his position as Olympic Coach by Defendants for Racist Reasons.
>
>> a. USTU Executive Director Robert Gambardella and the USOC want to get rid of all of the Koreans in the USTU.

According to Mary Brunner, a Life Member of the USTU and a certified Taekwondo International Referee, Mr. Robert Gambardella and the USTU Governance and Management Committee are racially biased against Koreans and Korean Americans and are attempting to get rid of all Koreans and Korean Americans from the USTU. According to Ms. Brunner, she had a conversation with Mr. Gambardella at the 2004 US Open Taekwondo Championships held in February 2004. This was soon after the USOC took over the USTU for remediation purposes and Mr. Gambardella was the newly appointed USTU

Executive Director.   The conversation between Ms. Brunner and Mr. Gambardella lasted two hours.

Ms. Brunner testifies that during the course of the conversation, she inquired as to why Ms. Barbara Wakefield was appointed the USTU Interim Referee Chair and why someone who had more support in the Taekwondo referee community, including racial minorities such as Korean Americans was not selected.   This was a concern for Ms. Brunner because of the fact that Korean Americans have the higher referee certifications due to their Taekwondo seniority and have the experience necessary to properly direct and/or officiate at Taekwondo National, Regional and International competitions.

According to Ms. Brunner, USTU Executive Director Robert Gambardella replied idon  want any more Koreans involved at all, they are all crooks.   When Ms. Brunner replied ust because a few got caught doing something doesn  mean you can exclude them all.   Mr. Gambardella responded  that all of them are crooks as far as I  am concerned.

When asked at his oral deposition if he made such statements or any statements substantially similar to such comments above, Mr. Gambardella claimed that he couldn  remember.   Defendants therefore have no way of refuting the testimony of Ms. Mary Brunner.

Former USTU Executive Director Bruce Harris relates a similar comment coming from Ms. Barbara Wakefield.   According to Mr. Harris, Mr. Robert Gambardella told USTU Interim Referee Chair Barbara Wakefield that he didn't  want Korean referees officiating at USTU events.   The net effect of this discouragement by Mr. Gambardella according to Barbara Wakefield is that Korean referees do not apply for referee positions because they do not feel they are welcome to participate anymore.  While the mix of Korean American referees to American referees used to be 50/50 or 60/40, it is now 95% American born Non-Korean referees.

b.  <u>Mr. Gambardella is Carrying Out the Racist Agenda of the USOC to Get Rid of All the Koreans</u>.

This attitude of racism towards Koreans and Korean Americans is consistent with the comments made by Mr. Thomas Satrom of the USOC Membership and Credentials Committee in 2003.   In his August 4, 2003 letter to the USTU, Mr. Satrom cited a number of problems and issues concerning the USTU and its leadership. Among the problems noted were:

An allegiance to Korea to the detriment of U.S. programs and the interests of U.S. athletes.

An adherence to the [Korea] Kukkiwon certification process and a failure to develop a U.S. Dan Certification program.

Questionable use of funds (such as. . . chartering aircraft to deliver medals from Korea).

(See Thomas Satrom  August 4, 2003 letter.)

Mr. Satrom followed up with the second letter on September 5, 2003

making the following accusations and charges:

It has been reported that USTU chartered an airplane to deliver medals from Korea for the 2003 USTU Junior Olympic Taekwondo Championships. Please explain why medals were ordered from Korea

Please provide a detailed summary of the Kukkiwan program [which is based in Korea]. The Committee would like a complete understanding of this program

How does the USTU respond to the perception that the USTU is governed by cultural values emanating from Korea, which may not be in harmony with American values. The perception seems to be that loyalty to one instructor or superior is all important, that  espect means subservience, and that competitions are often based on  olitical determinations  not on who is the best athlete on the mat. As an individual stated to the Committee,  l]ong ago I realized the USTU leadership could never be held accountable. For the most part, they did not understand our American culture of sport, nor embrace its underlying values of un-biased officiating, a level playing field, and fair play. As another individual stated to the Committee,  orean culture places a higher value on loyalty to one family, friends, school, etc. than it does no honesty and fair play. The result is that the best man usually doesn win, but the favorite son does. As a third individual stated,  he  orean good  l boy system of promotions, certifications, and selections of  ho attends what has got to go.
(See Thomas Satrom letter dated September 5, 2003.)

