ROECA LOUIE & HIRAOKA

David M. Louie (2162-0)
Email:  dlouie@rlhlaw.com
April Luria (4687-0)
Email:  aluria@rlhlaw.com
900 Davies Pacific Center
841 Bishop Street
Honolulu, HI  96813-3917
Telephone:  (808) 538-7500
Facsimile:   (808) 521-9648

WILLIAMS & CONNOLLY LLP

Mark S. Levinstein
Email:  mlevinstein@wc.com
William J. Bachman
Email:  wbachman@wc.com
Robert L. Moore
Email:  rlmoore@wc.com
Patrick J. Houlihan
Email:  phoulihan@wc.com
725 Twelfth Street, N.W.
Washington, D.C.  20005
Telephone:  (202) 434-5000
Facsimile:   (202) 434-5029

Attorneys for Defendants
United States Taekwondo Union and
United States Olympic Committee

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | | |
|---|---|---|
| DAE SUNG LEE, | ) | Civil No. 04—00461 SOM LEK |
| | ) | |
| Plaintiff, | ) | **DEFENDANTS UNITED STATES** |
| | ) | **TAEKWONDO UNION AND** |
| v. | ) | **UNITED STATES OLYMPIC** |

| | | |
|---|---|---|
| UNITED STATES TAEKWONDO UNION, a Colorado nonprofit Corporation, UNITED STATES OLYMPIC COMMITTEE, a federally chartered nonprofit corporation; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10,

                    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **COMMITTEE'S REPLY IN SUPPORT OF THEIR MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATING TO STATEMENTS ALLEGEDLY MADE BY JEANNIE PICARIELLO REFERRING TO THE UNITED STATES TAEKWONDO UNION AS "A KOREAN MAFIA-RUN ORGANIZATION"; DECLARATION OF APRIL A. LURIA [AND EXHIBITS "1" – "5" ATTACHED THERETO]; CERTIFICATE OF SERVICE.**

Hearing Date: April 13, 2006
Time: 9:00 a.m.
The Honorable Susan Oki Mollway

Trial Date: May 17, 2006 |

## DEFENDANTS UNITED STATES TAEKWONDO UNION AND UNITED STATES OLYMPIC COMMITTEE'S REPLY IN SUPPORT OF THEIR MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATING TO STATEMENTS ALLEGEDLY MADE BY JEANNIE PICARIELLO REFERRING TO THE UNITED STATES TAEKWONDO UNION AS "A KOREAN MAFIA-RUN ORGANIZATION"

Plaintiff argues that evidence of statements attributed to Jeannie Picariello and other members of the United States Olympic Committee's ("USOC") Membership and Credentials Committee ("M&C Committee") allegedly made at a meeting of the M&C Committee on September 12-13, 2003, and then purportedly repeated by attorney Jill Chalmers, are admissible as non-hearsay because both levels of hearsay are statements by a party's agent or servant

2

under Rule 801(d)(2)(D).  Plaintiff further argues that the statements are relevant

and not unfairly prejudicial.  The Court should exclude any alleged statements by

members of the M&C Committee purportedly repeated by Jill Chalmers because

Chalmers' statements are not admissions.  In addition, the statements of members

of the M&C Committee are inadmissible because they are irrelevant to ascertaining

the intent or motive behind the United States Taekwondo Union ("USTU")

Governance and Management Committee's decision to change the coach selection

criteria and are likely to both confuse the jurors and unfairly prejudice the

Defendants.

## ARGUMENT

### I.    Alleged Statements by Members of the M&C Committee Are Irrelevant to the USTU's Motivation for Changing Coach Selection Criteria.

Plaintiff's claim that certain statements by members of the M&C

Committee – who had no responsibility or influence in coach selection – are

relevant to questions related to coach selection is premised on a house-of-cards

built upon a foundation of incorrect facts and illogical conclusions.  According to

Plaintiff, Bruce Harris, a former Executive Director of the USTU, claims that

Ms. Chalmers told him that she had heard certain unnamed members of the M&C

Committee refer to the USTU as a "Korean mafia-run organization."  Ex. 1

3

(Deposition of Bruce Harris) at 43:2-44:7.[1] However, the relevance problem exists because neither the M&C Committee nor any of its members had any say over the USTU's change to objective selection criteria or the coach selection that is at issue in this case. Ex. 2 (Memo from Robert Gambardella and Steve Locke to USOC Executive Committee, March 8, 2004).

