```
         0001
   1              IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF HAWAII
   2             CIVIL ACTION NO. 04-00461-SOM-LEK
      _____
   3

         DEPOSITION OF BRUCE C.K.W. HARRIS, VOLUME I
   4     EXAMINATION DATE:  Wednesday, April 6, 2005
      _____
   5

         DAE SUNG LEE,
   6
         Plaintiff,
   7
         v.
   8
         UNITED STATES TAEKWONDO UNION,
   9     a Colorado nonprofit corporation, et al.,
  10     Defendants.
      _____
  11

  12             PURSUANT TO SUBPOENA, the deposition of BRUCE
         C.K.W. HARRIS, VOLUME I, was taken at 4:47 p.m. on
  13     Wednesday, April 6, 2005, at the Double Tree Hotel at
         1775 E. Cheyenne Mountain Boulevard, Colorado Springs,
  14     Colorado, before Valorie S. Mueller, Registered
         Professional Reporter and Notary Public in and for the
  15     State of Colorado, said deposition being taken pursuant
         to the Federal Rules of Civil Procedure.
  16
  17
  18
                           Valorie S. Mueller
  19                 Registered Professional Reporter
  20
  21
  22
  23
  24
  25
```

# EXHIBIT 1

1   other following that meeting.  We all just left.

2          Q    What did she say happened during that

3   Membership and Credentials meeting?

4          A    That was where she said that several

5   members of the USOC Membership and Credentials

6   Committee had used the term Korean Mafia with reference

7   to the structure and running of the U.S. Taekwondo

8   Union.

9          Q    Did you attend that meeting in Denver?

10         A    Yes.

11         Q    Did you hear the same things said?

12         A    No, this wasn't said in the public during

13  the meeting itself.  Again, after -- first of all, that

14  meeting, we were told, was like an open town hall

15  meeting where anyone who had anything to say about the

16  status of USTU could show up and do so.  I was told we

17  were under no obligation to present our side, or to

18  respond, but it would be good to be there and hear what

19  was being said.

20              After that meeting, which didn't exactly go

21  that way, we were asked to respond.  But after the

22  meeting was finished, representatives from Holme

23  Roberts and Owen stayed and met with the Membership and

24  Credentials Committee, and I presume that's where this

25  happened, because at the public meeting, that wasn't

1  the way it went.

2        Q    All right.  There was no name calling at

3  the public portion of the meeting?

4        A    No.  We addressed the issues that were

5  outlined by them.

6        Q    Thank you.

7        A    Different members -- oh.

8        Q    The last paragraph, Mr. Smith asked, I

9  guess, the management team in attendance at the meeting

10 to consider the remediation plan that was submitted to

11 the USOC by the reform group to see if there were parts

12 of the plan --

13            MR. LEVINSTEIN:  Before we go on, just so

14 you know, this document is out there.  We've already

15 expressed to the Court that we don't think he has the

16 right to waive the attorney-client privilege.  We don't

17 think this waives the attorney-client privilege.  We

18 think these are hearsay statements and not admissible,

19 and all that stuff.

20            I'm not going to say that every time so

21 we don't disrupt, but I've got a continuing -- now that

22 you're going beyond one statement and you're going to

23 ask about legal discussion and advice, you can do that,

24 and I'm not going to stop you; I just want to state for

25 the record the objection.