Other people in leadership positions within the USOC have also expressed racial hatred and animosity towards Koreans and Korean Americans. One such person is Ms. Jeannie Picariello, another member of the USOC Membership and Credentials Committee. According to Ms. Jill Chalmers, an attorney for the USTU, stated that during a meeting in October 2003, several members of the M&C Committee had referred to the USTU as a Korea Mafia-run organization. She further specified that Jeannie Picariello, a member of that committee, was one of the more vocal persons using the racially derogatory language. This conversation between Sang Chul Lee, Bruce Harris, USTU AAC Chair Sammy Pejo with Jill Chalmers, Steve Smith and Richard Young which took place on October 8, 2003 was documented by Mr. Bruce Harris in a memo dated October 9, 2003. (See memorandum of Bruce Harris dated October 9, 2003, in evidence as Ex. 6). At the same USOC meeting, and in the presence of Virginia Witte and Tom Baggiano, Chalmers also heard Picariello demand that the athletes at USTU 'cut the bowing crap'- a reference to the Asian custom of bowing to one another as a formal polite greeting and the same custom being used between teacher and student in martial arts environments as a show of respect.

While technically hearsay, the substance of the conversation is admissible under Rule 404(b) of the <u>Federal Rules of Evidence</u>, which states that

evidence of other crimes, wrongs, acts is admissible to show proof of motive,

opportunity, intent, preparation or plan.   These comments by the USOC go

directly to the proposition that the USOC saw the USTU as being run by Koreans,

that Koreans are undesirable, and therefore all of the Koreans in the USTU must be

driven out.   Mr. Robert Gambardella, an on loan employee of the USOC, was

selected to carry out this racist agenda of the USOC.   The plan was not only to get

rid of Plaintiff Dae Sung Lee because he is Korean, but all other Koreans in the

USTU, the USOC  National Governing Body for the Korean Martial Art and Sport

of Taekwondo.

   Defendants attempt to distinguish the comments made by Mr. Satrom

and Ms. Picariello, saying that said comments go to a person's  national origin and

not to a person's  race and therefore the comments cannot be considered for

Section 1981 purposes because Section 1981 only concerns race discrimination.

   The Ninth Circuit disagrees with Defendants position.   In Pavon v.

Swift Transp. Co. Inc., 192 F.3d 902, 908 (9th Cir. 1999), the Ninth Circuit held

that to establish a claim under Section 1981, the plaintiff must prove he was

subjected to intentional discrimination based on his race and not *solely* on the basis

of the place or nation of their origin.

   In his concurring opinion in Saint Francis College v. Al-Khazraji, 481

U.S. 604, 614, 107 S.Ct. 2022, 95 L.Ed2d 582 (1987), Justice Brennan noted that

the line between discrimination based on ancestry or ethnic characteristics and discrimination based on place or nation of origin is not a bright one. Often, the two are identical as a factual matter: one was born in the nation whose primary stock is one own ethnic group.   Moreover, national claims have been treated as ancestry or ethnicity claims in some circumstances. Id.   The situation described by Justice Brennan is applicable to the present case, since Plaintiff comes from Korea, a country in which he was born in a nation whose primary stock is the Korean ethnic group.   In the present case, race and national origin are the same thing, at least as far as Plaintiff Dae Sung Lee  situation is concerned.

   c.  <u>USTU Executive Director Robert Gambardella and USOC Sports Partnerships Director Kelly Skinner Specifically Reworked the Coach Selection Criteria to Exclude Koreans</u>.