Evidence is only relevant and admissible if it has a "tendency to make the existence of fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed. R. Evid. 401. Plaintiff attempts to supply the missing link in the relevancy chain by manufacturing out of whole cloth a connection between the M&C Committee and the USTU's Governance & Management Committee (which was solely responsible for coach selection). Plaintiff begins with the incorrect assertion that the USOC's former General Counsel Jeffrey Benz was a member of the M&C Committee "at the time" the statements were allegedly made and that Mr. Benz then allegedly helped select Robert Gambardella and other members of the USTU's Governance and Management Committee. According to Plaintiff, this somehow renders relevant statements allegedly made by an individual member of the M&C Committee. Moreover, Plaintiff claims that these facts refute Defendants'

---

[1]      Ms. Chalmers testified in her deposition that she never heard any statement to that effect by Ms. Picariello or any other committee member and that she never told Mr. Harris that she had. Ex. 3 (Deposition of Jill Chalmers) at 25:6-25:15.

suggestion that the M&C Committee did not have decision-making authority, "since their actions and the actions of its members at the time, played a significant role in the removal of plaintiff as the Olympic coach for taekwondo." Opp. at 4-5.[2]

The fatal flaw in Plaintiff's tortured logic is that its factual premise is not true. Not only was Mr. Benz not a member of the M&C Committee at this time, but there is no evidence in the record that the actions of members of the M&C Committee played any role, let alone a "significant role," in coach selection.[3] Although Plaintiff does not allege that Mr. Benz made any of the statements that Defendants seek to exclude, Plaintiff wishfully suggests that Mr. Benz's membership on the M&C Committee and participation in selection of USTU management somehow establishes the M&C Committee's involvement in coach selection. Setting aside that it is not true, even assuming Mr. Benz had been on the M&C Committee at the time, Plaintiff provides no explanation of the alleged nexus between these two otherwise unrelated events.

---

[2]    In addition to claiming that Mr. Benz was a member of the M&C Committee during remediation negotiations with the USTU, Plaintiff incorrectly asserts that Mr. Benz "was subsequently promoted to USOC General Counsel." Mr. Benz was the USOC General Counsel starting in 2001, years before the remediation plan was negotiated. Ex. 4 (USOC M&C Committee Minutes, April 17, 2002) (showing Jeff Benz, USOC General Counsel, attending via conference call).

[3]    The minutes from the September 12th meeting lists attendees but do not mention Mr. Benz. Ex. 5.

Ultimately, Plaintiff's attempt to establish relevance fails because he cannot establish any link between Jeannie Picariello and other members of the M&C Committee and a decision made months later by the USTU Governance & Management Committee to switch to performance-based objective coach selection criteria.[4] In truth, Plaintiff fails to make a connection because no such connection exists. The absence of such a connection dooms any claim of relevance. *See DeHorney v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 879 F.2d 459 (9th Cir. 1989) (holding that to establish a claim of discrimination, there must be sufficient nexus between the alleged discriminatory remarks and the adverse employment decision); *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir. 1990) (holding stray remarks by *non-decisionmakers* are insufficient to prove discrimination); *McGinest v. GTE Servs. Corp.*, 360 F.3d 1103, 1138 (9th Cir. 2004) (noting "Ninth Circuit cases involving [discrimination] have always involved evidence of discrimination *among decisionmakers*"); *but see Mangold v. Cal. Pub. Util. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995) (admitting evidence of discriminatory remarks when made by "senior decision-makers" "during the scope of employment").