Even before the USOC assumed control of the USTU in late January 2004, the USOC and its USOC Sports Partnerships Director for Taekwondo began working on new Taekwondo coaching selection criteria for the 2004 Olympic Games. In the minutes of the very first USTU Governance and Management Committee ( MC  meeting (made up of USOC members), it is noted that eligibility requirements are being rewritten by the USOC and the earlier appointments may have to be rescinded as soon as those new requirements are clarified by the USOC. (See USTU GMC Minutes for February 5, 2004 meeting.)   The removal of Korean

born Plaintiff Dae Sung Lee and his Olympic Coaching position was one of the first orders of business for the new committee.

On March 8, 2004, USTU Executive Director Robert Gambardella and USTU GMC Chair Steven Locke wrote a memorandum to the USOC requesting that the USOC vacate its nomination of Plaintiff Dae Sung Lee as Olympic Coach under the new selection procedures are approved.   Among the reasons given was that because the US only qualified two Taekwondo athletes, only one credential could be given and that credential must go to someone who can serve both as Team Leader and Coach.  (See memorandum from Robert Gambardella and Steven Locke to USOC dated March 8, 2004.)

The new selection procedures were also submitted to the USOC at the same time as the March 8, 2004 memorandum.   However, the coaching criteria did not mention anything with regard to Team Leader experience but simply based the selection process on the number of athletes a coach has placed on the 2004 Olympic Team and in the alternative, the competition records athletes placed on the 2004 Olympic Team, with priority consideration given to results from the 2003 World Championships and 2003 Pan American Games. (See submitted Olympic Coach selection criteria.)

At his oral deposition, Mr. Kelly Skinner testified that that he and Mr. Robert Gambardella worked on the new Coaching Selection criteria. Neither Mr. Gambardella nor Mr. Skinner had any background in Taekwondo.

Mr. Skinner testified that he got the new criteria from Weightlifting criteria. According to Mr. Skinner, the Weightlifting Olympic Coach number one criteria would be the selection of the OTC Resident Athlete Coach for Weightlifting. Second criteria would be to place the coach who had the most athletes on the 2004 Olympic Weightlifting Team.

Mr. Gambardella and Mr. Skinner found themselves in a dilemma. The second part of the selection process could be used to exclude Plaintiff Dae Sung Lee, because they already knew that Plaintiff did not have any direct home athletes who were in contention for the 2004 Olympic Team.   The USTU would know who were the home coaches because on the US Olympic Team selection tournament applications, the athlete would name who their home coach was.

If they used the Weightlifting Olympic Coach criteria in their entirety, then the first choice for the 2004 Olympic Taekwondo coach would be Mr. Chul Ho Kim, since he was the OTC Resident Coach for Taekwondo and the Taekwondo national coach. Mr. Chul Ho Kim is another Korean born that the USOC and USTU were trying to remove.

Mr. Gambardella and Mr. Skinner therefore came up with a solution that would exclude both Dae Sung Lee and Chul Ho Kim. They would adopt the second criteria of placing athletes on the team (this excluding Plaintiff Dae Sung Lee) but not adopt the Weightlifting criteria that says the OTC Resident Athlete National Coach gets first priority (thus excluding Mr. Chul Ho Kim). This fits with the USOC plan carried out by Mr. Gambardella to get rid of all the Koreans in the USTU.

> d.  <u>Jean Lopez was Treated More Favorably than Plaintiff because the New Selection Criteria Were Tailored Specifically So That Jean Lopez Would be Selected as the Olympic Taekwondo Coach</u>.

In addition to the above stated tailoring of the Olympic Coach selection criteria to exclude Koreans for racist reasons, there would be no requirement that the selected coach be able to double as the Team Leader, even though this was the stated rationale in rescinding the original coaching selection process back on March 8, 2004. The reason is that if Team Leader experience were required for the Olympic coach, Mr. Jean Lopez would not qualify because he had no Team Leader or Team Manager experience at the International Event level. In fact, the person who did have such experience is Plaintiff, who served as Team Manager for the US National Taekwondo Team at the 2000 World Cup Taekwondo Championships and 2001 World Taekwondo Championships. (See

Document entitled Coaching Candidates for USA Taekwondo produced by Defendants.)   In order to get rid of all of the Koreans, including Plaintiff Dae Sung Lee, this requirement needed to be left out, and it was by Mr. Gambardella and Mr. Skinner.