Plaintiff never asserts, nor could he, that the M&C Committee members were decisionmakers in the only area where it matters – USTU coach

---

[4]     Plaintiff attempts to manufacture a case for relevancy by comparing this evidence to two letters written by Thomas Satrom of the M&C Committee to the USTU, which Defendants have not moved to exclude.

selection.  Therefore, evidence of any statements allegedly made by M&C

Committee members is wholly irrelevant.  Because Plaintiff's relevancy argument

hinges on a set of facts and suppositions devoid of support in the record, claims of

relevance predicated upon it should be rejected by the Court.[5]

## II.    The Statements Should Be Excluded Under Rule 403 As Substantially More Unfairly Prejudicial and Confusing than Probative.

Plaintiff does not contest that the evidence is unfairly prejudicial nor

could he.  Evidence that certain individuals with no connection to coach selection

allegedly used phrases like "Korean mafia" is unfairly prejudicial precisely

because it is evidence that "appeals to the jury's sympathies, arouses its sense of

horror, provokes its instinct to punish, or otherwise may cause a jury to base its

decision on something other than the established propositions in the case." *United

States v. Skillman*, 922 F.2d 1370, 1374 (9th Cir. 1990) (internal quotations

omitted) (citing 1 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 403[03], at

403-36 to 403-39 (1989)).

Rather, Plaintiff asserts that the unfair prejudice and confusion to the

jury inherent in admitting this particular evidence can be cured with a simple jury

---

[5]    Plaintiff, in a continued effort to misstate the facts to support his arguments, alleges that Ms. Chalmers claimed that the USOC's M&C Committee was "running amuck."  Ms. Chalmers was asked by Plaintiff's counsel at her deposition whether she made this statement, and she denied having said it: "Those are not my words . . . [a]nd I'm not even sure what running amuck means."  Ex. 3 (Chalmers) at 33:16-34:10.

instruction. But any appropriate jury instruction that might be given only highlights the lack of relevance. For example, perhaps the jury could be instructed that "neither the M&C Committee nor the alleged declarant[s] had any involvement with the conduct you are being asked to evaluate." Given the mental gymnastics that such instructions require, it is not surprising that courts recognize that jury instructions at the close of evidence rarely alleviate the potential for unfair prejudice where the evidence has a strong emotional impact. *See United States v. Layton*, 767 F.2d 549, 556 (9th Cir. 1985); *see also Krulewitch v. United States*, 336 U.S. 440, 453 (1949) (Jackson, J., concurring) ("The naive assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction.").

## III.  The Alleged Statements Are Not Admissions By an Agent or Servant Under 801(d)(2)(D).

Plaintiff asserts that because Ms. Chalmers' law firm has at different times represented both of the Defendants, she was "an agent or representative of both organizations," Opp. at 6, and therefore her statements meet the hearsay exception for an admission by a party opponent. However, a statement of an alleged agent is only non-hearsay when offered against a party-opponent when the statement concerns "*a matter within the scope of the agency or employment, made during the existence of the relationship*" (emphasis added). Fed. R. Evid. 801(d)(2)(D).

8

Stated simply, there is no evidence that Ms. Chalmers was acting as an agent of the USOC when she allegedly made her statements. Indeed, Plaintiff asserts only that a letter from Ms. Chalmers' law firm, Holme Roberts & Owen LLP stating that it was withdrawing as counsel to the USTU due to the escalation of the disagreement between the USTU and USOC is evidence of a relationship between the law firm and the USOC. Although the letter makes no mention of a professional or ethical conflict of interest, Plaintiff nonetheless asserts, without any evidentiary basis, that "conflicts with their other client [the USOC]" was the reason that Holme Roberts & Owen withdrew.

Arguments of Plaintiff's counsel are not a substitute for facts, and there is no basis to assert the existence of any conflict or to conclude that Ms. Chalmers' purported statements were within the scope of any relationship with the USOC or made during the existence of a relationship with the USOC. The fact that Holme Roberts & Owen may have previously represented the USOC has no bearing on the issue of whether Ms. Chalmers' alleged statements could have been made on behalf of the USOC.

Tellingly, Plaintiff is silent as to whether the statements should be excluded because they lack trustworthiness. Where alleged statements by attorneys lack trustworthiness or proper foundation, they should not be considered admissions under Rule 801(d). *In re Applin*, 108 B.R. 253, 259 (Bankr. E.D. Cal.