Mr. Jean Lopez was given additional special treatment in that he was pre-selected by the USTU GMC for the US Olympic Taekwondo Coach position back in March 25, 2004.   Mr. Lopez was given this special treatment even though Plaintiff was still coach, no new coach criteria were approved and the new coach could not be determined under the new criteria until the final trials were held in June 2004. At the March 25, 2004 USTU GMC meeting, the GMC ratified the appointment of Jean Lopez as the Olympic Coach since USTU has only one coach credential.  (See Minutes of GMC Meeting held on March 25, 2004.)

On June 9, 2004, the USTU GMC did submit a mail ballot to its members for the Olympic Coach position. Only Mr. Jean Lopez name was on the ballot. (See mail ballot dated June 9, 2004.) The GMC members were instructed to return the ballot by June 23, 2004, but this vote was in form only, since the Committee had already voted to select Mr. Jean Lopez as the Olympic Coach back in March 2004, three months prior. This is unacceptable and discriminatory behavior and only highlights the motive of the USOC and USTU, which was to get rid of all the Koreans. As far as the Olympic Coach position was concerned,

18

Defendants apparently succeeded in their scheme, by having Mr. Jean Lopez selected as the coach instead of either of the two Koreans, Plaintiff Dae Sung Lee or OTC Resident Coach Chul Ho Kim.

4. <u>Defendants' Articulated Reasons For Terminating Plaintiff Olympic Coach Status Are Unpersuasive as to the Legitimacy of Defendants Discriminatory Conduct.</u>

Once Plaintiff succeeds in establishing a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision.

Defendants state that the USTU had financial irregularities regarding funding provided by the USOC, and for this reason, a remediation plan was set up whereby the USOC would assume temporary responsibility for the USTU. This, according to Defendants, somehow justifies removing Plaintiff from the position as 2004 Olympic Coach for Taekwondo. However, the selection of the Olympic Coach is not a financial decision, and therefore, whatever financial issues or problems the USTU had could not be adequate justification for removal of Plaintiff. The financial issues of the USTU cannot serve as a legitimate reason to terminate Plaintiff's position as Coach or to rework the coaching selection criteria to specifically exclude Plaintiff and other Koreans from the selection process. Defendants have not met their burden in this regard.

5.    <u>Defendants Illegitimate Discriminatory Reasons for
Terminating Plaintiff  Olympic Coach Status was a Pretext for
Racist Behavior</u>.

Finally, if the defendant can articulate some legitimate, non-

discriminatory reason for the allegedly discriminatory conduct, then the Plaintiff

must be given a full and fair opportunity to demonstrate by competent evidence

that the reasons articulated by the defendants are in fact a pretext or a coverup for

its discriminatory decision. The inquiry is twofold: Plaintiff can prove pretext by:

(1) indirectly by showing that the employer  proffered explanation is unworthy of

credence because it is internally inconsistent or otherwise not believable, or (2)

directly, by showing that unlawful discrimination more likely motivated the

employer.  <u>Raad v. Fairbanks North Star Borough School District</u>, 323 F.3d 1185,

1194 (9th Cir. 2003).

In evaluating whether the defendant  articulated reason is pretextual,

the trier of fact must consider the same evidence that the plaintiff introduced to

established his prima facie case. <u>Cordova v. State Farm Ins. Companies</u>, 124 F.3d

1145, 1149-50 (9th Cir. 1997).   It is improper for a Court to ignore the evidence in

support of the prima facie case when considering the issue of pretext.   <u>Stegall v.

Citadel Broadcasting</u>, 350 F.3d 1061, 1068-69 (9th Cir. 2003).

The jury should consider the arguments, points and authorities cited in

the prima facie section in determining whether Defendants proffered explanation

was pre-textual. In particular the testimony of Ms. Mary Brunner with regard to her conversation with Mr. Robert Gambardella is most revealing in determining Defendants intent to racially discriminate against Koreans within the USTU. Such intention by Defendant is not limited to Plaintiff who is a Korean, but extends to all Koreans in the USTU in all positions.