9

1989) (holding statement by an attorney is not admissible as statement by agent

under Rule 801(d)(2) because "[i]t is not sufficiently trustworthy to prompt the

court to allow it to be introduced into evidence"). These alleged statements lack

the requisite trustworthiness because Ms. Chalmers denies ever making the

statement attributed to her by Mr. Harris and denies ever hearing the statements

allegedly made by members of the M&C Committee in her presence. Ex. 3

(Chalmers) at 25:6-25:15.[6]

Finally, even assuming that the Court concludes that Ms. Chalmers'

statements were those of an "agent," these statements should still be excluded as

privileged communications between an attorney and her client, USTU.[7] It is

axiomatic that Mr. Harris, as a former employee of the USTU, cannot waive the

---

[6]    Plaintiff attempts to gloss over the trustworthiness problem by erroneously suggesting "[t]he fact that Ms. Chalmers does not remember making such comments . . . goes to the weight of such evidence, not to its admissibility." Opp. at 7. In fact, as Plaintiff well knows, it is not that Ms. Chalmers does not remember, but rather that she unequivocally denies having heard or repeating such statements. Ex. 3 (Chalmers) at 25:6-15.

[7]    Ms. Chalmers' attorney objected to questions regarding statements made at the September Committee meetings. Ex. 4 (Chalmers) at 55:4-14. Courts have warned against the dangers of admitting statements of attorneys as admissions of agents under Rule 801(d)(2)(D) due to the possible impact on attorney-client privilege. *See United States v. Harris*, 914 F.2d 927 (7th Cir. 1990); *see also United States v. Valencia*, 826 F.2d 169, 172-73 (2d Cir. 1987) (noting attorney statements during off-the-record negotiations should be more highly scrutinized before admission under Rule 801(d)(2)(D) than statements made during a official proceeding).

USTU's privilege. *See, e.g., United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996) ("[W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well.") (quoting *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 (1985)).

## IV.   Mr. Harris's Statements Do Not Qualify as Statements of His State of Mind Under Rule 803(3).

Finally, Plaintiff's argument that the statements may be admissible to prove Mr. Harris' "state of mind" has no merit. In order for a statement to be admissible under Rule 803(3) it must satisfy the "foundation inquiry" for such evidence, which requires evaluation of three factors: contemporaneousness, chance for reflection, and relevance. *United States v. Ponticelli,* 622 F.2d 985, 991 (9th Cir.), *cert. denied,* 449 U.S. 1016 (1980), *overruled on other grounds, United States v. De Bright,* 730 F.2d 1255, 1259 (9th Cir. 1984). Mr. Harris's restatement of Mr. Chalmers' alleged comments was not contemporaneous – Mr. Harris' memo was sent out almost a month after the Committee meeting where the alleged comments were made. For the reason stated above, the statements of the M&C Committee are not relevant. *Supra* Section I. And finally, the meeting with Ms. Chalmers occurred on September 12-13, while the memo was not drafted until October 9. That month-long delay provided Mr. Harris with plenty of time to reflect before writing his memo. Therefore, Mr. Harris' memo, his testimony concerning these statements during his deposition, and any testimony he wishes to

11

give at trial concerning the events that allegedly occurred at the September M&C

Committee meeting do not constitute statements of his then existing "state of

mind" under Rule 803(3).[8]

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion

*in limine* to exclude any and all evidence of statements allegedly made by members

of the M&C Committee referring to the USTU as a "Korean mafia-run

organization."

DATED:  Honolulu, Hawaii, March 31, 2006


DAVID M. LOUIE
APRIL LURIA
Attorneys for Defendants
  United States Olympic Committee and
  United States Taekwondo Union

---

[8]     Plaintiff also asserts that Mr. Harris' memorandum may be used to refresh his recollection or as a prior inconsistent statement. Any such use should be governed by sufficient procedural safeguards to prevent the jury from improperly considering the inadmissible memorandum as substantive evidence. *See* Defendants United States Taekwondo Union and United States Olympic Committee's Reply in Support of Their Motion *In Limine* to Exclude Written Declarations.