A plaintiff within a protected class might be able to prove pretext by showing that the employer promoted members of other racial classifications who lacked some of the job qualifications upon which the employer relied.   Lesane v. Hawaiian Airlines, 75 F.Supp.2d 1113, 1123 (D.Haw. 1999).

As already stated, Mr. Jean Lopez, the gentleman selected to coach the 2004 US Olympic Taekwondo Team, did not have any experience in Team Leader or Team Manager duties, unlike Plaintiff Dae Sung Lee. This is an important point because the original letter submitted by Defendant USTU requested the vacation of Plaintiff  Olympic Coach status because there was only one credential for Taekwondo and the coach had to be someone who could fulfill both the Coach and Team Leader positions. Mr. Jean Lopez was pre-selected by the USOC and USTU excluding Plaintiff for wrongful discriminatory reasons.

The new Olympic Coach criteria are also suspect in that neither USTU Executive Director Robert Gambardella nor USOC Sport Performance Director Kelly Skinner had any experience at all in Taekwondo. Neither had

practiced Taekwondo, competed or coached in any Taekwondo tournaments.   And yet, these two gentlemen were the chief architects of the new coaching criteria.

Neither Mr. Gambardella nor Mr. Skinner bothered to investigate their proffered theory half-borrowed from wrestling in which the home coach would be selected to insure the best chance of insuring a gold medal performance.   Plaintiff Dae Sung Lee testifies in his declaration that at the 1988, 1992, or 2000 Olympic Games, no Taekwondo competitor who won a gold medal had done so with their home coach sitting in their coaching chair at competition.   (See Declaration of Dae Sung Lee). In fact, in the two instances where the home coach did sit in the chair of his home athlete, both lost their first or second match, finishing without a medal. At the 2000 Olympic Games, US Coach Han Won Lee placed two of his athletes on the US Olympic Taekwondo Team, Male Flyweight Juan Moreno and Female Welterweight Barbara Kunkel. Both lost either their first or second matches, and finished without winning an Olympic medal at the 2004 Olympic Games.   (See Declaration of Dae Sung Lee.)

Mr. Robert Gambardella testified at his oral deposition that he did not investigate the past medal performance of Olympic Taekwondo competitors and how they did at the Olympic with their home coach. Mr. Gambardella also failed to investigate the correlation (or lack of correlation in this case) between an athlete

having their home coach sitting in their chair at the Olympics. (See oral deposition transcript of Robert Gambardella at pages 217-19).

Mr. Kelly Skinner at his oral deposition stated that such an investigation into past gold medal performances and home coaches was irrelevant for his purposes. He simply did not care about how home Taekwondo coaches affected a competitor medal performance. (See oral deposition transcript of Kelly Skinner at page 119.)  From Plaintiff's perspective, such an attitude of irrelevance makes sense only within the context of Gambardella stated goal of getting rid of all of the Koreans in the USTU.

The above evidence is expected to show that Plaintiff was indeed discriminated against by Defendants when they effectuated their scheme to get rid of all the Koreans from the Korean Martial Art and Sport of Taekwondo in the United States Olympic Committee  National Governing Body for Taekwondo.

6.    Plaintiff Has Produced Direct And/Or Circumstantial Evidence Demonstrating Defendants Were Motivated by Discriminatory Racist Intent.

The Supreme Court also recently brought much needed clarity to this area of law when it affirmed the Ninth Circuit en banc opinion in Costa v. District Palace, 299 F.3d 838 (9th Cir. 2002) aff 539 U.S. 90, 123 S.Ct. 2148,  156 L.Ed.2d 84 (2003). See also McGinest v. GTE Service Corp., 360 F.3d 1103, 1122 (9th Cir. 2004).  In Costa, the Supreme Court held that circumstantial and direct evidence

should be treated alike, noting: circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. <u>Costa</u>, 123 S.Ct at 2154; <u>McGinest</u>, 360 F.3d at 1122.

The Ninth Circuit established through the <u>Costa</u> decision that although the <u>McDonnell Douglas</u> burden shifting framework is a useful tool to assist plaintiffs at the summary judgment stage so that they may reach trial, nothing compels the parties to invoke the <u>McDonnell Douglas</u> presumption. <u>Costa</u>, 299 F.3d at 855; <u>McGinest</u>, 360 F.3d at 1122. Rather, when responding to a summary judgment motion, the plaintiff is presented with a choice regarding how to establish his or her case. Plaintiff may proceed by using the <u>McDonnell Douglas</u> framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated Defendants.   <u>Costa</u>, 299 F.3d at 855; <u>McGinest</u>, 360 F.3d at 1122.

The above arguments and authorities cited under the <u>McDonnell Douglas</u> section of this Memorandum in Opposition presented by Plaintiff substantially proves that Defendants were motivated by a discriminatory reason in terminating Plaintiff Olympic Coach status.   The motivation of Defendants, as stated by USOC on loan employee Robert Gambardella, was to get rid of all the Koreans because they are all crooks. Defendants have clearly violated Plaintiff rights in this regard when they terminated his Olympic Coach position simply

because he was of Korean ancestry.    Plaintiff asks that this court hold that issues
of fact exist with respect to Defendants intent to discriminate against Plaintiff
suitable for the jury to resolve at trial.

> 7.    Defendants Continue to Discriminate Against Koreans In the USTU.

The admission of long term harassment of racial minorities in an
organization is admissible to show a persistent pattern of racial hostility. Lam v.
University of Hawaii, 40 F.3d 1551, 1562 (9th Cir. 1994). In Lam, defendants
argued that certain acts and comments were inadmissible because it concerned acts
and comments that were too remote in time or too attenuated from plaintiff
situation. The Ninth Circuit rejected such arguments and held that evidence of long
term harassment of other members of Plaintiff  racial minority by members of
defendant  organization was admissible because such evidence demonstrated a
persistent pattern of racial hostility. Id.

Plaintiff has already discussed how Defendants discriminated against
OTC Resident Coach and US Taekwondo National Coach Chul Ho Kim in
preventing him from participating as an Olympic Coach at the 2004 Olympic
Games.   Mr. Gambardella and Mr. Skinner both relied on the weightlifting criteria
to select coaches, with the first preference going to the National Coach residing at
the Olympic Training Center in Colorado Springs.   If Defendants had adopted the

weightlifting criteria in their entirety, then Mr. Chul Ho Kim would have been considered for the 2004 Olympic Coaching position.

However, that was not the only incident of mistreatment of Korean born OTC Coach Chul Ho Kim. Early on in February 2004, the GMC and Mr. Bob Gambardella decided to close the OTC program, in spite of it being the most successful athlete the USTU ever had.   Almost every elite competitor that the USTU has produced over the last twenty years has spent time as a resident athlete at OTC.   Nia Abdallah, the second member of the 2004 Olympic Taekwondo Team, was a current resident athlete at OTC in 2004.  (See Declaration of Dae Sung Lee.)

At the Olympic Games in Athens, Plaintiff sat with Mr. Chul Ho Kim in the stands during the Taekwondo competition.  Mr. Kim later found out that Mr. Gambardella was upset with Mr. Kim for sitting with Plaintiff at the Olympic Games.   At least two people, Mr. Jean Lopez and Mr. Herbert Perez, told Mr. Kim that Mr. Gambardella saw Mr. Kim sitting with Plaintiff and was upset.  (See oral deposition transcript of Chul Ho Kim at page 38-410.)

Soon after the 2004 Olympic Games were completed, Mr. Kim returned to OTC to find that the locks to his office were changed and that he could not gain access to the OTC cafeteria. (See oral deposition transcript of Chul Ho Kim at pages 43-44).   Soon thereafter, Mr. Kim was notified by Mr. Gambardella

26

that his position was terminated. (See letter from Robert Gambardella to Chul Ho Kim dated September 8, 2004). When Mr. Chul Ho Kim went to speak to Mr. Gambardella about his position, Mr. Gambardella fired Mr. Kim and told him to go back to Korea. Mr. Kim was very upset with the comments made by Mr. Gambardella to the point where he felt racially discriminated against by Mr. Gambardella. (See oral deposition transcript of Chul Ho Kim at page 56.)

The pattern of intentional racism, as exhibited not only to coaches such as Plaintiff and former OTC Coach Chul Ho Kim but also to administrators, officers and referees is without argument. Korean participation in USTU events has dropped significantly, in part due to the hostile working environment faced by Koreans and Korean Americans created by Mr. Gambardella, the USTU and the USOC.

  8. <u>'Mixed Motives' In Removal is not a Defense.</u>

  We apply the mixed-motives analysis of <u>Price Waterhouse v. Hopkins,</u> 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), to a claim of racial discrimination based on direct evidence. Under <u>Price Waterhouse</u>, once the plaintiff persuades a fact finder that, more likely than not, discrimination was "a motivating part in an employment decision," 490 U.S. at 258, 109 S.Ct. 1775, the burden shifts to the employer to prove that the employment decision would nevertheless have been made for legitimate, non-discriminatory reasons. Id.; Beshears v. Asbill, 930 F.2d 1348, 1353 (8th Cir.1991). An employer cannot

escape responsibility under Title VII for discrimination, when the facts relied on by the reviewers responsible for the termination decision have been filtered by a manager determined to purge the labor force of a protected class. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq. <u>Yates v. Douglas</u>, 255 F.3d 546

## III.    LEE IS ENTITLED TO DAMAGES FOR HUMILIATION, EMBARASSMENT AND ECONOMIC INJURIES.

Evidence regarding Lee's compensation from his Taekwondo school is relevant to the damages Lee personally suffered because of the alleged § 1981 violation. Lee is prepared to present evidence that his personal earnings were tied to the school's revenue.   This is not the typical case in which an employee's salary or wages do not vary if the employer has a good or a bad year.

The Ninth Circuit's decision in <u>Gomez v. Alexian Brothers Hospital of San Jose</u>, 698 F.2d 1019 (9th Cir.1983), is instructive. In Gomez, a Hispanic plaintiff sued a hospital under Title VII, § 1981, and § 1985(3). Id. at 1020. The plaintiff had put together a proposal to run the emergency room at a hospital using a company called American Emergency Services Professional Corporation Medical Group ("AES").  Although hospital representatives allegedly told him that he had the best proposal, the contract was awarded to another physician group, allegedly because the plaintiff had proposed to staff the hospital with "too many brown faces." <u>Id</u>.  The district court granted summary judgment to the hospital on

28

the § 1981 and § 1985(s) claims, holding that "it was AES, not [the] plaintiff individually, which sought the contract and which was injured by defendants' alleged discriminatory conduct." Id.    In relevant part, the Ninth Circuit reversed summary judgment in favor of the hospital on Gomez's § 1981 claim.    After noting that the "same discriminatory conduct can result in both corporate and individual injuries," the Ninth Circuit reasoned that the plaintiff's alleged deprivation of employment, humiliation, and embarrassment were injuries suffered by the plaintiff, not just by AES. Id. at 1021.

In the second to the last paragraph of Gomez, and in the context of the plaintiff's Title VII claim, the Ninth Circuit stated that the plaintiff was "entitled to have his Title VII claim tried on the merits." Id.    In the final paragraph of the opinion, the Ninth Circuit then said that the "same [was] true of plaintiff's claim under §§ 1981 and 1985(3)," id. at 1022, indicating that the plaintiff had a right to a trial on the merits of those claims because he might have been personally injured for purposes of § 1981 and § 1985(3).  Like the individual plaintiff in Gomez, Lee can recover damages he personally suffered as a result of Defendants' alleged violation of § 1981. Evidence regarding Lee's compensation from his Taekwondo school is relevant to those damages.    Lee v. U.S. Taekwondo Union, et al, 2006 WL 278692, *3 (D.Hawai'i 2006). Damages from emotional distress may be

inferred from the circumstances. <u>Johnson v. Hale,</u> 940 F.2d 1192 (9th Cir. 1991).

No evidence of economic loss or medical evidence of mental or physical

symptoms stemming from the humiliation need be submitted. Seaton v. Sky Realty

Co., 491 F.2d 634, 636 (7th Cir.1974).  For example in <u>Hale,</u> the district court

found that the Hales had overtly discriminated against Johnson and Walker by

refusing to allow them to rent or inspect the advertised rental units because they

were African-American.   Both plaintiffs provided detailed and substantial

testimony to support their claims that they suffered emotional distress as a result of

the Hales' discriminatory acts.   Each testified that he was acutely upset by the

incident and that it adversely affected his relationships with white people. Johnson

and his white girlfriend testified that the incident made Johnson suspect that both

his girlfriend and her parents were racist and made him self-conscious around other

white people.  Walker, too, testified that he began to suspect his white friends of

racism.  The Ninth Circuit held that the district court's refusal to award

compensatory damages for emotional distress was clear error given the testimony.

## IV.  PLAINTIFF MAY BE ENTITLED TO PUNITIVE DAMAGES.

Jury can award punitive damages only if it find that defendant's

conduct was malicious, or in reckless disregard of the plaintiff's rights. Conduct is

malicious if it is accompanied by ill will, or spite, or if it is for the purpose of

injuring another.  Conduct is in reckless disregard of the plaintiff's rights if, under

the circumstances, it reflects complete indifference to the plaintiff's safety, rights,

or the defendant acts in the face of a perceived risk that its actions will violate the

plaintiff's rights under federal law.   Model Civ. Jury Instr. 9th Cir. 7.5 (2004);

Dang v. Cross, 422 F.3d 800, *807 (9th Cir. 2005).

Actual malice is unnecessary to support award of punitive damages in

racial discrimination cases and it need only be shown that defendant has acted with

such conscious and deliberate disregard of consequences of his actions to others

that his conduct is wanton. Phiffer v. Proud Parrot Motor Hotel Inc., 648 F.2d 548

(C.A.9.Cal.,1980).

Plaintiff hereby certifies that this brief complies with Local Rule

7.5(a),

Dated at Honolulu, Hawaii:  March 21, 2006.

_____

MICHAEL GREEN
WARD D. JONES
GLENN H. UESUGI
Attorneys for Plaintiff Dae Sung Lee

31

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DAE SUNG LEE, | ) | Civil No. 04-00461-SOM LEK |
| | ) | |
| Plaintiff, | ) | CERTIFICATE OF SERVICE |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES TAEKWONDO | ) | |
| UNION, a Colorado nonprofit | ) | |
| Corporation, UNITED STATES | ) | |
| OLYMPIC COMMITTEE, a | ) | |
| federally chartered nonprofit | ) | |
| corporation, JOHN DOES 1-10; | ) | |
| JANE DOES 1-10; DOE | ) | |
| PARTNERSHIPS 1-10; DOE | ) | |
| CORPORATIONS 1-10; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## CERTIFICATE OF SERVICE

THE UNDERSIGNED HEREBY CERTIFIES that the foregoing ducument

was duly served via upon the following:

DAVID M. LOUIE, ESQ.                    HAND DELIVERY
APRIL LURIA, ESQ.
Roeca, Louie & Hiraoka
841 Bishop Street, Suite 900
Honolulu, Hawaii  96813

MARK S. LEVINSTEIN, ESQ.      VIA FACSIMILE
ROBERT L. MOORE, ESQ.
Williams & Connolly LLP
725 12th Street, N.W.
Washington, D.C.  20005

Attorneys for Defendants
UNITED STATES TAEKWONDO UNION and
UNITED STATES OLYMPIC COMMITTEE

DATED: Honolulu, Hawaii, March 21, 2006.

MICHAEL J. GREEN
WARD D. JONES
GLENN H. UESUGI
Attorneys for Plaintiff Dae Sung Lee